## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| GEORGIA ADVOCACY OFFICE *et al.*, ) | |
| ) | |
| Plaintiffs, ) | CIVIL ACTION |
| ) | |
| v. ) | NO. 1:19-CV-1634-WMR-JFK |
| ) | |
| THEODORE JACKSON *et al.*, ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION
## FOR PRELIMINARY INJUNCTION

Devon Orland
Anne Kuhns
GEORGIA ADVOCACY OFFICE
1 West Court Square
Suite 625
Decatur, Georgia 30030
(404) 885-1234
dorland@thegao.org

Sarah Geraghty
Aaron Littman
Ryan Primerano
SOUTHERN CENTER
FOR HUMAN RIGHTS
83 Poplar Street, NW
Atlanta, Georgia 30303
(404) 688-1202
sgeraghty@schr.org

*Counsel for Plaintiffs*

June 4, 2019

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION .....................................................................................1

ARGUMENT ...........................................................................................3

I.  The Material Facts Are Undisputed ...............................................3

II.  Plaintiffs Are Likely to Prevail on the Merits ...............................6

    A.  The Eighth and Fourteenth Amendments Require Reasonable Steps to Reduce the Risk of Serious Harm........................7

    B.  The Americans with Disabilities Act Requires Reasonable Modifications to Defendants' Policies ...................................9

III.  Equitable Factors Favor Injunctive Relief....................................10

IV.  Defendants' Remaining Objections Are Irrelevant .......................14

CONCLUSION ......................................................................................15

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*A.L. by and through D.L. v. Walt Disney Parks and Resorts*,
  900 F.3d 1270 (11th Cir. 2018) ...........................................................................10

*Bircoll v. Miami-Dade Cty.*,
  480 F.3d 1072 (11th Cir. 2007) .............................................................................9

*Braggs v. Dunn*,
  367 F. Supp. 3d 1340 (M.D. Ala. 2019) ..........................................................7, 11

*Brown v. Plata*,
  563 U.S. 493 (2011).............................................................................................12

*Cottone v. Jenne*,
  326 F.3d 1352 (11th Cir. 2003) .............................................................................7

*Doe v. Stincer*,
  175 F.3d 879 (11th Cir. 1999) .............................................................................14

*Dunn v. Dunn*,
  219 F. Supp. 3d 1163 (M.D. Ala. 2016) ..............................................................14

*Farmer v. Brennan*,
  511 U.S. 825 (1994)...............................................................................................2

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
  546 U.S. 418 (2006).............................................................................................10

*Greason v. Kemp*,
  891 F.2d 829 (11th Cir. 1990) .............................................................................13

*Hale v. Tallapoosa Cty.*,
  50 F.3d 1579 (11th Cir. 1995) ...............................................................................8

*Johnson v. California*,
  543 U.S. 499 (2005)...........................................................................................1, 7

*Luckey v. Harris,*
    860 F.2d 1012 (11th Cir. 1988) ........................................................................14

*Marsh v. Butler Cty.,*
    268 F.3d 1014 (11th Cir. 2001) ....................................................................2, 9

*McDonald's Corp. v. Robertson,*
    147 F.3d 1301 (11th Cir. 1998) .........................................................................3

*Thomas v. Bryant,*
    614 F.3d 1288 (11th Cir. 2010) ....................................................7, 10, 11, 13

*Transcontinental Gas Pipe Line Co. v. 6.04 Acres,*
    910 F.3d 1130 (11th Cir. 2018) ....................................................................3, 6

**STATUTES**

18 U.S.C. § 3626 ........................................................................................................3

42 U.S.C. § 12132 ......................................................................................................9

**REGULATIONS**

28 C.F.R. § 35.130 ..............................................................................................9, 10

**OTHER AUTHORITIES**

Natasha A. Frost *et al.*, Nat'l Inst. of Justice, *Administrative Segregation in U.S. Prisons* (2016) .................................................................7

## INTRODUCTION

Defendants' brief underscores Plaintiffs' need for immediate relief and the futility of waiting for Defendants to provide it.  Defendants do not dispute the material facts described in Plaintiffs' opening brief.  (*See* Doc. 16-1 at 2-21.) Women in the "mental health pods" spend upwards of 23 hours per day isolated inside their cells (*id.* at 4-8) and suffer serious psychological harm under those conditions (*id.* at 9-17).  Isolation of these women exacerbates symptoms of mental illness.  (*Id.* at 17-21.)  And while Defendants speculate that Plaintiffs' suffering might result solely from disabilities "predat[ing] their incarceration" (Doc. 26 at 7), Defendants have no answer to extensive research showing that people with psychiatric disabilities frequently "decompensate in isolation, requiring crisis care," and "will not get better as long as they are isolated."  (Doc. 16-1 at 20 & nn.28-30 (citations omitted); *see* Metzner Decl. ¶¶ 22-50 (Ex. K).)

