# EXHIBIT O

## Declaration of
## Emmitt L. Sparkman

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| GEORGIA ADVOCACY OFFICE *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| v. | ) ) | NO. 1:19-CV-1634-WMR-JFK |
| THEODORE JACKSON *et al.*, | ) ) | |
| Defendants. | ) ) | |

**DECLARATION OF EMMITT L. SPARKMAN**

**I.    Expertise**

   **a.  Correctional Experience**

   1.     I am a corrections administrator with over forty years of experience working in adult and juvenile institutional and community corrections.

   2.     I have extensive experience in the operation of correctional facilities, in the development of offender classification policies and procedures, and in oversight of agency offender classification systems.

   3.     My experience as a prison and corrections administrator includes responsibility for managing the custody, control, and treatment of offenders housed in long-term segregation and on death row.

4.      I have held line and supervisory positions at correctional facilities in the states of Texas, Kentucky, and Mississippi.  These positions include: correctional officer, probation officer, education consultant, correctional captain, correctional major, intake-detention superintendent, director of education, director of security, warden, superintendent, and deputy commissioner.

5.      My experience includes working in both the public and private corrections sectors.  I served as a warden of two private pre-release centers in Texas, a 936-bed private medium-security prison in Kentucky, and a 1,000-bed private medium-security prison in Mississippi.

6.      In June 2001, I was named the Superintendent of the Mississippi State Penitentiary, a prison complex with 18 prisons that included a 1,000-bed supermax prison (Unit 32), housing death row and the highest risk offenders in the custody of the Mississippi Department of Corrections.  I served in that position from June 2001 until December 2002.

7.      I was appointed the Deputy Commissioner of Institutions for the Mississippi Department of Corrections in November 2002, and served in that position until May 2013.  As Deputy Commissioner for Institutions, I was responsible for three state prison complexes, five private prisons, and fifteen regional prisons.  I also had responsibility for the classification, records, employee

training, treatment, facilities/engineering, and agriculture departments of the Agency.

**b. Expert Experience**

8.     I have been a consultant to the states of Illinois, Maryland, Colorado, Oklahoma, New Mexico, and South Carolina, assisting them to develop strategies to reduce the use of long-term segregation and improve conditions of confinement in segregation units.  I participated in an evaluation of the use of administrative segregation by the Federal Bureau of Prisons in 2014.

9.     Currently, I serve as an implementation panel member responsible for monitoring the settlement agreement between the South Carolina Department of Corrections and the plaintiffs in *T.R., et al. v. South Carolina Department of Corrections, et al.*, C/A No. 2005-CP-40-2925, in the Court of Common Pleas for the Fifth Judicial Circuit, regarding conditions of confinement for mentally ill offenders.

10.     I have been a certified American Correctional Association auditor since 1995.  I have conducted numerous accreditation audits for the Federal Bureau of Prisons and state corrections systems, and have served both as an audit team member and as an audit chairperson.

11.     I have attached my most current curriculum vitae, which includes all of my publications in the last ten years, all of the cases in which I have testified in the last four years, and my fee schedule.  They are attached as Exhibit 1.

## II.     Assignment

12.     I have been retained by Plaintiffs' counsel as an expert in *Georgia Advocacy Office v. Jackson*, 1:19-CV-1634 (N.D. Ga.).

13.     I was retained in this matter on May 17, 2019.

14.     The focus of my review is the Fulton County Sheriff's policy and practice of housing of women who experience psychiatric disabilities in segregation and other policies and practices related to the custody and care of these women.

## III.     Foundation

15.     Plaintiffs' counsel have provided me and I have reviewed the following materials related to *Georgia Advocacy Office v. Jackson*:

   a.  Parties' Filings

      i.  Doc. 1, Complaint

      ii.  Doc. 26, Defendants' Response to Plaintiffs' Motion for a Preliminary Injunction

      iii.  Doc. 30, Plaintiffs' Response in Opposition to Defendants' Amended Motion to Dismiss

b. Policies

    i. Doc. 16-21, Exhibit I – Relevant South Fulton Jail Policies and Procedures

    ii. NaphCare J-F-O3, Mental Health Services–Mental Health Program and Residential Unit Policies and Procedures, Revised November 10, 2016

c. Jail Records

    i. Fulton County Jail Use of Force Spreadsheet July 2018 to April 2019

    ii. Fulton County Jail 2018 and 2019 Incident Reports

    iii. South Fulton Jail Detainee Grievances and Responses B, C, and G Pods January 1, to March 1, 2019

    iv. Doc. 16-20, Exhibit H – South Jail Census Report April 30, 2019 REDACTED

    v. Plaintiffs' Counsel Memorandum dated May 30, 2019 Notes South Fulton Jail Logbooks West Wing out-of-cell time in B Pod and C Pod between January 1, 2019 and January 31, 2019

d. Declarations

    i. Doc. 17-1, Exhibit A – Declarations of Women in the South Fulton Jail UNDER SEAL

## IV. Background Facts and Bases for Opinions

### a. Jail Administration

16. The South Fulton Municipal Jail, also referred to as South Fulton Municipal Regional Jail or South Annex, is a detention facility in Union City, Georgia, that holds women prosecuted in Fulton County courts.  The South Fulton

Jail is a component facility of a larger jail system under the control of the Fulton County Sheriff, his appointed Chief Jailer, and their subordinates.[1]

### b.  Jail Conditions

17.    The Jailers operated the South Fulton Jail under a lease between 2011 and October 2018.  In connection with Fulton County's decision to purchase the jail in October 2018, the Jailers recognized that significant maintenance issues had been left unaddressed.

### c.  Isolation Policies and Practices

18.    About half of the women in the jail experience symptoms of mental illness.  Women detainees experiencing more pronounced symptoms of mental illness are confined in isolation cells.

19.    The South Fulton Jail B, C, and G Pods house detainees with significant mental health needs, and are operated as administrative segregation units.

20.    Summarized information from logbooks demonstrates that women experiencing mental illness symptoms are housed in B , C, or G Pods and are confined in their cells 23-24 hours per day, with minimal human contact with other

---

[1] Throughout this Declaration, I refer to the Sheriff, the Chief Jailer, and the other officers collectively as "the Jailers."

detainees and staff.[2]  The primary contact with staff, including correctional officers and medical and mental health providers, is accomplished by communicating through the tray slot of a solid metal door.

21.     Unlike male detainees, women in the Fulton County Jail deemed incompetent to stand trial are not provided a jail-based restoration program.  They are forced to languish in isolation cells until a state-run hospital bed becomes available.

22.     The Jailers present the following justification for the Plaintiffs' cell restrictions: that the Plaintiffs, due to their psychiatric disabilities, present safety and security concerns.  Specifically, the Jailers assert that M.J.'s and K.H.'s behavior and hygiene concerns dictate that their time outside of their cells must be limited.

23.     The jailers acknowledge that staffing constraints do not allow them to provide every inmate with more than an hour of out-of-cell time.

### d.  Mental Health Services

24.     The Jailers contract with NaphCare, Inc., to provide medical and mental health treatment to detainees.

---

[2] Plaintiffs' Counsel Memorandum dated May 30, 2019 Notes for South Fulton Jail Logbooks West Wing out-of-cell time B Pod and C Pod between January 1, and January 31, 2019.

