# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| GEORGIA ADVOCACY OFFICE, M.J., K.H., on behalf of themselves and others similarly situated, | : : : : | PRISONER CIVIL RIGHTS 42 U.S.C. § 1983 |
| Plaintiffs, | : : | |
| v. | : : | |
| THEODORE JACKSON, in his official capacity as Sheriff of Fulton County, et al., Defendants. | : : : : | CIVIL ACTION NO. 1:19-CV-1634-WMR-JFK |

## UNITED STATES MAGISTRATE JUDGE'S
## NON-FINAL REPORT AND RECOMMENDATION

The matter is before the Court on Plaintiffs' motion to certify a psychiatric disability class and a competency restoration subclass under Fed. R. Civ. P. 23 [8], Defendants' response in opposition to the motion to certify class [25], and Plaintiffs' reply to Defendants' response [36]. For the reasons discussed below, it is recommended that the motion be granted, with an adjustment to the psychiatric disability class.

## I.    Discussion

This action involves the Fulton County Jail's South Annex, in Union City, Georgia, also referred to as the South Fulton Municipal Regional Jail, and its female mental health pods B, C, and G. (See Compl. at 1, ECF No. 1; Aff. of Captain Tyna Taylor ¶ 3, ECF No. 19-6).[1] Plaintiffs challenge the placement of pretrial female detainees with psychiatric disabilities in prolonged solitary confinement[2] in "deplorable" conditions (Claims One and Two), the denial of a jail-based competency restoration program for women found incompetent to stand trial (Claim Three), and discrimination against the above women in the provision of programs and activities (Claim Four). (Compl. at 75-82).

Plaintiffs assert that they have satisfied the prerequisites of Rule 23(a) and the criteria under Rule 23(b)(2) and move to certify a psychiatric disability class, consisting of all women who experience psychiatric disabilities who are now or will

---

[1] The South Annex contains nine housing units or pods, eight of which house women – pods A, D, E for female general population; pod F for the New Beginning Program; pod I for intake and disciplinary segregation; and pods B, C, and G as female mental health pods. (Compl. ¶¶ 49, 50).

[2] Solitary confinement is a term Plaintiffs use to refer to segregated confinement or isolation, away from the general population, in the mental health pods, generally confined to one's cell for upwards of twenty-three hours a day, usually alone, and sometimes with one other detainee. (Compl. ¶¶ 3-10, 20).

2

in the future be confined in the Fulton County Jail System, and a competency restoration subclass, consisting of all women who experience psychiatric disabilities who are now or will in the future be deemed incompetent to stand trial while confined in the Fulton County Jail system.  (Mot. to Certify Class, ECF No. 8; Br. in Support of Mot. to Certify Class at 1, 7, 21, ECF No. 8-1).  Defendants oppose the motion.  (Defs. Resp. to Mot. to Certify Class, ECF No. 25).

"[A] plaintiff seeking to represent a proposed class must establish that the proposed class is adequately defined and clearly ascertainable." Carriuolo v. Gen. Motors Co., 823 F.3d 977, 984 (11th Cir. 2016) (quoting Little v. T-Mobile USA, Inc., 691 F.3d 1302, 1304 (11th Cir. 2012)) (internal quotation marks omitted).  If the class is adequately defined and clearly ascertainable, the court then must determine whether Rule 23(a) prerequisites are met and whether the proposed class satisfies at least one Rule 23(b) requirement (here, Rule 23(b)(2)).  Id.  As set forth in Rule 23 –

> (a)  . . . . One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> > (1) the class is so numerous that joinder of all members is impracticable;
> >
> > (2) there are questions of law or fact common to the class;

3

>> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.
>
> (b) . . . . A class action may be maintained if Rule 23(a) is satisfied and if . . .
>
>> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . .

Fed. R. Civ. P. 23.

### A.     <u>Defendants' Opposition Based on Discovery and the Merits</u>

Plaintiffs contend that class certification is supported by the current pleadings. (Br. in support of Mot. to Certify Class at 7). Defendants argue that the motion should be denied (1) because discovery is required on facts relevant to class certification as Plaintiffs have proffered insufficient evidence to satisfy Rule 23 and (2) because the underlying claims are without merit as there is no constitutional injury.[3] (Defs. Resp.

---

[3] The Court considers the merits of Plaintiffs' claims "'only' to the extent 'they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" Brown v. Electrolux Home Products, Inc., 817 F.3d 1225, 1234 (11th Cir. 2016) (quoting Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 568 U.S. 455, 466 (2013)). Otherwise, the Court does not further address Defendants' argument that class certification should be denied on the grounds that there is no constitutional injury.

