**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

GEORGIA ADVOCACY OFFICE;           )
M.J.; K.H., on behalf of themselves and )
others similarly situated,               )
                                         )
    Plaintiffs,                    )
                                         )    CIVIL ACTION FILE NO.
v.                                       )    1:19-CV-01634-WMR-JFK
                                         )
THEODORE JACKSON, in his official )
capacity as Sheriff of Fulton County; )
MARK ADGER, in his official capacity )
as Chief Jailer;                         )
MEREDIETH LIGHTBOURNE, in her )
official capacity as Medical Director; )
TYNA TAYLOR, in her official          )
Capacity as Detention Captain;        )
PEARLIE YOUNG, in her official       )
Capacity as Detention Lieutenant,    )
                                         )
    Defendants.                    )
_____)

**DEFENDANTS' MOTION FOR RECONSIDERATION, OR
ALTERNATIVELY, STAY OF PRELIMINARY INJUNCTION PENDING
ISSUANCE OF PARTICULARIZED FINDINGS OF FACT**

## I.    PROCEDURAL HISTORY AND STATEMENT OF FACTS

Plaintiffs allege, pursuant to 42 U.S.C. § 1983, that Defendants Sheriff

Theodore "Ted" Jackson, in his official capacity as Sheriff of Fulton County, Mark

Adger, in his official capacity as Chief Jailer of the Fulton County Jail, Meredieth

Lightbourne, in her official capacity as Medical Director, Tyna Taylor, in her official capacity as Detention Captain, and Pearlie Young, in her official capacity as Detention Lieutenant, have violated the Eighth and Fourteenth Amendments under the United States Constitution by housing certain inmates with psychiatric disabilities in solitary confinement. Plaintiffs also allege violations of the Americans with Disabilities Act of 1990 and the Rehabilitation Act of 1973. Relevant factual and procedural history are provided in Defendants' underlying Opposition to Plaintiffs' Motion for Preliminary Injunction, as well as in the Court's July 23, 2019 Order granting Plaintiffs' Motion for Preliminary Injunction.

Plaintiffs filed their motion for preliminary injunction on May 7, 2019. (Doc. 16). Evidentiary hearings were held on July 15, 18, and 19, 2019. Following closing arguments on July 23, 2019, the Court issued its Order, indicating that it would make the "'particularized findings required by 18 U.S.C. § 3626(a)(2) in a subsequent order." (See Doc. 65 at 5, n. 1). The Court's order included the following relief:

1. Defendants were ordered to develop, within 7 days of the entry of the Order, a system to track each detainee's out-of-cell time within B, C, and G pods and to permit each detainee at least one hour of recreation time and 2 hours of free time daily;

2. Defendants were ordered to offer, within 30 days of the entry of the Order, at least four hours out-of-cell time to each woman assigned to B, C, or G pods at least five days a week, with at least one hour to include outdoor recreation or indoor gym time;

3. Defendants were ordered to establish and file with the Court, within 30 days of the entry of the Order, a written plan to provide sanitary conditions of confinement and out-of-cell therapeutic activities to each detainee assigned to the B, C, and G pods on at least 5 days a week; and

4. For each detainee denied out-of-cell time "where doing so is necessary to prevent an immediate and substantial risk of serious harm to a person," Defendants were ordered to provide documentation including the name of the detainee, date, and reason for the denial, with no inmate to be denied out-of-cell time for a period greater than 24 hours.

The Court further specified that inadequate staffing would not excuse Defendants' non-compliance with the preliminary injunction.

This Motion for Reconsideration now follows.

## II.    LEGAL ARGUMENT

### A.    Standard for Reconsideration

"The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact." In re Kellogg, 197 F.3d 1116, 1119 (11th Cir. 1999).  "[A] Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." Michael Linet, Inc. v. Village of Wellington, Fla., 408 F.3d 757, 763 (11th Cir. 2005).  For a court to reconsider its prior judgment, the moving party must present facts or law of a "strongly convincing nature" that would induce a court to reverse its prior decision.  Burger King Corp. v. Ashland Equities, Inc., 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002) (citing Sussman v. Salem Saxon & Nielsen, P.A., 153 F.R.D. 689, 694 (M.D. Fla 1994)).  Three major grounds justify reconsideration: "(1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." Burger King, 181 F. Supp. 2d at 1369.