Rather than dispute the nature or effects of their practices, Defendants ask this Court to ignore the serious harm to women in their custody because they purportedly "have a penological justification" for isolating those women.  (Doc. 26-1 at 7.)  But in cases challenging jail conditions that pose a substantial risk of serious harm to detainees, the existence of penological interests is largely beside the point.  *See Johnson v. California*, 543 U.S. 499, 511 (2005).  With or without a

penological rationale for their actions, jailers are liable under the Eighth and Fourteenth Amendments if they disregard the risk of harm "by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Defendants admit that, absent injunctive relief, they intend to continue isolating women inside their cells just as they have been, permitting women to suffer decompensation, self-injury, suicide attempts, and similar harms. (Doc. 26 at 7 (stating Plaintiffs' "time outside their cells must be limited").) In other words, Defendants propose doing nothing to reduce the risk of harm caused by isolating psychiatrically vulnerable women. And it is "an unreasonable response for an official to do nothing" when confronted with a risk of serious harm to detainees. *Marsh v. Butler Cty.*, 268 F.3d 1014, 1034 (11th Cir. 2001).

The principal injunctive relief sought—at least four hours of daily out-of-cell time for women in the mental health pods—is narrow, easily achievable by Defendants, and the common practice in "[j]ails across the country." (Metzner Decl. ¶ 29; *see, e.g.*, Ex. N at 12, 37-38, 166, 197-99, 226, 261-62 (reflecting examples of prison and jail policies excluding people with psychiatric disabilities from segregation or providing increased out-of-cell time).) Accordingly, Plaintiffs are likely to succeed on the merits of their claims and plainly meet the equitable requirements for injunctive relief.

**ARGUMENT**

## I.  The Material Facts Are Undisputed.

Because the material facts regarding injunctive relief are not in dispute, the

Court may grant relief on an expedited basis and without holding an evidentiary

hearing.[1]  "An evidentiary hearing is required for entry of a preliminary injunction

only 'where facts are bitterly contested and credibility determinations must be

made to decide whether injunctive relief should issue.'"  *Transcontinental Gas

Pipe Line Co. v. 6.04 Acres*, 910 F.3d 1130, 1169 (11th Cir. 2018) (quoting

*Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1178 (11th

Cir. 2003)).  By contrast, district courts "need not hold an evidentiary hearing"

when the "facts in dispute are not material to the preliminary injunction sought."

*McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1313 (11th Cir. 1998) (holding

evidentiary hearing unnecessary where defendants failed to show a "material issue

of fact"); *see also, e.g.*, *Transcontinental Gas*, 910 F.3d at 1169-70 (same).

Extensive and unrebutted evidence attached to Plaintiffs' motion shows that

women are held in prolonged solitary confinement in the South Fulton Jail's B-

Pod, C-Pod, and G-Pod—the so-called "mental health pods."  Plaintiffs filed

---

[1] Although a pre-injunction hearing is unnecessary, the Court should order expedited discovery and an evidentiary hearing within 90 days concerning the injunction's compliance with 18 U.S.C. § 3626(a)(2).  (*See* Doc. 16-1 at 34-36.)

3

logbooks reflecting the frequency of out-of-cell time in those pods in recent months (Doc. 17-3 to Doc. 17-15) as well as declarations of seven women confirming that out-of-cell time is limited to around an hour per day at most, with some people "go[ing] days without being let outside of [their] cell[s]" (*see, e.g.*, M.J. Decl. ¶¶ 9-10). As reflected in logbook entries, people in G-Pod were provided out-of-cell time an average of five times in December 2018. (Doc. 16-1 at 4-5.) In January 2019, people in C-Pod were allowed out of their cells an average of eight times (Doc. 16-1 at 5), and, in February 2019, people in B-Pod were allowed out an average of eleven times (Doc. 16-1 at 6).[2]