25.     The NaphCare J-F-O3 Mental Health Services Mental Health Program and Residential Unit Policy and Procedure, revised November 10, 2016, outlines the mental health services that are to be provided to detainees.  "Non-Acute Mental Health Residential Units, when provided, [are to] include:  a) a defined scope of care; b) program or therapist as needed; c) a sufficient number of mental health staff assigned to the unit; d) individualized treatment plans; e) orientation and training for correctional officers assigned to the unit; and f) housing in a clean and safe environment, including facilities necessary for maintaining personal hygiene and guidance for Activities of Daily Living, if necessary."[3]

26.     According to the Jailers, a mental health counselor assigned to the South Annex can speak with any inmate experiencing mental health difficulties.  In addition to the security rounds that Fulton County Jail personnel conduct on an hourly or half-hour basis (depending on whether the inmates are locked down in their cells), the mental health counselors also periodically conduct rounds.

27.     Mental health staff's primary contact with inmates when conducting housing unit rounds is through the tray slot of the cell metal door.  Mental health assessments and counseling only occasionally occur in a private office setting.

_____

[3] NaphCare Health Care Policy and Procedure, J-F-03 Mental Health Services-Mental Health Programs and Residential Unit, Revised November 10, 2018.

8

## V.    Opinions

### a.  Opinions Regarding Isolation Policies and Practices

#### i.  Detainees with Serious Mental Illness Should Not Be Held in Prolonged Isolation

28.    Correctional research shows that prolonged isolation is inconsistent with long-term correctional interests.[4]  The American Correctional Association has standards and guidelines that recommend prohibiting the placement of individuals with serious mental illness in long term solitary confinement.[5]  Isolating detainees with symptoms of mental illness is archaic and is not the reasonable and acceptable standard for managing detainees with mental illness symptoms.

29.    Long term isolation (segregation) is intended for the purpose of housing prisoners that commit serious violent behavior that injures staff and/or other detainees.  Long-term isolation should be reserved for prisoners "who pose a serious threat to the safety of others" and "only when a less restrictive setting is not sufficient."[6]

---

[4] Craig Haney, *Restricting the Use of Solitary Confinement*, 1 Ann. Rev. Criminology 285, 286 (2018).

[5] American Correctional Ass'n, *Restrictive Housing Performance Based Standards*, 4-RH-0031, 4-RH-0025 (August 2016).

[6] Hans Toch & Terry Kupers, *Violence in Prisons, Revisited*, 45.3 J. of Offender Rehabilitation 1, 18 (2007).

30.     M.J. and K.H. are incarcerated for misdemeanors and have no assaultive history of injuring staff or other detainees.  Long term isolation is unnecessary and inappropriate to manage M.J. and K.H. and other like detainees' behavior and hygiene concerns.  A review of South Fulton Jail 2018 and 2019 incident reports did not identify any serious incidents where M.J. or K.H. committed an act that posed a serious threat to the safety of others.[7]

### ii. Isolation of Detainees with Mental Illness Undermines Safety and Security

31.     The South Fulton Jail is inappropriately using B, C, and G Pods to isolate mentally ill detainees who may be disruptive but do not pose a serious threat to the safety of others.  Doing so is exposing these detainees to significant harm and not achieving the stated purpose of making the jail safer.  Research and my experience have shown correctional facilities with higher rates of restrictive housing (isolation) use had higher rates of facility disorder.[8]

32.     In my corrections experience, increased isolation and significant limitations on a detainee's interaction with staff and other detainees – as occur in the B, C, and G Pods in the South Fulton Jail – result in the mentally ill detainee

---

[7] Fulton County Jail 2018 and 2019 Incident Reports.
[8] Allen Beck, U.S. Dep't of Just., *Use of Restrictive Housing in US Prisons and Jails*, 2011-12 1 (2015), http://www.bjs.gov/content/pub/pdf/urhuspj1112.pdf.

becoming more dangerous and disruptive heightening the detainee's risk to themselves, other detainees and staff.  The Fulton County Jail's policies, procedures, and practices of isolating women detainees with mental illness at the South Fulton Jail B, C, and G Pods jeopardizes the safety and well-being of detainees, staff, and the public.

33.   The Jailers maintain that M.J.'s and K.H.'s disruptive behavior and hygiene concerns dictate that their time outside their cells must be limited, and that their prolonged isolation is justified by the penological interests of safety and security for M.J. and K.H. and their fellow inmates, staff, and the general public who visit the jail.  However, this writer's education, training, and experience teach that isolating women detainees with mental illness is not necessary for safety and security.  Instead, isolation, in this writer's experience, more likely endangers the safety and well-being of M.J. and K.H. and their fellow inmates, staff, and the general public who visit the jail.

34.   The Jailers' apparent plan to provide reading materials and board games to inmates in B, C, and G Pods does not mitigate the effects of isolation or address their mental health needs.  In this writer's education, training, and experience, such a response is obviously inadequate and unreasonable.

### iii.   Adequate Numbers of Sufficiently Trained Correctional Staff Are Required to Appropriately House Mentally Ill Detainees Without Resort to Isolation

35.     Any detention or correctional facility must have sufficient numbers of sufficiently trained correctional staff to provide for care, custody, and control of women experiencing psychiatric disabilities without prolonged isolation that consistently intensifies symptoms of mental illness.  Failure to do so is unacceptable and not sound and reasonable correctional practice.

36.     The available information reflects that the South Fulton Jail neither provides sufficient staff nor trains its employees to manage the large number of women detainees experiencing psychiatric disabilities.  The Jailers acknowledge that staffing constraints simply do not allow an officer to always provide every detainee with more than an hour of out of cell time.[9]

37.     In my experience in the Mississippi DOC and other jurisdictions, including most recently the South Carolina DOC, correctional staff must be sufficient in number and properly trained to work with persons experiencing mental illness.  When staff lacks the personnel and specialized training needed to manage and supervise prisoners experiencing symptoms of mental illness, as appears to be true in the South Fulton Jail, inmates' conditions and behavior

_____

[9] Defendants' Response to Plaintiffs' Motion for a Preliminary Injunction, III.1.B.

deteriorate.  If sufficient staff are properly trained, they will not feel compelled to resort to segregation for purposes of control.

38.     Correctional staff, without specialized training, often respond to mental illness behaviors with punitive actions – specifically, unnecessary force, increased isolation, and removal of privileges and services.  These responses escalate the deterioration of the prisoners' mental health jeopardizing their personal safety and well-being as well as that of other detainees, and staff.

### iv.  Evidence from Fulton County's Men's Jail and from Numerous Other Jurisdictions Confirms that Mentally Ill Detainees Can Be Safely Housed Without Resort to Isolation

39.     The Fulton County Jail Competency Restoration Program offered to male detainees provides evidence that female South Fulton Jail mentally ill detainees can be safely managed without isolation when sufficiently trained mental health and security staff are available to provide effective treatment programs. There is no reason that similar therapeutic programs could not be implemented at the South Fulton Jail for women with mental illness.  The Defendants' purported penological justification that isolation is required to manage women with mental illness in the South Fulton Jail is negated by this evidence.

40.     Prisons and jails throughout the United States have found that isolation does not effectively manage prisoners with mental illness, fails its

intended purpose of making jails and prisons safer, and have been able to safely provide care, custody and control of mentally ill detainees without requiring extended isolation.  There are a number of jurisdictions, such as Arizona, Mississippi, North Carolina, North Dakota, Pennsylvania, Virginia, Washington, and the Federal Bureau of Prisons, that have created policies for housing prisoners with mental illness that does not exacerbate their mental illness.[10]

41.    Most mental health programs for mentally ill detainees require a minimum of 10 hours structured and 10 hours unstructured out-of-cell time per week for each detainee, and assist the detainees with the behaviors, such as difficulties with hygiene, described by the Jailers as a penological justification to isolate women detainees.