4

to Mot. to Certify Class at 5-12). Plaintiffs reply that discovery and/or a hearing are unnecessary because Defendants, who have access to virtually all of the evidence in this case, identify no credible need for specific discovery and because Plaintiffs have obtained and lodged the evidence necessary to determine class certification. (Pls. Reply at 22-26, ECF No. 36).

As discussed below, the evidentiary proffer in the record is sufficient to warrant a favorable decision on the motion for class certification, and Defendants do not identify any potentially discoverable material that would provide grounds for denying class certification.

### B.     Adequately Defined and Clearly Ascertainable

As stated above, Plaintiffs seek to certify a psychiatric disability class, defined as follows –

> All women who experience psychiatric disabilities who are now or will in the future be confined in the Fulton County Jail system.

(Br. in Support of Mot. to Certify Class at 1-2 (complaining that, when women exhibit psychiatric-disability symptoms, Defendants place them in solitary confinement for prolonged periods of time in B, C, and D pods)). Plaintiffs also seek to certify a competency restoration subclass, defined as follows –

> All women who experience psychiatric disabilities who are now or will in the future be deemed incompetent to stand trial while confined in the Fulton County Jail system.

(Id. at 1).

Defendants argue that a class of women who suffer from "psychiatric disabilities" in the Fulton County Jail inadequately defines the class and question whether the purported class includes women in the general population. (Defs. Resp. to Mot. to Certify Class at 9-10, 12-14).

Plaintiffs reply that the proposed class is readily ascertainable (1) because class members generally will be "on the mental health caseload[,]" (2) because "Defendants' placement of a detainee in . . . 'mental health pods' reflects their own conclusion that the detainee has a psychiatric disability" – as reflected in the jail's policy which states that "mentally disordered" detainees are to be housed in segregated or separate housing (B, C, and G pods), and (3) because individualized determinations are unnecessary to discern the class when the challenged policies are imposed categorically on all class members. (Pls. Reply at 7-8 and n.7).[4] In discussing the class, Plaintiffs state that they

---

[4]Jail policy provides that "Separate housing will be provided for inmates who are . . . mentally disordered." (See Pls. Prelim. Inj. Ex. I-4 at 13, ECF No. 16-21 at 27). The separate housing for such female inmates consists of Pods B, C, and G.

6

seek "class-wide relief to women with psychiatric disabilities who are held in prolonged solitary confinement[,]" i.e., in B, C, and G pods. (Id. at 1).

As stated earlier, the proposed class must be "adequately defined and clearly ascertainable." Carriuolo, 823 F.3d at 984 (quoting Little, 691 F.3d at 1304) (internal quotation marks omitted). Here, the Court perceives of no difficulty in ascertaining women who have been adjudged incompetent to proceed to trial and finds that the competency restoration subclass is adequately defined. The Court agrees with Defendants' argument that the psychiatric disability class – defined as all women who experience psychiatric disabilities who are now or will in the future be confined in the Fulton County Jail system – is inadequate. Notably, Plaintiffs do not complain in regard to the conditions or treatment of women who may have psychiatric disabilities but are confined in the general population in Fulton County Jail. In reading Plaintiffs' factual allegations and their reply, it appears (1) that Plaintiffs seek to certify a class that consists of women who are or will be classified as "mentally disordered" and placed in the mental health pods and (2) that the class potentially includes general population women (and for that matter non-detained women) to the extent that they may in the future be confined in one of the mental health pods. Accordingly, the

7

undersigned will recommend that the class definition be adjusted as follows (hereinafter the "adjusted psychiatric class"), i.e.,

> All women who experience psychiatric disabilities who are now or will in the future be confined in the mental health pods for female detainees in the Fulton County Jail system.[5]

### C. Rule 23(a)(1) - Numerosity

Plaintiffs argue (1) that numerosity for the psychiatric disability class is satisfied by 100 women (at least half of the South Fulton County Jails female population), of which 30 to 40 are held in B, C, and G pods, and by the future stream of women with psychiatric disabilities who will enter the system and (2) that numerosity for the competency restoration subclass is satisfied by "numerous" women needing competency restoration and the unknown but significant number of women in the future who will need competency restoration. (Br. in Support of Mot. to Certify Class at 9-11).[6]

Defendants contend that numerosity is not satisfied because Plaintiffs' own numbers indicate that the impacted persons with psychiatric disabilities are at most

---

[5] The Court's Rule 23 analysis below relies on the adjusted class definition.