Here, reconsideration is appropriate under the third of these grounds because Plaintiffs failed to satisfy the four-factor test for granting a preliminary injunction. Additionally, the relief the Court has granted does not comply with the heightened standard under the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626,

4

insofar as it exceeds the minimum level of intrusion necessary to correct the violation of a federal right.

### B. Plaintiffs Did Not Meet All Four Prongs Necessary for Preliminary Injunctive Relief

A preliminary injunction is an extraordinary and drastic remedy.  See <u>Munaf v. Geren</u>, 553 U.S. 674, 689-90 (2008).  In order for a preliminary injunction to be granted, a plaintiff must satisfy the following four factors: (1) reasonable probability of eventual success on the merits; (2) irreparable injury by denial of the relief; (3) the preliminary relief will not result in even greater harm to the nonmoving party; and (4) the relief is in the public interest.  <u>Wreal, LLC v. Amazon.com, Inc.</u>, 840 F.3d 1244, 1247 (11th Cir. 2016); <u>Siegel v. LePore</u>, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).  Plaintiffs bear the "burden of persuasion" to clearly establish all four of these prerequisites.  See <u>Siegel</u>, 234 F.3d at 1176 (citing <u>McDonald's Corp. v. Robertson</u>, 147 F.3d 1301, 1306 (11th Cir. 1998)).  In prisoner cases, courts must also consider the PLRA, which directs courts to give "substantial weight to any adverse impact on the public safety or the operation of a criminal justice system caused by the preliminary relief."  18 U.S.C. § 3626(a)(2).

Prospective relief under the PLRA must "extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs," and

may only be approved if it is "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."  18 U.S.C. § 3626(a)(1). Likewise, the PLRA provides that a preliminary injunction must be "narrowly drawn, extend[] no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm," with the further restriction that "[p]reliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period."  Id. § 3626(a)(2); United States v. Sec'y, Fla. Dep't of Corr., 778 F.3d 1223, 1228 (11th Cir. 2015) (unless renewed, the preliminary injunction will automatically expire "unless the district court does two things"—(1) makes "particularized findings," and (2) makes the order final before the 90 days expire).

Here, the Court's July 23, 2019 Order clearly erred when it stated that Plaintiffs satisfied the four factors for granting a preliminary injunction because it did not make any specific findings related to the probability of eventual success on the merits (the Court merely indicated that Plaintiffs had established a likelihood of success on the merits with respect to their Eighth Amendment deliberate

6

indifference claim, and also with respect to their claim that they were denied equal access to services and programs in the jail based on their disability), irreparable injury, the balance of harm, or the public interest.  The Court's Order also did not delineate how the relief it provided was tailored to meet the more stringent PLRA requirements.

1. **Plaintiffs Failed to Establish A Likelihood of Success on the Merits on Either their Eighth Amendment Deliberate Indifference Claim or their Equal Protection Claim.**

The Court's July 23, 2019 Order did not set out a factual basis for its determination that Plaintiffs were likely to succeed on the merits, nor does it appear from the evidence presented that there was evidence to support the conclusion that Plaintiffs are likely to prevail on their Eighth Amendment or Equal Protection claims.  The evidence presented at the preliminary injunction hearing concerning the conditions of confinement did not rise to the level of cruel and unusual punishment in violation of the Eighth Amendment.  Where a plaintiff's § 1983 claim challenges the conditions of her confinement, she must show that a "prison official's act or omission has resulted in the denial of 'the minimal civilized measure of life's necessities.'"  <u>Farmer v. Brennan</u>, 511 U.S. 825, 834, (1994).  In addition, manifest injustice results from plaintiffs' failure to prove that the defendants acted with a "sufficiently culpable state of mind."  <u>Id.</u> at 834

(citation omitted). "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety. . . ." Id.