Plaintiffs also noted the large body of research in which experts "reached almost identical conclusions about the negative effects of isolation in general and solitary confinement in particular." (Doc. 16-1 at 18 & n.22 (citation omitted); *see id.* at 17-21 & nn.20-34.) Isolation has "especially significant" effects on people with psychiatric disabilities such that "it is not ethically defensible" to hold them in isolation. (*Id.* at 20-21 (citation omitted).) Accordingly, the National Commission on Correctional Health Care—whose standards Defendants incorporated into their contract for mental health services (Doc. 16-22 at 54)—has stated categorically

---

[2] Conditions in the mental health pods are so harsh that Defendants confine women to the pods as punishment. (*See, e.g.*, B.W. Decl. ¶ 3 (Doc. 16-2 at 25).)

that people with psychiatric disabilities "should be excluded from solitary confinement of *any duration*."  (Doc. 16-1 at 20-21 & n.32) (citation omitted) (emphasis added).)  In addition to citing the authorities noted above, Plaintiffs submitted declarations, photographs, and official records reflecting example after example of the harm inflicted by prolonged solitary confinement.  (*See* Doc. 16-1 at 11-16 & nn.14-19; Doc. 16-2 (declarations); Doc. 16-3 (photographs); Doc. 17-2 (medical records); Doc. 16-5 (records concerning death of Kesha Brownlee).)

In response to that evidence, Defendants offered only the affidavit of Chief Jailer Mark Adger, who disputed none of the material facts outlined above.  (*See* Doc. 26-1 ¶¶ 1-13.)  Defendants' brief likewise proffers nothing to dispute that Defendants confine women to their cells virtually around the clock or that the practice causes serious psychological harm.  (Doc. 26 at 1-18.)  Rather, Defendants dispute facts immaterial to injunctive relief, such as whether they are responsible for creating the jail-based competency restoration program.  (Doc. 26 at 14-15.)[3]

Finally, while Defendants speculate in their brief that the serious psychological harm suffered by Plaintiffs could be caused solely by disabilities that

---

[3] For purposes of the present motion, the significance of the competency restoration program is that—regardless of who dictates its conditions—its existence in Defendants' jail shows that people with serious mental illness can be allowed out of their cells and provided programs without sacrificing security interests.

"predated their incarceration" (Doc. 26) Defendants proffer no evidence to support this argument or to rebut evidence showing that solitary confinement has serious adverse effects.  As explained, countless studies have generated "almost identical conclusions" regarding "the negative effects of isolation," particularly with respect to people with psychiatric disabilities.  (Doc. 16-1 at 18 & n.22 (citation omitted).) For them, prolonged isolation "can be as clinically distressing as physical torture." (Doc. 16-1 at 11 & n.14 (citation omitted).)  Defendants' records reflect the clear causal link between isolation and psychological harm.  (*See, e.g.*, Doc. 17-2 at 25 (M.J. stating, "If I go back to that room, I'm going to hang myself."); *id.* at 65 (K.H. stating that she "'cut up [her] face' because she was frustrated with being locked down"); *id.* at 177 (S.P. stating, "If I go back in that room, I'm going to do something to myself."); *id.* at 213 (B.W. stating, "I'd rather be dead than in this jail.").)

The record amply supports each of the preliminary injunction factors and Defendants dispute none of the material facts.  The Court should enter injunctive relief on the present record.  *Transcontinental Gas*, 910 F.3d at 1169-70.

## II.    Plaintiffs Are Likely to Prevail on the Merits.

Lacking any basis for disputing the facts discussed above, Defendants devote much of their brief to insisting that those facts are irrelevant under the

erroneous test they propose.  According to Defendants, the only fact of consequence is whether they have a "penological justification" for isolating women in their custody.  (*See, e.g.*, Doc. 26 at 6-8.)[4]  Under the correct legal standards, however, Plaintiffs are likely to prevail on the merits of their claims.

### A.    The Eighth and Fourteenth Amendments Require Reasonable Steps to Reduce the Risk of Serious Harm.

In cases challenging conditions of confinement under the Eighth and Fourteenth Amendments, courts use "the 'deliberate indifference' standard" to judge the conduct of jailers.  *Johnson v. California*, 543 U.S. 499, 511 (2005). Under that standard, when a jail official knows of a substantial risk of serious harm to detainees, the official must "respond reasonably to the risk" by taking action to abate it.  *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).  A risk of serious psychological harm can trigger that duty.  *Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010) ("The case law establishes that 'mental health needs are no less serious than physical needs' for purposes of the Eighth Amendment." (quoting *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004))); *cf. Braggs v. Dunn*, 367 F.