42.    From 2001 to 2007, I was involved in managing the Mississippi State Penitentiary (MSP) Unit 32 (Supermax), where inmates with mental illness were isolated for extended periods.  MSP Unit 32 housed the most violent and disruptive inmates in the Mississippi Department of Corrections, many of whom suffered from mental illness.  Mentally ill inmates were held in a harsh and punitive

---

[10] U.S. Dep't of Just., Rep. and Recommendations Concerning the Use of Restrictive Housing 48-49 (2016); Eli Hager & Gerald Rich, *Shifting Away from Solitary*, The Marshall Project (Dec. 23, 2014), https://www.themarshallproject.org/2014/12/23/shifting-away-from-solitary.

environment with severe isolation, idleness, little access to exercise, and sanitary conditions that were unacceptable.  The conditions of confinement at MSP Unit 32 were very similar to the those described in the South Fulton Jail B, C, and G Pods. Mentally ill inmates started fires, flooded tiers, smeared feces, and frequently injured themselves.

43.     A negotiated consent decree related to the conditions in MSP Unit 32 was signed by the parties to *Presley v. Epps*, 4:05-cv-00148-JAD (N.D. Miss.), in the Spring of 2007.  As part of the *Presley v. Epps* Consent Decree, the MDOC's private third-party medical and mental health vendor, Wexford Health Sources, worked in collaboration with MSP Unit 32 custody staff to develop an intermediate level of mental health treatment equivalent to halfway house or day care treatment in the community.  Wexford and MDOC developed and implemented a program to move inmates from administrative segregation (isolation) status to congregate activities.

44.     The results of moving MDOC mentally ill inmates from administrative segregation status at MSP Unit 32 contradicted the assumption that mentally ill inmates (many disruptive, violent, and assaultive) could not be programmed safely at a lower level of security and controlled without continuing extreme isolation.  Once the alternative to segregation was implemented, dramatic

15

change occurred.  The mentally ill inmates' disciplinary reports and serious

incidents decreased once they were removed from administrative segregation

status, thereby improving the living and working conditions for inmates and staff

alike and effectively making the prison safer.  Out-of-cell time and programming

were identified as the driving forces that were instrumental in changing inmates'

behavior.[11]

### b.  Opinions Regarding Mental Health Services

45.     The women detainees in the South Fulton Jail in B, C, and G Pods

meet the definition of inmates with serious health needs and are not provided the

level of treatment and care necessary to ensure their safety and well-being.

### i.  Jailers Remain Responsible for Providing Appropriate Custody and Adequate Care of Mentally Ill Detainees Despite Contracting with a Medical Services Provider

46.     The Jailers contend that they rely on trained medical providers to

ensure that all inmates, including those suffering from mental health disorders,

receive the treatment they need for their condition.  Jailers cannot absolve

themselves of responsibility for the care and treatment of individuals in their

custody.  While it is reasonable to rely on mental health professionals to dictate

---

[11] Terry Kupers, et al., *Supermax Administrative Segregation: Mississippi's Experience Rethinking Prison Classification and Creating Alternative Mental Health Programs*, 36 Crim. Just. & Behavior 1037 (2009).

treatment decisions, it is not reasonable to defer to those professionals for access to treatment, maintenance, and general well-being of inmates.

47.     In my capacity as Mississippi Department of Corrections (MDOC) Deputy Commissioner for Institutions, certain MDOC system services were contracted to a third-party vendor of medical, mental health, and food services. MDOC remained the ultimate authority responsible for oversight of these services and for ensuring the necessary services were provided and received by the inmate population.  Contracting medical and mental health services and programs to a third party does not relieve Jailers of their duty to ensure detainees receive necessary mental health services and treatment.

48.     In my corrections experience, mental health programs require an integrated approach.  Jailers and mental health staff must jointly work in concert to develop individualized treatment plans and meet frequently to review each detainee's individualized plan objectives and goals.  Each entity needs the other's input to address detainees' mental health issues relevant to their supervision and care.  Mental health staff cannot provide necessary mental health services without Jailer assistance.  Jailers have more opportunities to interact with detainees and their observations and input are vital to assisting mental health staff in managing detainees' mental illness.

49.     The Jailers' absolute reliance on NaphCare to ensure all detainees, including those experiencing mental health disorders, receive treatment for their conditions is not sound correctional procedure or practice.  The Jailers and NaphCare have a dual duty to ensure detainees are receiving necessary treatment for their mental illness.  The necessary detainee care, custody, and control cannot be provided by one without the other.

> **ii.     Quality Training and Opportunities for Out-of-Cell Observation Are Required for Correctional and Mental Health Staff to Appropriately Assess and Adequately Treat Detainees**

50.     Mentally ill detainees, especially those who are incompetent, are frequently incapable of requesting mental health assistance because their mental health has deteriorated to a point where they are unable to recognize or communicate a need for assistance.  Correctional staff need quality training on recognizing mental illness symptoms and managing detainees with mental illness. Without this training, correctional staff are unable to recognize symptoms of mental illness and lack the necessary skills and abilities to appropriately interact with mentally ill detainees and know when to request mental health intervention. In my corrections experience, specialized training is essential for correctional staff to successfully assess and manage prisoners with severe mental illness.

51.    Detention officers briefly walking by and visually observing a prisoner in their cell every 30 minutes to one hour does not provide sufficient opportunity to properly assess prisoners kept in isolation for extended periods that are experiencing severe mental illness symptoms.  Correctional staff must have face-to-face interaction for extended periods of time outside of the cell to observe the detainee participating in their daily structured and unstructured activities and to ensure the detainee is capable of maintaining their basic needs: hygiene, cell cleaning, consuming meals, not displaying self-injurious behavior, etc.

52.    Continuous cell confinement for 23-24 hours a day allows detainees to languish in their cells for long periods of time with the exacerbation of their mental illness symptoms undetected by Jailers and mental health staff.  Visual observation that the detainee is alive and breathing inside a cell every 30 minutes to one hour fails to provide Jailers with the interaction necessary to verify a mentally ill detainee is safe from harm and not decompensating, jeopardizing their safety and well-being.  Communicating through the cell door tray slot is not conducive to performing a quality assessment.  Moreover, security rounds that Fulton County Jail personnel conduct are too infrequent to allow jail staff to ensure that inmates are safe and not experiencing any physical or mental health concerns.

53.     In my correctional experience, necessary assessments and treatment by mental health providers likewise cannot be provided at cell side, by communicating through a tray slot.  This is because detainee conversations at cell side can be overheard by other detainees and non-mental health staff.  Jails must have sufficient correctional staff to remove detainees from their cells for face-to-face interviews in a private setting, where the detainee and mental health practitioner can hold confidential conversations and effectively communicate. Mental health staff conducting daily rounds and performing sessions at the cell side without a face-to-face interview in a private setting is not providing mental health treatment.

54.     That women detainees live in unsanitary conditions, and have discontinued personal hygiene and cell cleaning, is clear evidence that Jailers and mental health staff are failing to recognize the deterioration of detainee mental health and are failing to intervene.  Jailers have a duty and responsibility to intervene and assist detainees incapable of maintaining their personal hygiene and cell sanitation to provide a safe and humane living environment.  It is unreasonable and unacceptable correctional practice for Jailers to allow detainees' personal hygiene to deteriorate to a level endangering their well-being and to allow cells to become filthy and unsanitary.

### c.  Opinions Regarding Facility Maintenance

55.    Photographs in the Plaintiffs' complaint show that detainees in B, C, and G Pods are subjected to deplorable and unacceptable conditions of confinement.  The maintenance issues described in the Complaint and reflected in these photographs, including plumbing issues such as standing water, lack of sufficient drinking water, and a range of sanitation problems, are unacceptable conditions of confinement.