[6] Plaintiffs have stated that there are approximately fifteen women awaiting competency restoration and an unknown number of women who will need such services in the future. (Compl. ¶¶ 162-63).

8

forty persons and that those who require or will require competency restoration is amorphous. (Defs. Resp. to Mot. to Certify Class at 15).

Plaintiffs reply that numerosity is satisfied (1) based on the approximately forty class members housed in solitary confinement and those at risk of being placed in such confinement in the future (including women in the general population with psychiatric issues) and (2) based on the approximately fifteen women awaiting competency restoration and an unknown number of women who will need such services in the future. (Pls. Reply at 8-10 (citing Compl. ¶¶ 162-63).

As to numerosity, "[t]he basic question is practicability of joinder, not number of interested persons per se." Garcia v. Gloor, 618 F.2d 264, 267 (5th Cir. 1980). The "[p]racticability of joinder depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion." Kilgo v. Bowman Transp., Inc., 789 F.2d 859, 878 (11th Cir. 1986) ("[T]he district court did not abuse its discretion in finding that the numerosity requirement had been met. Plaintiffs have identified at least thirty-one individual class members, and the class includes future and deterred job applicants, which of necessity cannot be identified."). "[T]he relevance of the numerosity requirement to class certification may in

9

appropriate cases be less significant where in fact class wide discrimination has been alleged, . . . [and] at least one court has recognized that where the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity, since the court has the option to decertify pursuant to Rule 23(c)(1)." Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 930 (11th Cir. 1983) (citing Foster v. Bechtel Power Corp., 89 F.R.D. 624 (E.D. Ark. 1981)).

> The problem . . . is not simply to say whether 33 class members are enough or too few to satisfy Rule 23(a)(1). Ample case law can be cited to show that smaller classes have been certified and larger ones denied certification for lack of numerosity. . . . Such number comparisons miss the point of the Rule. The proper focus is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors. . . . [T]he alleged class includes future and deterred applicants, necessarily unidentifiable. In such a case the requirement of Rule 23(a)(1) is clearly met, for "joinder of unknown individuals is certainly impracticable[.]"

Phillips v. Joint Legislative Comm. on Performance & Expenditure Review of State of Miss., 637 F.2d 1014, 1022 (5th Cir. 1981) (quoting Jack v. American Linen Supply Co., 498 F.2d 122, 124 (5th Cir. 1974)).

Although the numbers here are low for both the class and particularly for the subclass, joinder is not practicable based on the transient nature of pretrial detention and the fact that future members of the class cannot be identified at this time. See

10

Holland v. Steele, 92 F.R.D. 58, 63 (N.D. Ga. 1981) (finding numerosity satisfied when "[a]t least 40 inmates and detainees will be housed in the jail in the next twelve months" and when "[a]ny class consisting of inmates at an institution is likely to include individuals who were unidentifiable at the time the class was certified"). To the extent that numerosity of the subclass is a close question, in light of the alleged class-wide discrimination, the "balance should be struck in favor of a finding of numerosity, since the court has the option to decertify pursuant to Rule 23(c)(1)." Evans, 696 F.2d at 930.

### D.    Rule 23(a)(2) - Commonality

On commonality, Plaintiffs argue that factual and legal issues are capable of a class-wide proof and resolution – (1) factual issues including the use, effects, and conditions of solitary confinement; the availability of and accommodations made in regard to programs and activities; and the denial of jail-based competency restoration and the reasons for denial; and (2) legal issues including the constitutionality of solitary confinement and conditions therein; the reasonableness of Defendants' actions in regard to programs and activities; and the constitutionality of Defendants' denial of jail-based competency restoration. (Br. in Support of Mot. to Certify Class at 13-14).

11

Defendants argue that commonality is lacking (1) because there is no evidence that the challenged policies and procedures exist and (2) because whether isolation and lack of competency restoration is penologically justified will vary for each individual inmate.[7]  (Defs. Resp. to Mot. to Certify Class at 15-18).

In reply, Plaintiffs assert –

> Defendants have a policy and practice of placing female detainees with psychiatric disabilities in largely identical conditions of solitary confinement in three mental health pods because of those psychiatric disabilities.[]  Per the terms of Defendants' written policies, detainees are "[s]egregat[ed]" in "[s]eparate housing" simply because they are "mentally disordered."  Plaintiffs have alleged and offered evidence to show, and Defendants have not disputed, that all women held in the mental health pods are "almost always housed under conditions of solitary confinement."