Here, evidence of the conditions at the jail presented at the preliminary injunction hearing did not satisfy the objective component of an Eighth Amendment conditions-of-confinement claim.  Segregated confinement, in and of itself, does not violate the Eighth Amendment.  Ford v. Board of Managers, 407 F.2d 937, 940 (3d Cir. 1969). "The Eighth Amendment prohibits punishments that involve the unnecessary and wanton infliction of pain, are grossly disproportionate to the severity of the crime for which an inmate was imprisoned, or are totally without penological justification."  Caldwell v. Miller, 790 F.2d 589, 600 (7th Cir. 1986), citing Rhodes v. Chapman, 452 U.S. 337, 346 (1981).  See also Hudson v. McMillian, 503 U.S. 1, 9 (1992) ("[E]xtreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.") (citations and internal quotes omitted).

There also is no clearly established right to recreation time of any specific duration.  In Bass v. Perrin, 170 F.3d 1312, 1317 (11th Cir. 1999), the Eleventh

8

Circuit held that "the complete denial to the plaintiffs of outdoor exercise, although harsh, did not violate the Eighth Amendment" because there was a penological justification for keeping the plaintiffs in solitary confinement.  With respect to claims of unconstitutional conditions and/or equal protection claims relating to efforts to offer treatment to mentally ill inmates, the Court ignored that pre-trial detainees generally cannot be forced to take medication, as well as testimony by both Cornelius Henderson of NaphCare, Inc. and Col. Adger concerning the female mental health inmates' refusal to take medication.[1]  The evidence showed that this refusal is what results in some inmates' inability to participate in out-of-cell recreational activities.

In addition, the Court apparently failed to take into consideration the relatively short average duration of confinement at the Union City Jail.  The evidence established that the inmates—whose average length of incarceration, according to Col. Adger's testimony, was four days—were given out-of-cell time approximately 8-12 times per month.  (See Doc. 15-1 at 5-6.)  This is in marked contrast to the facts in Quintanilla v. Bryson, 730 F. App'x 738, 747 (11th Cir. 2018), where allegations of a prison inmate's "near-constant" exposure to

---

[1] Defendants are currently in the process of procuring the transcript of the preliminary injunction hearing.  Defendants will supplement the instant motion with specific citations to the record upon their receipt of the transcript.

unhygienic conditions in an isolation cell over the course of two years, while "denied adequate food, exercise, and human contact" stated an Eighth Amendment violation.

Evidence concerning the sanitary conditions in the mental health pods also did not establish an Eighth Amendment violation. Indeed, federal courts have routinely held that temporary exposure to unsanitary conditions does not constitute an Eighth Amendment violation. See Alfred v. Bryant, 378 F. App'x 977, 980 (11th Cir. 2010) (citations omitted). While Plaintiffs presented photographs purporting to depict unsanitary conditions in the jail, there was no indication of the amount of time the unsanitary conditions were allowed to persist. Moreover, "courts within the Eleventh Circuit have repeatedly refused to find Eighth Amendment violations based on short term unavailability of traditional toilets with or without ideal water pressure, or exposure to overflowing toilets." Newton v. Huffman, No. CV 113-191, 2015 WL 5042253, at *6 (S.D. Ga. Aug. 25, 2015) (compiling cases).

Based on the evidence presented at the preliminary injunction hearing, inmates are not deprived of human interaction without penological justification by virtue of their placement in the mental health pods. The evidence of penological justification was provided by Col. Adger, among others, who testified that inmates

with severe psychological and behavioral issues require significant, detailed attention, and often are unable to interact with other inmates. (See Doc. 26-1 (Adger Decl.) ¶ 12). The Complaint in this case *pleads* that inmates such as named Plaintiffs M.J. and K.H. suffer from such debilitating mental health conditions that they frequently soil themselves, (Doc. 1, ¶ 106), experience hallucinations, (Doc. 1, ¶ 114), engage in self-harm, (Doc. 1, ¶ 116), and destroy their clothing (Doc. 1, ¶ 118). Even so, the conditions of their confinement are unlike those described in Wilkinson v. Austin, 545 U.S. 209, 214 (2005), where isolation units included cells that had solid metal doors with metal strips along their sides and bottoms which prevented *any* communication through the cell doors. To the extent that Plaintiffs were deprived of the ability to communicate with other inmates, such deprivation was not "totally without penological justification," as testified to by Cornelius Henderson and Col. Adger. Caldwell, 790 F.2d at 600. Further, the evidence showed that Fulton County Jail personnel regularly conduct security rounds on a daily basis, and that a mental health counselor periodically visits the mental health inmates. (Adger Decl. ¶ 5). Simply put, courts "cannot assume…that prison officials are insensitive to the requirements of the Constitution or to the perplexing sociological problems of how best to achieve the goals of the penal function in the criminal justice system." Id. (citing Rhodes, 452 U.S. at 346).