---

[4] It is doubtful that Defendants' practices would satisfy even a "penological justification" test. (*See, e.g.*, Metzner Decl. ¶¶ 36, 42 (stating isolated confinement exacerbated plaintiffs' symptoms of mental illness).)  *See also* Natasha A. Frost *et al.*, Nat'l Inst. of Justice, *Administrative Segregation in U.S. Prisons* 24 (2016) (finding "almost no literature documents the utility of [segregation] or demonstrates that the use of these units has achieved specific aims in demonstrable ways").

Supp. 3d 1340, 1344 (M.D. Ala. 2019) (finding "long-term isolation resulting from

segregation or solitary confinement has crippling consequences for mental

health").  When that duty arises, jailers must do more than merely pursue vague

penological aims.  *Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1584 (11th Cir. 1995).

Here, Defendants offer no evidence disputing their awareness that prolonged

isolation poses a substantial risk of serious psychological harm to detainees.  Nor

do they propose reasonable actions to reduce that risk.  *See Hale*, 50 F.3d at 1584.

Regarding their policy of isolating women with psychiatric disabilities, the only

relevant change Defendants propose is to continue isolating them but provide

"reading materials and board games."  (Doc. 26 at 11.)  That response is

objectively insufficient.  Defendants' use of the term "board games" refers to a

checkers board and deck of playing cards left in the pods' common areas—areas to

which women with psychiatric disabilities rarely have access.  (A.R. 3d Decl. ¶ 2;

B.W. 3d Decl. ¶ 2; P.L. Decl. ¶ 2 (Ex. M).)  The "reading materials" have not been

distributed (A.R. 3d Decl. ¶ 3; B.W. 3d Decl. ¶ 4; P.L. Decl. ¶ 3), and, in all

events, do not change the fact that these women will remain isolated in their cells

where they deteriorate dramatically.  In other words, Defendants propose nothing

to address the isolation harming women's mental health, and "it is an unreasonable

response for an official to do nothing" when confronted with a risk of serious

harm.  *Marsh v. Butler Cty.*, 268 F.3d 1014, 1034 (11th Cir. 2001).[5]  Plaintiffs are

thus likely to prevail on their Eighth and Fourteenth Amendment claims.

> **B.    The Americans with Disabilities Act Requires Reasonable Modifications to Defendants' Policies.**

Defendants' reliance on a "penological justification" standard is equally

misplaced with respect to Plaintiffs' claims under the Americans with Disabilities

Act.  Defendants do not dispute that Plaintiffs have shown a prima facie ADA

violation in that Plaintiffs are qualified individuals with disabilities who are

discriminated against by Defendants due to their disabilities.  42 U.S.C. § 12132;

*Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007).  Defendants are

thus required to "make reasonable modifications in policies," *see* 28 C.F.R.

§ 35.130(b)(7), and Plaintiffs have proposed such a modification, asking that

Defendants provide sufficient staffing and establish clinical settings where patients

would participate in therapeutic activities instead of being locked in cells all day.

(Doc. 16-1 at 30 & n.42.)  That proposal is consistent with Defendants' contract for

mental health services, which requires "mental health residential units" offering

"programming or therapies."  (*See id.* at 31 & n.44 (citation omitted).)

---

[5]  The remedy for the harmful isolation in the mental health pods "is not a mystery." (Metzner Decl. ¶ 51.)  It involves offering at least "20 hours per week of out-of-cell time" and "out-of-cell structured therapeutic activities."  (*Id.*)  This practice "has been implemented in many jails throughout the country."  (*Id.*; *see, e.g.*, Ex. N.)

To rebut Plaintiffs' prima facie showing at trial, the burden will be on Defendants to prove that modifications "would fundamentally alter the nature of the service, program, or activity" in question. 28 C.F.R. § 35.130(b)(7); *see A.L. by and through D.L. v. Walt Disney Parks and Resorts*, 900 F.3d 1270, 1292093 (11th Cir. 2018). And because the burdens at the preliminary-injunction stage mirror those at trial, Defendants have, for present purposes, forfeited any fundamental-alteration defense by entirely failing to raise it. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006).