56.    The Jailers should have corrective action and preventive maintenance plans with reasonable time frames to address the South Fulton Jail's unacceptable conditions of confinement.

I swear under penalty of perjury that the information given herein is true and correct and I understand that a false answer to any item my result in a charge of false swearing.

Sworn by me this 25th day of June, 2019.

/s/ Emmitt L. Sparkman
Emmitt L. Sparkman

# EXHIBIT 1

## *EMMITT L. SPARKMAN*

███████████████

### *Olive Branch, Mississippi 38654*
### *662* ██████████
███████████████ *@gmail.com*

## EXPERIENCE:

9/16 – Present      **Self-Employed-Correctional Consultant**
                    ██████████████

                    **Olive Branch, Mississippi 38654**

                    Provide consulting, technical assistance and subject matter
                    expert services in the field of corrections.

6/01 – 8/16         **Mississippi Department of Corrections**
                    **723 North President Street**
                    **Jackson, Mississippi 39202-3097**

                    **Director of Education (5/13-8/16)**
                    Mississippi State Penitentiary
                    P. O. Box 1057
                    Parchman, Mississippi 38738

                    Planned, directed and coordinated Academic and Vocational
                    Programs for the prison complex.  Selected Education Program
                    equipment and maintains equipment inventories.  Prepared and
                    maintained the annual budget.  Responsible for developing Academic
                    and Vocational goals for students/offenders in coordination with the
                    overall Agency Education Program.  Supervised professional and
                    clerical staff engaged in providing Academic and Vocational
                    instruction to the offender population.

**Deputy Commissioner-Institutions (11/02-5/13)**
Central Office
723 North President Street
Jackson Mississippi 39202-3097

Direct the Institution Division of the Department of Corrections with a population of approximately 21,000 offenders and 2500 employees consisting of (3) state institutions, (5) private prisons, and (15) regional prisons. The Deputy Commissioner for Institutions is responsible for the programs and services for state offenders incarcerated in state institutions, private facilities, regional facilities and county jails. The Institution Division has an annual operating budget exceeding 200 million dollars.

**Superintendent (2/10-5/12)**
Mississippi State Penitentiary
P. O. Box 1057
Parchman, Mississippi 38738

Direct the operations of a prison complex with 6 correctional facilities and 1000 employees housing a maximum population of 3500 offenders. The prison complex consists of two areas supervised by a Warden reporting to the Superintendent. Minimum to maximum custody offenders including death row were incarcerated at the institution. The Superintendent manages an annual operating budget of approximately 70 million dollars.

**Superintendent (6/01 - 11/02)**
Mississippi State Penitentiary
P. O. Box 1057
Parchman, Mississippi 38738

Directed the operations of a prison complex with 18 correctional facilities and 1580 employees housing a maximum population of 5551 offenders. The prison complex consisted of five areas with each area supervised by a Warden reporting to the Superintendent. Minimum to maximum custody offenders including death row were incarcerated at the institution. The Superintendent managed an annual operating budget of approximately 70 million dollars.

9/96 - 6/01      **Wackenhut Corrections Corporation**
**4200 Wackenhut Drive #100**
**Palm Beach Gardens, Florida  33410**

*__Warden__*
Marshall County Correctional Facility
P.O. Box 5188
Holly Springs, MS  38634

Managed daily operations of a 1,000-bed medium security institution by contract for the Mississippi Department of Corrections.  Ensure compliance with established Corporate and Department of Corrections policies and procedures. Responsible for a $10.4 million annual budget and a staff of 241 employees.

11/92 - 8/96      **Kentucky Department of Corrections**
**Adult Correctional Institutions**
**P. O Box 2400**
**Frankfort, KY 40601**

*__Warden__*
Northpoint Training Center
P.O. Box 479, Burgin, KY  40310
Managed daily operations of a 938-bed medium security institution to ensure compliance with established policies and procedures. Maintained fiscal policy and supervised staff of more than 280 employees.  Was responsible for a $10.6 million annual budget.

5/90 - 10/92      **Concept, Incorporated**
**P.O. Box 333**
**Louisville, Kentucky 40201**

*__Facility Director__*
Pre-Parole and Intermediate Sanction Facility
Mineral Wells, Texas and  Pre-Parole Facility
Bridgeport, Texas.

Served as Facility Director of a 600-bed male Pre-Parole Facility, 200-bed male Intermediate Sanction Facility in Mineral Wells, Texas and a 100 bed Female Pre-Parole Facility in Bridgeport, Texas. Responsible for overall management of the facilities with 290 employees and annual budgets exceeding ten million dollars.  Initial employment was as Deputy Director of Security and promoted progressively to Facility Director over three institutions.

1985 - 1990  **Brazoria Co. Alcohol/Education Program**
**P.O. Box 1300, Angleton, TX  77516-1300**

*Instructor*
Served in this position while employed by the Brazoria County Juvenile and Adult Probation Departments.  Instructed persons required by the Courts to attend Alcohol Education Classes. Developed lesson plans.  Maintained class records and appropriate statistics. Evaluated participants to determine probability of future alcohol problems and made appropriate referrals.

1988 - 1989  **Brazoria County Juvenile Probation Department**
**County Road 171, Angleton, TX  77515**

*Detention Superintendent/Intake Supervisor*
Supervised three Juvenile Probation Officers, twelve detention workers and support staff. Directed daily operations. Screened new referrals and reviewed cases forwarded to the District Attorney. Implemented programs and services required by the Brazoria County Juvenile Board of Judges and Texas Juvenile Probation Commission.

1984 - 1988  **Brazoria County Adult Probation Department**
**P.O. Box 1300, Angleton, TX  77516-1300**
*Intensive Supervision Officer*
Supervised high-risk probationers.  Ensured all prospective candidates for intensive supervision met the stated eligibility criteria. Developed and implemented supervision plans.  Prepared pre-sentence and post-sentence investigations.  Provided quarterly reassessment reports to the Texas Adult Probation Commission Case Classification System and Strategies for Case Supervision System.

Initial employment was a Probation Officer supervising 170 misdemeanor and felony adult probationers.  Conducted office visits for probationers and made field contacts.  Initiated revocation proceedings and prepared pre-sentence investigations.

1975 - 1984        **Texas Department of Corrections**
                   **P.O. Box 99**
                   **Huntsville, Texas 77342**

### *Major of Correctional Officers* **(1982 - 1984)**
Ramsey II Unit, Rosharon, TX 77583
Supervised 175 uniformed personnel on a unit with 1,000 high-risk inmates. Directed the operation of all departments within facility. Planned and maintained overall security.

### *Captain of Correctional Officers* **(1981-1982)**
Ferguson Unit, Midway, TX 77852
Essentially the same duties as that of Major.  Supervised 240 employees and 2,500 first-offender inmates between ages 17-21.

### *Education Consultant* **(1978 - 1981)**
Eastham Unit, Lovelady, TX  75851
Scheduled college level academic/vocational classes. Supervised staff of 20-25 instructors and provided security for staff and inmates in facility of 3,000 multi-recidivist inmates. Coordinated programs through Lee College, Baytown and Windham School System, Huntsville, Texas.

### *Correctional Officer II* **(1976 - 1978)**
Maintained security in academic/vocational areas under direction of the Educational Consultant.  Assumed duties in his absence.

### *Correctional Officer I* **(1975 - 1976)**
Custodial supervision of 400 inmates.

## PROFESSIONAL TRAINING:

PRISON RAPE ELIMINATION ACT (PREA) STANDARDS AUDITOR TRAINING, Bureau of Justice and the PREA Resource Center, Completed June 2013.