(Pls. Reply at 11-12).  On commonality and individualized concerns, Plaintiffs argue that Defendants have a blanket policy of solitary confinement for all women with significant symptoms of their psychiatric disabilities.  (Id. at 17).

---

[7]Defendants also argue that more than half of the class with psychiatric disabilities are in the general population and do not share common questions of law or fact with those confined in the mental health pods (B, C, and G pods). (Defs. Resp. to Mot. to Certify Class at 17-18).  As stated earlier, the Court analyzes application of Rule 23 based on the adjusted psychiatric class, and lack of commonality between those confined in the general population and those confined in a mental health pod does not defeat a showing of commonality.

12

To satisfy the commonality requirement, "a class action must involve issues that are susceptible to class-wide proof." Williams v. Mohawk Indus., Inc., 568 F.3d 1350, 1355 (11th Cir. 2009) (quoting Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001)) (internal quotation marks omitted). "Commonality requires 'that there be at least one issue whose resolution will affect all or a significant number of the putative class members.'" Id. (quoting Stewart v. Winter, 669 F.2d 328, 335 (5th Cir.1982)).

The factual issues involved in the generally-blanket policies in the mental health pods apply to all members of the adjusted psychiatric class, and the factual issues for the denial of jail-based competency restoration apply to all members of the competency restoration subclass. In deciding the commonality of class members claims, the Court does not decide the merits of whether the challenged policies and procedures actually exist. Further, Plaintiffs challenge blanket/non-individualized policies, and individualized justifications for certain prison actions or provisions (as asserted by Defendants) may go to the merits of Plaintiffs' assertion of blanket, unconstitutional policies, but it does not defeat the commonality of the class members claims. Commonality is satisfied as Plaintiffs complain about non-individualized policies and have raised issues that are susceptible of class-wide proof and relief.

13

### E.     Rule 23(a)(3) - Typicality

On typicality, Plaintiffs argue that M.J. and K.H. and the proposed class members are injured by the same practices and procedures, subject to the same proof and legal arguments. (Br. in Support of Mot. to Certify Class at 17). Defendants argue that typicality is lacking because inmates will be treated differently based on individualized penological concerns. (Defs. Resp. to Mot. to Certify Class at 18-19). Plaintiffs reply that typicality is satisfied because the named Plaintiffs and the proposed class are subject to the same challenged policies. (Pls. Reply at 18-19).

Typicality is shown if the claims of the class and the class representative "arise from the same event or pattern or practice and are based on the same legal theory." Williams, 568 F.3d at 1357 (quoting Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir.1984)) (internal quotation marks omitted). Typicality requires that the class representative and class members "possess the same interest and suffer the same injury" and "may be satisfied despite substantial factual differences . . . when there is a strong similarity of legal theories." Id. (quoting Auslander, 244 F.3d at 811) (internal quotation marks omitted).

The claims for M.J., K.H., and the class arise from the same practices and are challenged on the same legal basis. Plaintiffs have alleged, for M.J. and K.H. and the

14

class, an across the board, unconstitutional treatment – including isolation in sub-par cells with insufficient out-of-cell time – of mental health detainees in the mental health pods. Plaintiffs also have alleged, for M.J. and K.H. and the subclass, a failure to provide in jail competency restoration. Because Plaintiffs challenge non-individualized policies, individualized justifications for certain prison practices (as asserted by Defendants) may go to the merits of Plaintiffs' assertion of unconstitutional policies, but it does not defeat the fact that M.J., K.H., and the class show a typicality of claims.

### F.    Rule 23(a)(4) - Adequacy

On adequacy, Plaintiffs state that there are no known conflicts between the named Plaintiffs and the proposed class and that counsel for the Georgia Advocacy Office and the Southern Center for Human Rights are experienced and have litigated numerous cases, including cases involving prisoners, jail detainees, and class actions. (Br. in Support of Mot. to Certify Class at 19-20).

Defendants argue that adequacy of representation is lacking (1) because Sarah Geraghty with the Southern Center for Human Rights has represented proposed class members in bond proceedings and has been allowed access to the Fulton County Jail in an advisory capacity with the GAO; (2) because Devon Orland prematurely filed a

15

motion for a temporary restraining order (TRO) in Georgia Advocacy Office v. Jackson, No. 1:19-cv-0256-LMM (N.D. Ga. filed Jan. 14, 2019), indicating a lack of experience;[8] and because M.J. and K.H. have psychiatric issues that are not typical of other women in the South Annex.  (Defs. Resp. to Mot. to Certify Class at 19-21).