11

In <u>Sterling v. Smith</u>, No. CV606-103, 2007 WL 781274 (S.D. Ga. Mar. 8, 2007), the district court found that allegations of deliberate indifference to a prisoner's "need for reasonably adequate sanitary conditions and the excessive risk to [his] mental health by subjecting him to 'excessive' noise and prisoners who project feces and bodily fluid out of their cells" were insufficient to state a deliberate indifference claim.  <u>See id.</u> at *4.  <u>See also</u> <u>McNatt v. Unit Manager Parker</u>, 2000 WL 307000, *4 (D.Conn.2000) (Eighth Amendment generally not violated where unsanitary conditions are temporary) (citing, inter alia, <u>Harris v. Fleming</u>, 839 F.2d 1232, 1235 (7th Cir.1988) (allegations that inmates denied toilet paper for five days and soap, toothpaste and toothbrush for ten days, insufficient) and <u>Martin v. Lane</u>, 766 F. Supp. 641, 648 (N.D. Ill. 1991) (deprivation of laundry services and sanitary and hygienic living conditions for between three and eighteen days not actionable).)  Here, without specifying the constitutional violation that it supposedly is addressing, it is impossible to know whether the preliminary injunctive order permissibly found a likelihood of success on the merits of Plaintiffs' claims or, as discussed in more detail below, whether the remedy it fashioned was adequately tailored to the constitutional violation.

Finally, with respect to Plaintiffs' claims based on Eighth Amendment standards, the Court apparently did not consider evidence of remedial measures

undertaken at the jail.   At the preliminary injunction hearing, Deputy Louise Crowder testified that since April, 2019, she has personally been assigned to oversee efforts to ensure that female mental health inmates are able to leave their cells at least once a day, and that she has taken charge of the out-of-cell documentation system.  Col. Adger testified about ongoing meetings regarding the mental health stabilization unit, requests for additional funding, as well as efforts at physical remediation of the jail, including painting and rust removal.  Adger also testified about the reasons for plumbing problems at the jail, which include inmates deliberately clogging sinks and toilets.

Plaintiffs also did not establish a likelihood of success as to their equal protection claims.  The services provided to the men at the Fulton County Jail are provided solely by and through a contract between Emory University and the Georgia Department of Behavioral Health and Developmental Disabilities (DBHDD), which has the responsibility of restoring competency pursuant to O.C.G.A. § 17-7-130.  The competency restoration program ("CRP") was created by and is administered by these two entities and not the Fulton County Sheriff's Office ("FCSO").  The sole responsibility of the FCSO as it relates to the CRP is to provide housing, security, food and staff to provide additional security (at a cost)

for the program.  To the extent there is unequal access, the FCSO is without power to address the lack of access, and the evidence clearly demonstrated this.

### 2.  Plaintiffs failed to establish irreparable harm.

The Court's July 23, 2019 Order also does not establish a factual basis for its determination that Plaintiffs would suffer irreparable harm if injunctive relief were not ordered.  The evidence did not establish a threshold for determining whether Plaintiffs will suffer irreparable harm if they are not granted out-of-cell time, making it impossible to determine whether the relief granted exceeds the acceptable scope of injunctive relief under Rule 65 or the PLRA.  There was no evidence of any correctional, psychiatric, or medical standards that mandate four hours of out-of-cell time per day for pre-trial detainees.  It presents a manifest injustice for the Court to include that requirement in its Order—possibly based on testimony about prison standards—without expressly considering the potential danger to jail personnel or impact on other inmates.

Moreover, Plaintiffs present unique security concerns as a result of their psychiatric disabilities which must be factored into any determination regarding irreparable harm.  The Court disallowing any inmate from being denied out-of-cell time for any period greater than 24 hours not only removes all discretion from the Sheriff's Office personnel but completely fails to take into account certain security

14

concerns that might require that an inmate be required to remain in her cell for a period in excess of 24 hours.  Even if the evidence were sufficient to show irreparable harm, Defendants cannot know whether an appeal would lie on this basis until the Court issues its factual findings.

### 3. The threatened injury to Plaintiffs does not outweigh the harm to the Defendants, Other Inmates, or Jail Personnel.

Absent specific factual findings, the injunction will place an unknowable burden on Defendants and will set a dangerous precedent on how Sheriffs across the Country administer their correctional facilities.  Courts have consistently held that correctional facility leaders are given substantial deference in how they administer their facilities. See Prison Legal News v. Secretary, Florida Department of Corrections, 890 F.3d 954, 965 (11th Cir. 2018) (citation omitted) ("[U]nder Turner we owe 'wide-ranging' and 'substantial' deference to the decisions of prison administrators because of the complexity of prison management, the fact that responsibility therefore is necessarily vested in prison officials, and the fact that courts are ill-equipped to deal with such problems").  It is an extraordinarily difficult task to maintain the safety and security of correctional facilities, as well as the inmates.  Turner v. Safley, 482 U.S. 78, 84-85 (1987).  "[T]he judiciary is 'ill equipped to deal with the increasingly urgent problems of prison administration and reform' and should therefore give significant deference to judgments made by

prison officials in establishing, interpreting, and applying prison regulations." Fraise v. Terhun, 283 F.3d 506, 515 (3d Cir. 2002). Prison officials are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Here, any alleged "harm" Plaintiffs are enduring as a result of being denied participation in the CRP, which again, these Defendants have no control over, or not having daily access to out-of-cell time does not outweigh the safety risks posed to Defendants, jail employees, and inmates, especially in light of the deference courts afford jail administrators.

### 4. Plaintiffs have not shown that the preliminary injunction is in the public's best interest.

The Court's Order also did not make any specific findings related to its determination that issuing the preliminary injunction in this case was in the public's best interest. The preliminary injunction arguably allows Plaintiffs to dictate the administration of jail activities, while potentially risking the safety and security of jail staff and employees. It is in the public's best interest that Defendants be afforded significant deference in making the difficult decisions needed to maintain jail safety. Turner, 482 U.S. at 84-85. Absent findings of fact, there would be no avenue for Defendants to make the argument on appeal that this

interest has been impeded.  Accordingly, Defendants respectfully seek a stay or reconsideration of the Court's July 23, 2019 Order.  It is in the public good to allow Defendants to act within their expertise to determine how to minimize security risks to maintain the safety of inmates, staff, and the general public.

### C.       The Order Did Not Meet the Requirements of the PLRA

The PLRA requires that any injunctive relief awarded be "narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626 (a)(2).  This section of the PLRA presumably was enacted to prevent Courts from ordering injunctive relief without due consideration to the safety and security concerns of prison officials.  Here, there is nothing to suggest that the Court considered any alternatives to ordering Defendants to offer "at least four hours of daily out-of-cell time to each woman assigned to B-Pod, C-Pod, and G-Pod on at least five days each week," including the one hour per day of outdoor recreation or indoor gym time, which is all that is mandated by current Sheriff's Office policy.  (See Doc. 16-21, Exh. I-3 (Fulton County Sheriff's Office Jail Bureau Policy No. 1200-01).  Nor is there any indication that the requirement of four hours of out-of-cell time, five days a week, corresponds to some minimal federal standard.  Further, there is no indication in the record that Plaintiffs ever

17

made a showing that the relief they sought was the minimum level of intrusion necessary to correct the violation of a federal right.  Rather, they simply ignored the PLRA's stringent requirements.  Defendants' research has revealed no case, in the PLRA context, in which a preliminary injunction has issued without the Court making specific factual findings showing that these requirements have been satisfied.

The Court's Order does not reflect that any alternatives were considered that could have met the needs of both parties under less intrusive means.  Simply put, there never was any discussion of the minimum level of intrusion necessary to correct the federal violation that the preliminary injunction is supposed to address. Fashioning an appropriate order, including a specific factual determination concerning the minimum level of intrusion necessary to remedy any violations of federal law, is particularly important in this matter where lives may be at stake.  As the requirements of the PLRA were overlooked, Defendants assert that their Motion for Reconsideration should be granted.  Alternatively, Defendants ask that the Court stay enforcement of its Order until it can make the findings of fact the PLRA requires, including a specific factual basis for the conclusion that the relief it granted was "narrowly drawn, extend[s] no further than necessary to correct the

harm the court finds requires preliminary relief, and . . . the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626 (a)(2).

## III.    CONCLUSION

For these reasons, it is respectfully submitted that Defendants' Motion for Reconsideration be granted, and the Court's decision to grant Plaintiffs' Motion for Preliminary Injunctive relief be reversed.  Alternatively, Defendants respectfully ask this Court to stay the preliminary injunction until such time as it has made particularized findings of fact regarding the four prerequisites for issuing injunctive relief under Rule 65 of the Federal Rules of Civil Procedure, as well as the more stringent requirements for issuing prospective relief under the PLRA.

Respectfully submitted, this 20th day of August, 2019.

**OFFICE OF THE FULTON COUNTY ATTORNEY**

Patrise Perkins-Hooker
COUNTY ATTORNEY
Georgia Bar No. 572358

Kaye W. Burwell
Deputy County Attorney
Georgia Bar No. 775060

***/s/ Ashley J. Palmer***
Ashley J. Palmer
Senior Assistant County Attorney
Georgia Bar No. 603514

19

Michelle Arrington
Assistant County Attorney
Georgia Bar No. 023808

**Attorneys for Defendants**

141 Pryor Street, S.W.
Suite 4038
Atlanta, Georgia 30303
(404) 612-0246 (office)
(404) 730-6324 (facsimile)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| GEORGIA ADVOCACY OFFICE; ) <br> M.J.; K.H., on behalf of themselves and ) <br> others similarly situated, ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THEODORE JACKSON, in his official ) <br> capacity as Sheriff of Fulton County; ) <br> MARK ADGER, in his official capacity ) <br> as Chief Jailer; ) <br> MEREDIETH LIGHTBOURNE, in her ) <br> official capacity as Medical Director; ) <br> TYNA TAYLOR, in her official ) <br> Capacity as Detention Captain; ) <br> PEARLIE YOUNG, in her official ) <br> Capacity as Detention Lieutenant, ) <br> ) <br>     Defendants. ) <br> _____ ) | CIVIL ACTION FILE NO. <br> 1:19-CV-01634-WMR-JFK |

## CERTIFICATE OF SERVICE

THIS CERTIFIES that on August 20, 2019, I presented this document in Times New Roman, 14 point type, pursuant to L.R. 5.1(C) and electronically filed the foregoing **DEFENDANTS' MOTION FOR RECONSIDERATION, OR ALTERNATIVELY, STAY OF PRELIMINARY INJUNCTION PENDING ISSUANCE OF PARTICULARIZED FINDINGS OF FACT** with the Clerk of

Court using the CM/ECF system. I further certify that I provided mail notification

to the following Plaintiff, postage pre-paid:

Devon Orland
Anne Kuhns
Georgia Advocacy Office
1 West Court Square
Suite 625
Decatur, Georgia 30030

Sarah Geraghty
Ryan Primerano
Southern Center for Human Rights
83 Poplar Street, NW
Atlanta, Georgia 30303

This 20th day of August, 2019.

*/s/ Ashley Palmer*
Ashley Palmer
Senior Assistant County Attorney
Georgia Bar No. 603514

**OFFICE OF THE FULTON COUNTY ATTORNEY**
141 Pryor Street, S.W.
Suite 4038
Atlanta, Georgia 30303
(404) 612-0267 (Office)
(404) 730-6324 (Facsimile)