## III.   Equitable Factors Favor Injunctive Relief.

Plaintiffs also meet the traditional equitable requirements for injunctive relief. Plaintiffs are plainly suffering irreparable harm because no "remedy at law" will redress their "unconstitutional condition[s] of confinement." *See Thomas*, 614 F.3d at 1322. Defendants argue that Plaintiffs will not be irreparably harmed because their psychiatric disabilities predate their confinement in the jail (Doc. 26 at 9-10) and staff members can respond when Plaintiffs suffer predictable psychiatric emergencies as a result of their isolation (*id.* at 10).[6] But the point of

---

[6] Defendants also claim that Plaintiffs will not be irreparably harmed because Defendants, after operating the jail for the past eight years, recently decided to make repairs to the facility and provide checkers boards and playing cards in the mental health pod dayrooms. (Doc. 26 at 10-13; *cf.* A.R. 3d Decl. ¶ 8.) These proposed changes do not warrant a response because they will have no appreciable impact on

injunctive relief in this case is to provide conditions that do not repeatedly induce decompensation, psychosis, self-injury, and other serious psychological harms—not to cure Plaintiffs of their disabilities.  *See Thomas*, 614 F.3d at 1314.  (*See also* Metzner Decl. ¶¶ 22-52.)  After-the-fact staff interventions do nothing to end the "vicious cycle of isolation, inadequate treatment, and decompensation" caused by Defendants' practices.  *Braggs*, 367 F. Supp. 3d at 1350.  (*See* Metzner Decl. ¶ 50 (noting increasing mental healthcare "without increasing the out-of-cell time to at least four hours per day . . . will not prevent many of the detainees with a serious mental illness from being harmed").)  The enduring nature of that harm is well-illustrated by the experience of S.H.P., a woman with bipolar disorder who describes her four-month confinement in C-Pod as "the most disorienting and frightening period in my life" and receives weekly trauma therapy to help her cope with the experience.  (S.P.H. Decl. ¶¶ 6-7 (Ex. L) ("I cannot talk about my time in the jail without breaking down."); *id.* ¶¶ 8-31.)  S.H.P. was "confined to [her] cell around the clock for weeks with no shower" (*id.* ¶ 11), remained in the same filthy uniform for months (*id.*), was deprived of necessities like toilet paper and drinking

---

Plaintiffs' nearly constant in-cell confinement and, regardless, would not render injunctive relief unnecessary.  *See Thomas*, 614 F.3d at 1320-21 (holding prison's post-litigation policy changes did not establish that injunctive relief was unnecessary, as "practices may be reinstated as swiftly as they were suspended" (quoting *Gates v. Collier*, 501 F.2d 1291, 1321 (5th Cir. 1974))).

water (*id.* ¶ 15, 17-19), experienced hallucinations after months of prolonged isolation (*id.* ¶ 13), and "deteriorated to the point where [she] could no longer process basic information or have a rational conversation" (*id.* ¶ 25).

Regarding the balance of hardships, Plaintiffs are suffering concrete and serious psychological harm that amounts to cruel and unusual punishment. (Doc. 16-1 at 22-28.)[7]  By contrast, the only harm Defendants purport to identify concerns the "deference" ordinarily extended to jailers. (Doc. 26 at 13-14.)  As an initial matter, deference has limits.  "Courts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." *Brown v. Plata*, 563 U.S. 493, 511 (2011).  Where jailers violate detainees' federal rights, deference is properly brought to bear in shaping the remedy, not in denying relief.  *See id.* at 542-43.

In that regard, Plaintiffs' motion proposes narrow relief that will not unduly intrude on jail administration.  The principal relief sought involves four hours of daily out-of-cell time.  (Doc. 16-1 at 37.)  This relief accords with experts' views on the necessary care for women with psychiatric disabilities (*see, e.g.*, Metzner

---

[7] (*See, e.g.*, Metzner Decl. ¶ 36 (noting M.J.'s "conditions of confinement and inadequate mental health treatment caused her suffering during her incarceration as was evidenced, in part, by her two suicide attempts"); Metzner Decl. ¶ 42 (noting Defendants' "policy of 23- to 24-hours per day of segregated confinement . . . resulted in [K.H.'s] unnecessary suffering and prolonged psychotic symptoms").)

Decl. ¶¶ 22-29, 49-52) and with the practices of numerous detention facilities in Georgia and elsewhere (*see, e.g.*, Ex. N).  Moreover, the requested injunction is not only narrow but workable.  Defendants concede that "extended" out-of-cell time can occur consistent with security concerns if they staff the jail to provide "significant and detailed attention" to women outside of their cells.  (Doc. 26 at 15-16.)  Requiring Defendants to provide that staff will not unduly burden them, as the Constitution already mandates that they employ enough officers to avoid violating detainees' rights.  *Greason v. Kemp*, 891 F.2d 829, 838 (11th Cir. 1990).

Regarding Plaintiffs' request that Defendants establish a plan for providing an appropriate environment with sanitary conditions and out-of-cell activities to women in the mental health pods (Doc. 16-1 at 37), this relief leaves to Defendants the power to decide in the first instance what measures are appropriate in light of their experience and prerogatives.  *See Thomas*, 614 F.3d at 1323 n.33.  Moreover, the requested relief hews to Defendants' policies mandating programs and services for detainees with psychiatric disabilities.  (*See* Doc. 16-1 at 33-34 & n.47.)

Finally, Plaintiffs have a strong interest in ensuring safety and security; they do not ask the Court to "ignore" the matter.  (*Cf.* Doc. 26 at 16.)  They simply ask for living conditions that do not result in serious psychological harm.  Medically appropriate living conditions will promote rather than undermine safety and

13

security interests.  (*See* Doc. 16-1 at 30-31 & nn.42-43.)

## IV.  Defendants' Remaining Objections Are Irrelevant.

Defendants raise two defenses that do not warrant extended discussion.

First, Defendants argue that they are entitled to sovereign immunity under the

Eleventh Amendment.  (Doc. 26 at 4-6.)  As explained previously (Doc. 30 at 8-9),

the Eleventh Amendment does not bar this suit because Plaintiffs seek only

prospective relief against particular officials.  *See Luckey v. Harris*, 860 F.2d 1012,

1014 (11th Cir. 1988) (citing *Ex parte Young*, 209 U.S. 123, 156 (1908)).

Second, Defendants argue that Plaintiffs' claims must be dismissed under 42

U.S.C. § 1997e(a) because Plaintiffs M.J. and K.H. allegedly failed to exhaust

administrative remedies.  (Doc. 26 at 16-17.)  Plaintiffs incorporate by reference

their previous brief discussing this issue (Doc. 30 at 19-27) but note that

exhaustion is irrelevant here for the additional reason that Defendants have raised

no exhaustion defense with respect to claims by the Georgia Advocacy Office

(GAO).  "The PLRA's exhaustion requirement . . . does not apply to [protection

and advocacy systems]" like GAO.  *Dunn v. Dunn*, 219 F. Supp. 3d 1163, 1176

(M.D. Ala. 2016).  Accordingly, Defendants' exhaustion argument is irrelevant to

the preliminary injunction, as GAO would have associational standing to seek

relief on behalf of people with psychiatric disabilities regardless of whether M.J.

and K.H. remained plaintiffs. *Doe v. Stincer*, 175 F.3d 879, 884 (11th Cir. 1999).

## CONCLUSION

The Court should enter a preliminary injunction ordering Defendants to:

(1) Offer at least four hours of daily out-of-cell time to all women in B-Pod, C-Pod, and G-Pod, including one hour per day of outdoor time; and

(2) Within 30 days, establish and present to the Court for its approval a plan, designed to be implemented within another 30 days, for providing a medically appropriate environment for women who experience psychiatric disabilities and are assigned to B-Pod, C-Pod, and G-Pod, including sanitary conditions of confinement and out-of-cell therapeutic activities.

Respectfully submitted,

/s/ Ryan Primerano

| | |
|---|---|
| Devon Orland | Sarah Geraghty |
| Ga. Bar No. 554301 | Ga. Bar No. 291393 |
| Anne Kuhns | Aaron Littman |
| Ga. Bar No. 149200 | Ga. Bar No. 843053 |
| GEORGIA ADVOCACY OFFICE | Ryan Primerano |
| 1 West Court Square | Ga. Bar No. 404962 |
| Suite 625 | SOUTHERN CENTER |
| Decatur, Georgia 30030 | FOR HUMAN RIGHTS |
| (404) 885-1234 | 83 Poplar Street, NW |
| (404) 378-0031 (fax) | Atlanta, Georgia 30303 |
| dorland@thegao.org | (404) 688-1202 |
| | (404) 688-9440 (fax) |
| | sgeraghty@schr.org |

*Counsel for Plaintiffs*

June 4, 2019

15

## CERTIFICATE OF COMPLIANCE

I certify that this document has been prepared in compliance with Local

Rule 5.1C using 14-point Times New Roman font.

/s/ Ryan Primerano

June 4, 2019

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing using the CM/ECF system, which will send notification of filing to all counsel of record.

/s/ Ryan Primerano

June 4, 2019