EMERGENCY PREPAREDNESS INCIDENT COMMAND SYSTEM FOR CORRECTIONS, National Institute of Corrections, United States Department of Justice, Completed August 2008

ADVANCED MANAGEMENT STRATEGIES FOR PRISON DISTURBANCES, National Institute of Corrections, United States Department of Justice, Completed 1996.

MOTIMER-FILKINS COURT PROCEDURES FOR IDENTIFYING PROBLEM DRINKERS EVALUATOR'S COURSE, Texas Adult Probation Commission and Texas Commission of Alcoholism. Certified March 1986.

STRATEGIES FOR CASE SUPERVISION, Texas Adult Probation Commission and Texas Commission of Alcoholism, Completed December 1985.

CASE CLASSIFICATION, Texas Adult Probation Commission, Completed July 1985.

ALCOHOL RELATED TRAFFIC OFFENDER EDUCATION, Certification Administrator/Instructor Course, Sam Houston State University, Huntsville, Texas, Completed January 1985.

ADULT BASIC PROBATION OFFICERS WORKSHOP, Texas Probation Training Academy, Criminal Justice Center, Sam Houston State University, Huntsville, Texas, Completed April 1984.

EVELYN WOODS READING DYNAMICS COURSE, Huntsville, Texas, Completed April 1979.

## PROFESSIONAL SERVICES:

8/95 - Present      ***Certified Auditor.*** Accreditation Program, American Correctional Association, 206 North Washington Street, Alexandria, Virginia.

8/95 – 8/96      ***Adjunct Instructor***, Criminal Justice, Correctional Services, Eastern Kentucky University, Richmond, Kentucky.

## EDUCATION:

1993 - 1999      EASTERN KENTUCKY UNIVERSITY, Richmond, KY; M. S. in Criminal Justice-General Studies

1981      TEXAS A&M UNIVERSITY, Bryan/College Station, TX; 36 hours in Correctional Supervisor Training

1975 - 1978      SAM HOUSTON STATE UNIVERSITY, Huntsville, TX; B.S. in Criminology and Corrections

1974 - 1975      ALVIN COMMUNITY COLLEGE AND PARIS JUNIOR COLLEGE, Paris, TX

1970 - 1974      CLARKSVILLE (Texas) HIGH SCHOOL

## PROFESSIONAL ACHIEVEMENTS:

WARDEN OF THE YEAR, 2002, North American Association of Wardens and Superintendents

CRIMINAL JUSTICE PROFESSIONAL OF THE YEAR, 2001, Mississippi Association of Professionals in Corrections

WARDEN OF THE YEAR, 1997, Wackenhut Corrections Corporation.

EDUCATION CONSULTANT OF THE YEAR, 1981, Texas Department of Corrections.

## PROFESSIONAL AFFILIATIONS:

American Correctional Association
North American Association of Wardens and Superintendents

## PERSONAL:

Date of Birth:      ████████1956
Health:             Excellent
Marital Status:     Married

**Publications**
Terry A. Kupers et al, "Beyond Supermax Administrative Segregation:  Mississippi's Experience Rethinking Prison Classification and Creating Alternative Mental Health Programs."  Criminal Justice and Behavior, Volume 36 Number 10, October 2009. Copyright 2009 International Association for Correctional and Forensic Psychology.

Emmitt L. Sparkman, Kevin I. Minor, and James B. Wells, "A Comparison of Job Satisfaction Among Private and Public Employees." Copyright 2000 by Roxbury Publishing Company.

**Thesis**
Job Satisfaction of Kentucky Correctional Employees: A Comparison of Private and Publicly Operated Prisons, Eastern Kentucky University, December, 1999.

**Presented Publications**
"A Comparison of Job Satisfaction Among Private and Public Employees," Academy of Criminal Justice Sciences Annual Meeting; New Orleans, Louisiana, March 2000. Kevin I. Minor PhD, James B. Wells, PhD and Emmitt L. Sparkman

**Conference/Training Presentations**
"What Works? Best Practices in Reentry Initiatives".  Panel Presenter.  Reentry Symposium.  Mississippi Department of Corrections.  June 21, 2018.

"Reform Efforts in the United States". Panel Presenter.  International and Interdisciplinary Perspectives on Prolonged Solitary Confinement".  University of Pittsburg School of Law. April 15-16, 2016.

"Using Administrative Segregation to Manage Offenders".  American Correctional Association, Winter Conference Workshop: January 28, 2013 Houston, Texas.

"Southern Legacies: North American Association of Wardens and Superintendents-Wardens of the Year Experiences".  North American Association of Warden and Superintendents, 2009 Training Conference. April 9, 2009 Memphis, Tennessee.

"Hurricane Katrina:  The Mississippi Department of Corrections Experience".  4th Annual Correctional Security Conference. October 2007 Cincinnati, Ohio.

"A Look Inside Death Row".  American Correctional Association, 136th Congress of Correction Workshop: August 16, 2006 Charlotte, North Carolina.

"The Mississippi Department of Corrections Hurricane Katrina Experience".
National Institute of Corrections/Maryland Department of Public Safety and Correctional Services Conference of Regional Interstate Emergency Agreements: May 8-10, 2006 Baltimore, Maryland.

**Expert Witness**

Nancy Kennedy, as Special Administrator of the Estate of Jessica Joy Kennedy vs. Kenny Boone, individually and in his official capacity as Sheriff of Florence County, Florence County Sheriff's Office and Deputy Sheriff Shelia Reed. C/A No.: 2:18-cv-00043-AMQ-MGB.  In the United States District Court for the District of South Carolina Florence Division.  Defendant Expert Jail Operations. Case Review. (Pending)

Jason Dunn v Management Training Corporation and John and Jane Does 1-100. In the United States District Court for the Southern District of Mississippi Western Division. Plaintiff Expert Prison Operations. Case Review. (pending)

Trevell Garner v County of Orangeburg, Sheriff Leroy Ravenell in his official capacity as Sheriff of Orangeburg County, Orangeburg County Detention Center, and Southern Health Partners, Inc. State Case: 2017-CP-38-01148. Defendant Expert Jail Operations. Case Review. Case Settled.

Gary Locklear, individually and a Personal Representative of the Estate of Roy Locklear vs. Marlboro County Sheriff's Office, Marlboro County Detention Center, Dr. Charles Bush, Southern Health Partners, and South Carolina Law Enforcement Division:  C/A No.:  2016-NI-34-00003.  In the Court of Common Pleas, Fourth Judicial Circuit County of Marlboro: C/A No.:  2017-CP-34-00064. Defendant Expert Jail Operations. Case Review. (pending)

Ahmad Ajaj v United States of America; Federal Bureau of Prisons:
Civil Action No. 15-cv-00992-RBJ-KLM.  Plaintiff Expert Prison Operations.
Case Review, Expert Report, Deposition, and Trial Testimony.

Steven Spencer vs. South Carolina Department of Corrections.
Case No.: 202015-CP-3-0229.In the Court of Common Third Judicial Circuit.
Defendant Expert Prison Operations. Case Review. Case Settled.

Rodney Parker SCDC #315646, Plaintiff, v  Warden Stevenson; Major Sutton; Captain Washington; Lt. Jackson; Sgt. Esterline; Sgt. JC Williams; Ofc. Beckett; Ofc. McCoy; Ofc. Suarez; Ofc. Dooley; Nurse K. McCullough; and Nurse Jane Doe, Defendants: Civil Action No.:  5:13-cv-02795-TLW-KDW. In the United States District Court. For the South Carolina Florence Division.  Defendant Expert Prison Operations.  Case Review and Expert Report. Case Settled.

Maxine Massey, individually and on behalf of the Estate of Thurston Massey, Deceased,  v   Orangeburg County Detention Center, the County of Orangeburg, South Carolina Department of Public Safety-Highway Patrol Officer Matthew D. Ocasio, individually And/or in a representative capacity, Vernetia Dozier, individually and/or in a representative capacity, Defendants:  Case Number: 9:16-cv-03478-JMC-BM In the United States District Court. For the District of South Carolina Orangeburg Division. Defendant Expert Jail Operations. Case Review and Expert Report.  Case Settled.

Antonio Andres Lechuga, Plaintiff, vs. Maricopa County Sheriff Joe Arpaio; Detention Officer Kevin Holsom and Spouse Holsom, husband and wife, Defendants:  Case 16-CV-01178-PHX-DJH (JZB).  In the United States District Court. District of Arizona. Defendant Expert Jail Operations. Case Review. Case Settled.

Antonio Andres Lechuga v. Maricopa County, et al:  Case No.  16-01724-PHX-DJH (JZB).  In the United States District Court. District of Arizona.  Defendant Expert Jail Operations. Case Review. Case Settled.

Christie Ellis, As Guardian of Kendrick C. Watson vs.  Tim Helder, Washington County Sheriff; Randall Denzer, Chief Jail Administrator; Lauren Jones, Jailer; James Morse, Jailer; Corporal T. Cobb, Officer; Mark Cuzick, Jailer; Brandon Muggy, Jailer; and John and Jane Does 1-5:  Case 5:16-cv-05056-TLB.  United States District Court.  Western District of Arkansas.  Fayetteville Division. Plaintiff Expert Jail Operations. Case Review. Case Settled.

Miguel Angel Herrera Alderete v. Joseph M. Arpaio, in his official capacity as Sheriff of Maricopa County Arizona, et al.: Case 2:16-cv-01175-SPL-DMF. United States District Court, District of Arizona. Defendant Expert Jail Operations.  Expert Report. (Pending)

Antonio Crawford vs. Chris Hunt, Sgt; E. Bittinger, DHO; Tony Smith, Captain; Tracy Sims, Contraband Officer, and David Craig III, Sgt.:  C/A No.:  8:15-cv-01362-MGL-JDA.  In the District Court of the United States, District of South Carolina, Anderson/Greenwood Division.  Defendant Expert Prison Operations.  Case Review and Expert Report.  Case Settled.

Sandra Johnson, individually and as Personal Representative of the Estate of Charles Tucker, Plaintiff, vs.  Warden Willie L. Eagleton, Officer Chaka Ray, Officer Rolando Raigoza, Lieutenant Ronald Brayboy, South Carolina Department of Corrections, Defendants:  C/A No. 0:15-15-cv-04934-JFA-PJG.  In the United States District Court, District of South Carolina, Florence Division.  Defendant Expert Prison Operations. Case Review and Expert Report.  Case Settled.

The Estate of Robert Vallina, et al. Plaintiffs, v. The County of Teller Sheriff's Office and its Detention Facility, et al. Case No. 15-cv-01802-RM-CBS, filed in the United States District Court, for the District of Colorado.  Defendant Expert Jail Operations. Case Review and Expert Report. Case Dismissed on Summary Judgment.

Boatwright v Barnwell County Detention Center County, et. al, In the Court of Common Pleas:  State Case: 2015-CP-06-00364.  Defendant Expert Jail Operations.  Case Review and Expert Report.  Case Settled.

Justin Conrad v. Captain Donnie Stonebreaker, et. al, United States District Court, District of South, Columbia Division:  Case No.:  4:15-cv-03374-RMG-TER:  and Justin Conrad v. South Carolina Department of Corrections et. al, In the Court of Common Pleas: Case No.: 2014-CP-31-190.  Defendant Expert Prison Operations.  Case Review and Expert Report. Case Settled.

Richard Campodonico v. Captain Donnie Stonebreaker et. al, United States District Court, District of South, Columbia Division:  Case No.: 4:15-cv-03373-RMG-TER  and Richard Campodonico v. South Carolina Department of Corrections et. al, In the Court of Common Pleas:  Case No.:  2014-CP-31-192.  Defendant Expert Prison Operations.  Case Review and Expert Report.  Case Settled.

Angela Parker Chavis, Individually and as Personal Representative the Estate of James Parker, Plaintiff vs.  Willie Bamberg, Lt. Kim Fisk, Sgt. Christopher James, Ofc. Latoya Echols, and Ofc.  Harrie Mintz, Defendants.  United States District Court. District of South Carolina. Orangeburg Division. C/A No.: 0:16-cv-00240-DCN-PJG.  Defendant Expert Jail Operations.  Case Review. (Pending)

Angela Parker Chavis, Individually and as Personal Representative the Estate of James Parker, Plaintiff vs.  Orangeburg County, et al.  State of South Carolina. County of Orangeburg.  In the Court of Common Pleas.  2015-CP-38-00302.  Defendant Expert Jail Operations.  Case Review. (Pending)

Johnny Eason, Individually and as Personal Representative of the Estate of Shannon Eason, Plaintiff vs. Willie Bamberg, Capt. Leola McCutchen, Sgt. Shaletha Murphy, Lt. Carolyn Murdock, Ofc. Tahsha Jarrett, and Ofc. Toni Bradley.  United States District Court. District of South Carolina. Orangeburg Division. C/A No.:  9:16-CV-748.RBH-BM.  Defendant Expert Jail Operations.  Case Review.  Case Settled.

Johnny Eason, Individually and as Personal Representative of the Estate of Shannon Eason, Plaintiff vs.  Orangeburg County, et al.  State of South Carolina. County of Orangeburg.  In the Court of Common Pleas.  2015-CP-38-00608.  Defendant Expert Jail Operations.  Case Review. Case Settled.

Lymisha Ryant, Individually and as Personal Representative of the Estate of Tony Glen Tyler, Plaintiff.  v.  Willie Bamberg, Sgt. Edward Rawls, Roy Brooks, Melanie Williams, Harrie Mintz, Defendants.   United States District Court. District of South Carolina. Orangeburg Division.  Civil Action No: 5:15-cv-02035-JMC-PJG.  Defendant Expert Jail Operations.  Case Review.  Case Settled.

June Green, as Personal Representative of the Estate of Vernon Green, Jr. vs. South Carolina Department of Mental Health, et al.  In the Court of Common Pleas for the Fifteenth Judicial District, County of Richland, the State of South Carolina. C/A No. 2015-CP-400-6222.  Defendant Expert Correctional Facility Operations.  Case Review. Case Settled.

Deddrick Ervin vs. South Carolina Department of Corrections.  In the Court of Common Pleas for the Fourteenth Judicial District, County of Allendale, the State of South Carolina.  Civil Action No.: 2014-CP-03-185. Defendant Expert Correctional Facility Operations.  Case Review, Expert Report and Deposition.  Case Settled.

Joseph Raymond Poole as Personal Representative for the Estate of Joseph Raymond Poole II v. South Carolina Department of Corrections, Joseph McFadden as Warden for the Lieber Correctional Institution and Lieber Correctional Institution. In the Court of Common Pleas for the Fifteenth Judicial Circuit, County of Richland, the State of South Carolina C/A No. 2014-CP-18-2021.  Defendant Expert Prison Operations.  Case Settled.

Andrei Lele v.  Maricopa County, a political subdivision of the State of Arizona:  Sheriff Joseph Arpaio, in his official capacity as the Sheriff of Maricopa County.  In the Superior Court of the State of Arizona.  In and for the County of Maricopa County. Complaint No.:  CV2014-054268.  Defendant Expert Jail Operations.  Case Review and Expert Report.  Case Settled.

Lymisha Ryant, Individually and Personal Representative of the Estate of Tony Glenn Tyler v. Orangeburg County, South Carolina et al. In the Court of Common Pleas.  Case No.:  2014-CP-38-962.  Defendant Expert Jail Operations.  Case Review.  Case Settled.

Jenny Hearn, Individually and as a Personal Representative of Nathaniel P. Hearn v. Orangeburg County et al. In the Court of Common Pleas.  Case No.:  2014-CP-38-96. Defendant Expert Jail Operations.  (Pending)

Daniel Nichols v. Sheriff Joseph Maricopa County, et al.  The United States District Court In and For the District of Arizona.  Case No. 2:15-CV-01609-DJH.  Defendant Expert Jail Operations.  Case Review.  Case Settled.

Michael J. Richard v. Maricopa County et al. The United States District Court. District of Arizona. Case No: CV14-02319-PHX-SPL. Defendant Expert Jail Operations.   Case Review. (Pending)

Frank Staples v. Richard W. Gerry, Warden, New Hampshire State Prison, et al. Complaint: Case Number 14-cv-473- JL.  Defendant Expert Prison Operations. Expert Report. Case Dismissed.

Melissa Poore, et al. v. Avalon Corrections Services, Inc., d/b/a Turley Residential Center, LLC, et al. Complaint: Case Number CJ-2013-3747.  Plaintiff Expert Failure to Protect.  Expert Report. Case Settled.

Russell Walker, Individually, and on behalf of the statutory beneficiaries of Douglas Walker, deceased; and Estate of Douglas Walker, an entity established under the probate laws of the State of Arizona v. Sheriff Joseph Arpaio, et al.  Complaint: Case

Number 2:15 CV-00226-SPL. Defendant Expert Classification.  Case Review, Deposition, and Trial Testimony.  Jury Verdict for the Plaintiff.

Mary Ellen Klatt, as the Personal Representative of the Estate of John Klatt v. Sheriff Joseph Arpaio, et al.  Complaint:  2:14 CV-02711-SPL.  Defendant Expert Classification.  Case Review and Deposition.  Jury Verdict for the Plaintiff.

Levi Bing v South Carolina Department of Corrections, et al. In the Court of Common Pleas. Third Judicial District. Case No.:  2011-CP-31-0216.  Defendant Expert Prison Operations.  (Pending)

Michael Furtick v Lt. Kim Fisk, Officer Terrance Williams, Officer Chico Salley, and Officer LaQuanna Shanee Aiken.  In the United States District Court for the District of South Carolina, Orangeburg Division:  Docket No.:  4:14-cv-2884-BHH-TER. Defendant Expert Prison Operations.  Case Review.  Case Settled.

Brandon Glover v Jimmie Antonio Williams, et al. In the Court of Common Pleas:  Civil Action No.: 2014-CP-31-126. Defendant Expert Prison Operations. (Pending)

Anthony L. Mann v Lt. C. Failey, et al. In the United States District Court for the District of South Carolina:  Civil Action No. 011-cv-02232-RMG.  Defendant Expert Prison Operations. Expert Report.  Trial and Partial Jury Verdict for Plaintiff.

Bryan Clyburn v South Carolina Department of Corrections et al. In the Court of Common Pleas: Civil Action No. 2014-CP-27-018.  Defendant Expert Prison Operations. Case Review.  Case Settled.

Jonathan Bradley Lisle v South Carolina Department of Corrections et al. In the Court of Common Pleas: Civil Action No. 2014-CP-40-6208.  Defendant Expert Prison Operations. Summary Judgment for the Defendants.

Christopher Ford v South Carolina Department of Corrections et al. In the Court of Common Pleas:  Civil Action No. 2013-CP-18-1238. 2014.  Defendant Expert Prison Operations. Summary Judgment for Defendants Prior to Trial.

Christopher Lemear v. William Wrenn, Commissioner, et al.  Merrimack County Superior Court Docket No. 217-2013-CV-00372.  Defendant Expert.  Prison Operations and  Classification.  Case Review and Expert Report.  2014.  Case Dismissed.

Leaphart v. South Carolina Department of Corrections et al. Civil Action Number: 2012-CP-35-40. Case Review for Defendants.  2014.  Case Settled.

Tolen v. South Carolina Department of Corrections et al.  Civil Action Number: 2012-CP-35-39.  Case Review for Defendants.  2014.  Case Settled.

Leaphart v Warden Leroy Cartledge et al: Civil Action Number 1:13-cv-01564-DCN-SVH.  Case Review for Defendants. 2014.  Case Settled.

Tolen v Warden Leroy Cartledge et al:  Civil Action Number 1:13-cv-01565-DCN-SVH.Case Review for Defendants.  2014.  Case Settled.

Susan Piazzola, as Personal Representative of the Estate of Saverio E. Piazzola v. Lieber Correctional Institution and South Carolina Department of Corrections et al, Civil Action Number: 2012-CP-18-2151.  Case Review for Defendants.  2013-2014.

John Doe Plaintiff vs. Board of County Commissioners of Payne County and Advanced Correctional Healthcare, Inc. Case No. CIV-13-108-F. Plaintiff Expert: Case Review, Expert Report and Witness for Trial (No Testimony)-Jail Classification and Operations. 2013-2014. Jury Verdict for the Defendants.

George Ruiz et al. v. Edmund G. Brown, Jr., et al. United States District Court, Northern District of California, Docket Number: 09-05796 CW. Plaintiff Expert-Corrections. 2013-2015. Case Settled.

Mack Myers v Paula Rector Jackson, et al. 0:12-cv-02526-TMC-PJG. Defendant Expert:  Case Review and Expert Report-Corrections Facilities Management and Operations.  2013-2014. Dismissed with Parties Reaching a Non-Monetary Settlement.

Russell Dawson v. South Carolina Department of Corrections et al, Civil Action Number: 2010-CP-18=1922 and Russell Dawson v. McKiver Bodison, Warden et al, Civil Action Number 8:11-1781-JFA-JDA, Claim Number: 77177. Case Review for Defendants.  2013.

Odella May Smith, Personal Representative of the Estate of Eddie Hue Smith, Jr., v. Arkansas Department of Corrections, et al:  Number:  12-0500-CC Arkansas State Claims Commission.  Defendant Expert:  Testified on Correctional Facility Security and Operations.  October 10, 2012. (Reduced Monetary Award for Loss Claim)

Louis Henderson, et al, v. Kim Thomas, Commissioner, Alabama Department of Corrections, et al: Civil Action Number:  2:11cv224-MHT Middle District Alabama. Deposition for Plaintiff-Care, Custody, and Control Mississippi Department of Corrections HIV/AIDS Offenders.  June 5, 2012.

Baxter Felix Vinson, Jr., v. Sharonda Sutton, et al:  Civil Action Number:  0:10-847-CMC-PJG.  Defendant Expert-Correctional Facilities Management and Operations.

Alice A. Walker, as Personal Representative of the Estate of Daniel Preston Walker v South Carolina Department of Corrections et al; Case Number:  2008-CP-31-0131. Defendant Expert-Correctional Facilities Management and Operations (Case Settled).

Thomas S. Marchese  v Sheriff of Horry County, et al:  C/A No. 4:08-cv-03706-TLW. Defendant Expert-Correctional Facilities Management and Operations (Case Settled).

Charles Thomas #180540 v. South Carolina Department of Corrections:  Civil Action No. : 2008-CP-27-00441.  Defendant Expert-Correctional Facilities Management and Operations (Case Settled).

Norman Bradley v. Just Care, Inc. d/b/a Columbia Care Center:
Civil Action No. :  08-CP-40-7714. Defendant Expert- Correctional Facilities Management and Operations (Case Settled).

Frederick T. McKnight as Personal Representative of the Estate of Brooks Leon Thomas vs. South Carolina Department of Corrections et al.; Civil Action No. 3:07-3311-MJP. Defendant Expert-Correctional Facilities Oversight and Management (Case Settled).

Julie E. Brabazon, as Personal Representative for the Estate of Jason Michael Gross v. South Carolina Department of Corrections: In the United States District Court for the District of South Carolina, Greenville Division: C/A No. 07-CP-43-2043, Claim Number 35018. December 2008. Defendant Expert-Correctional Facilities Oversight and Management (ongoing).

Robbie Simmons, as Personal Representative for the Estate of Gazzara D. Carson v. South Carolina Department of Corrections: C/A No. 04-CP-34-0413, Claim Number 18467. November 2008. Defendant Expert-Correctional Facilities Oversight and Management (ongoing).

Shylena Martin as Personal Representative of the Estate of Charles Martin v. South Carolina Department of Corrections et al:  In the United States District Court for the District of South Carolina, Greenville Division;  6:07-CV-03409-GRA (Survival Action) and 6:07-CV-03422-GRA (Wrongful Death Action) Claim Number T38057. May 2008. Defendant Expert-Correctional Facilities Oversight and Management (ongoing).

Deborah Davis, Arthur Bowens, Eric Tate, Keisha Burgess, Earlene Howell and Barbara Beard v. The GEO Group Inc.: In the United States District Court for the Northern District of Mississippi, Western Division; Cause Number 3:06cv85-M-A.
May 2007.  Defendant Expert Report-Correctional Staff Searches.
(Trial-Jury Verdict for the Defendants).

George Brown v South Carolina Department of Corrections, John Ozmint, Director, George Hagan, Head Warden and John Doe Correctional Officers. Federal Case Number 1:06-cv-01423-RBH.  April 2007.  Defendant Expert Report-Correctional Facility Operations. (Case Settled).

Charles Brooks v Richard Stringer, Sheriff of Marion County et al. Civil Action No. 2:04cv120KS-RHW.  October, 2006.  Defendant Expert Report-Correctional Facility Operations.

Richard D. Passman v Sheriff Joel Thames and CNA Surety. No. 2:05CVB5KS-JMR. February, 2006.  Defendant Expert Report-Correctional Facility Operations.

Willie L. Brooks v Edward Neal Martin, American National Bail Bonding Agency, Inc. et al. No. 3:05CV191HTW-JCS.   January, 2006.   Defendant Expert Report-Offender Commitment  and Release Procedures.

Moore v. Fordice, et al. 4:90CV125-JAD. June, 2004. Defendant Expert-Trial, Corrections Issues.

Wanda Langford, Administrator of the Estate of Michael Langford v Union County, Mississippi et al. No. 3:00CV152-P-A (Defendant Expert, Jail Operations and Suicide) Prepared and submitted an expert witness report, attended and participated in the Federal Court Trial. November, 2003.  (Case was settled during trial prior to expert testimony being given).

Russell v Robert L. Johnson et al (Mississippi Department of Corrections) No. 1:02CV261-JAD.  February, 2003. Defendant Expert-Trial, Testified on Correctional Issues.

Underwood v WCC No. 3:01CV179-JAD. January, 2003. Defendant Expert-Trial, Testified on Correctional Administration, Security and Accreditation.
(Jury Verdict for the Defendants).

**Consulting**
Miller v Alabama Cases. Juvenile Life Without Parole Resource Project. Consult and Evaluate Mississippi Department of Corrections Prison Records for Antonio McDowell, David Moody and Dillon Seals. January 2019.

State of Mississippi v. Joshua Miller. Case No. 8542-1-2.  Consulting and Court Testimony for the Defendant. July 2018.

United States Department of Homeland Security. Office of Civil Rights and Civil Liberties Division.  Conditions of Confinement, Subject Matter Expert. June 2018 to Present.

Pulaski County, Little Rock, Arkansas.  Consultant for JFA Institute.  Retained to Participate in an Assessment of the Pulaski County, Arkansas Criminal Justice System. January 2018 to present.

Sacramento County Jail, Sacramento, California.  Consultant for JFA Institute. Retained to Participate in an Assessment of the Sacramento County Jail, Total Separation (T-SEP) Units Inmate Classification and Operations Procedures.  March 2017.

Georgia Department of Corrections. Consultant.  Retained to provide technical assistance for the Georgia Prisoner Reentry Evidence Based Practices at the Lee State Prison, Georgia Department of Corrections.  July 2016-September 2017.

Georgia Department of Corrections. Consultant for the Michigan Council on Crime and Delinquency, Inc., Center for Justice Innovation.  Retained to assist with the Georgia Prisoner Reentry Evidence Based Practices at the Lee State Prison, Georgia Department of Corrections. February 2016-June 2016.

United States District Court Southern District of New York.  Subject Matter Expert for the Court Appointed Monitor.  Mark Nunez, et al. v. City of New York et al. 11 Civ. 5845 (LTS) JCF. October 2015. (ongoing).

South Carolina Department of Corrections.  Retained Consultant.  In T.R., P.R., and K.W., on behalf of themselves and other similarly situated; and Protective and Advocacy for People with Disabilities, Inc. v. South Carolina Department of Corrections et al. C/A No.: 2005-CP-40-2925. In the Court of Common Pleas Fifth Judicial Circuit. 2014-2016.

Louisiana Department of Public Safety and Corrections.  Consultant for JFA Institute. Retained to Participate in an Assessment of the Louisiana Department of Public Safety and Corrections Certified Treatment and Rehabilitation Programs.  June-July 2014.

Arkansas Department of Community Corrections. Consultant for JFA Institute.  Retained to Participate in an Evaluation of Community Corrections Supervision and Conduct an Assessment of the Omega Technical Violator Center. December 2013.

Federal Bureau of Prisons.  Consultant for JFA Institute and CNA.  Retained to Participate in the Review of the Federal Bureau of Prisons Use of Administrative Segregation. 2013-2014.

Indiana Department of Corrections. Provided Technical Assistance to JFA Institute Reviewed and Made Recommendations for  Indiana Department of Corrections Administrative Segregation.  2013.

Oklahoma Department of Corrections.  Participated in a Review and Made Recommendations on the Oklahoma State Penitentiary-Administrative Segregation. 2012.

Colorado Department of Corrections. Provided Technical Assistance on Offender Classification and  Administrative Segregation. 2011-2012.

National Institute of Corrections-Colorado Department of Corrections. Evaluated and Provided Technical Assistance on Administrative Segregation of Offenders. 2011.

Mexico Federal Penitentiary System. Evaluated and Provided Technical Assistance on the American Correctional Association Accreditation Process.  May 2011.

Vera Institute of Justice: Segregation Reduction Project.   Design and Implement Segregation Policy Changes for Illinois, Maryland, and New Mexico Department of Corrections. 2010 to 2013.

Georgia Department of Corrections.  Evaluated Correctional Staffing at Selected Georgia Department of Corrections Prisons. July 2007.

Georgia Department of Corrections.  Trained Executive Staff on Staffing Strategies and submitted Recommendations for Staffing Correctional Facilities.
November-December 2006.