Plaintiffs reply that Defendants show no actual conflict between a named Plaintiff and the potential class and that Defendants do not show any differences between M.J. and K.H. and potential class members that would render them inadequate to represent the class on the relevant class interests.  (Pls. Reply at 20).

---

[8]Defendants refer to the Court's order denying without prejudice the motion for a TRO.  (Defs. Resp. to Mot. to Certify Class at 20); see Order of Feb. 5, 2019, Georgia Advocacy Office, No. 1:19-cv-0256-LMM, ECF No. 15).  In the order denying the motion for a TRO, the court stated as follows –

> The Court denies Plaintiffs Motion for a Temporary Restraining Order because Plaintiff has failed to meet the standard for obtaining injunctive relief.  Specifically, Plaintiff has not demonstrated a substantial threat of irreparable harm because, at the hearing on February 4, 2019, Defendants stated that they will comply with the statute . . . . If Defendants again fail to comply with their statutory obligations, then Plaintiff may provide notice to the Court for consideration of a renewed motion based on new facts.

Order of Feb. 5, 2019, at 3-4, Georgia Advocacy Office, No. 1:19-cv-0256-LMM, ECF No. 15.  There is nothing here that shows any inadequacy in GAO's representation, and this matter is not further addressed.

"The adequate representation requirement involves questions of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation, and of whether plaintiffs have interests antagonistic to the rest of the class." Griffin v. Carlin, 755 F.2d 1516, 1533 (11th Cir. 1985). Adequacy requirements under Rule 23(a)(4) are not met if a class representative's interests are antagonistic or are fundamentally in conflict with the interests of the class. Pickett v. Iowa Beef Processors, 209 F.3d 1276, 1280 (11th Cir. 2000).

Plaintiffs have stated that there are no known conflicts, and the Court finds no conflict based on the matters presented by Defendants and otherwise is aware of no fundamental conflict of interest between counsel, the class representatives, or the class. Plaintiffs have provided numerous citations that reflect the experience of the Georgia Advocacy Office and the Southern Center for Human Rights and their attorneys. (Br. in Support of Mot. to Certify at 19-20 nn.11-14). The Court finds that Plaintiffs have met the adequacy of representation requirement.

### G.  Rule 23(b)(2)

Plaintiffs argue that they meet the requirement of Fed. R. Civ. P. 23(b)(2) because the challenged procedures and policies generally apply to the putative classes, who seek declaratory and injunctive relief to prevent Defendants from continuing the

unlawful policies, and the relief would benefit every member of the class in the same way.  (Br. in Support of Mot. to Certify Class at 21-22).

Defendants argue that Plaintiffs attempt to satisfy Rule 23(b)(2) fails because it remains to be decided whether the alleged polices and practices exist and whether they are penologically justified.  (Defs. Resp. in to Mot. to Certify Class at 21-22). Plaintiffs' reply does not add significantly to their prior argument.  (Pls. Reply at 21-22).

Rule 23(b)(2) is satisfied if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." "The key to the [Rule 23](b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted[,]" and "23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." Lakeland Reg'l Med. Ctr., Inc. v. Astellas US, LLC, 763 F.3d 1280, 1291 (11th Cir. 2014) (quoting Wal-Mart Stores, Inc. v. Dukes, _ U.S. _, _, 131 S. Ct. 2541, 2557 (2011)) (internal quotation marks omitted).

Based on the challenged policies of prolonged isolation in deplorable conditions, denial of jail-based competency restoration, and discrimination in the provision of

18

programs and activities, which Plaintiffs assert apply generally to the class or subclass, it is apparent that injunctive relief can be addressed to the class as a whole. Plaintiffs have shown that they satisfy the criteria in Rule 23(b)(2).

## II. Conclusion

For the reasons stated above,

**IT IS RECOMMENDED** that Plaintiffs' motion to certify class [8] be **GRANTED**, with an adjustment to the psychiatric disability class as set forth below, and that the following class and subclass be certified, subject to Fed. R. Civ. P. 23(c)(1) –

> (1) a psychiatric disability class consisting of all women who experience psychiatric disabilities who are now or will in the future be confined in the mental health pods for female detainees in the Fulton County Jail system, and

> (2) a competency restoration subclass consisting of all women who experience psychiatric disabilities who are now or will in the future be deemed incompetent to stand trial while confined in the Fulton County Jail system.

**IT IS SO RECOMMENDED**, this 30th day of July, 2019.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE