IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GEORGIA ADVOCACY OFFICE;<br>M.J.;<br>K.H., on behalf of themselves and<br>others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>THEODORE JACKSON, in his official<br>capacity as Sheriff of Fulton County;<br>MARK ADGER, in his official capacity<br>as Chief Jailer;<br>MEREDIETH LIGHTBOURNE, in her<br>official capacity as Medical Director;<br>TYNA TAYLOR, in her official<br>Capacity as Detention Captain;<br>PEARLIE YOUNG, in her official<br>Capacity as Detention Lieutenant,<br><br>    Defendants. | CIVIL ACTION FILE NO.<br>1:19-cv-01634-WMR-JFK |

## DECLARATION OF KENNETH RAY, DBH, MEd

1.

I, Kenneth Ray, being competent to make this declaration and having personal knowledge of the matters stated herein, declare under penalty of perjury that the following is true and correct.

1

2.

I am more than 21 years old.  The statements contained in this affidavit are based on my personal knowledge, or on information that licensed clinical mental health, correctional administration, and quality assurance and improvement professionals would reasonably rely on in forming an opinion and are true to the best of my knowledge. I am aware that they will be used in a court of law.

## I. EXPERTISE

3.

I have served more than 40 years in local law enforcement corrections, clinical mental health and professional consulting. I currently serve as the principal consultant and owner of Kenneth A. Ray Justice Services, LLC where I provide consulting services that involve correctional litigation and risk management, medical, mental health and suicide assessments; staffing, inmate classification, life safety, training, population management and alternatives to confinement; segregation and solitary confinement, new facility design and renovation; operational and clinical quality assurance and improvement evaluation pertaining to Constitutional and humane care and custody of prisoners.

My curriculum vitae is attached to this affidavit as Exhibit A.

4.

My area of specialization is clinical and management services in correctional settings. My work primarily involves injunctive relief and non-litigation compliance technical assistance and compliance monitoring. I received a Doctor of Behavioral Health degree from Arizona State University, Tempe. I received a Master's degree in education, counseling and human development and Bachelor of Science in criminal justice from Lamar University in Beaumont, TX.

5.

I currently hold an active mental health counselor licensure in Washington State and I am board certified by the National Board of Counselors. I have held a license in law enforcement and correction training and as a licensed master peace officer from the Texas Commission on Law Enforcement Standards and Education, Austin, TX. I am a board certified Auditor with the American Correctional Association. I am also a member of various professional organizations pertaining to my field of practice including, the American Psychological Association, National Sheriff's Association, American Jail Association, Academy of Correctional Health, American Evaluation Association, FBI-National Law Enforcement Executive Development Association, and National Association of Inspectors General, etc.

6.

Over the years I have provided numerous technical reports and government research involving assessment of prisoner civil rights, correctional health services, facility security, use of force, operations, clinical behavioral health assessments, staffing, courts, probation, training, etc. for work conducted in various states.

7.

My local government experience includes 29 years as a law enforcement officer, police supervisor, Undersheriff, 911 communications supervisor and administrator, emergency management director, law enforcement, corrections instructor and criminal justice academy instructor and director, director of county security police, jail administrator and director of corrections for medium, large and mega jail systems at the county level in the states of Texas and Washington.

8.

Since 2011, I have served as defendants CRIPA settlement agreement compliance coordinator and liaison to the United States Department of Justice Civil Rights Division in re *United States v. Lake County, IN et al.* I currently serve as a consultant and compliance monitor for prisoner conditions of confinement for the Cook County, IL Department of Corrections and Chatham County, GA Detention Facility. I have also been involved in various capacities in assisting local

jurisdictions resolve and implement reforms resulting from real and potential prisoner rights litigation and settlement agreements.

My current active cases are attached as Exhibit B.

9.

Over the years, I have published various articles for newspapers and newsletters for the Sheriff's Crime Prevention Quarterly and other newspapers and media. Topics have included "Justice at Work" and "Out of county bed contracting: Benefits and opportunities."

10.

I have provided over 70 local, stated, and national presentations, trainings and lecturers on a variety of topics law enforcement, corrections, criminal justice, mental and behavioral health, and education including, for example, "Surviving and thriving under federal civil rights for institutionalized persons act;" "Social-emotional aspect of mental illness;" "The practice of mental health counseling: Diagnosis and treatment; "Model programs for managing mentally ill offenders: The national consensus project;" "Caring for & protecting mentally ill inmate populations;" "Prison industries & local jails." In addition, I have worked as an adjunct graduate and undergraduate faculty at three private and public universities in Texas and Washington states. In those capacities, I taught courses on criminal

justice, law enforcement, correctional mental health and counseling, and business administration.

11.

Since 2013, my work as the independent federal court-appointed monitor *in re The United States vs. The Territory of the Virgin Islands* involves my monitoring and reporting compliance records, data, and information monthly, conducting three onsite inspections yearly, and giving in-court reports 3 timer per year as an expert / independent monitor. Additionally, I also serve as an independent compliance and quality assurance monitor to three other jurisdictions in the states of Illinois, Indiana, and Georgia with jail populations ranging from 800 to 7,000. In this capacity, I monitor jail custody and health policies and practices to ensure compliance with industry and constitutional standards of care and custody. I have also served as independent correctional operations and health monitor in the state of New Mexico. Other inmate civil rights case-work has included jurisdictions with inmate populations ranging from 400 to 19,000. I have also served as a consultant to the United States Department of Justice National Institute of Corrections. In that capacity, I have completed a variety of jail and inmate assessments of topics involving medical and mental health care, conditions of confinement, overcrowding, segregation, staffing, administrative and

operational practices, alternatives to confinement, and program development and implementation, etc.

## II.   ASSIGNMENT

12.

I have been retained by Defendants' counsel as an expert in *Georgia Advocacy Office v. Jackson*, 1:19-cv-1634 (N.D. Ga.).

13.

I was retained in this matter on September 19, 2019. As a consultant for Defendants, I will be compensated on a monthly basis for the research, study, evaluation, reporting, reform compliance and quality assurance and compliance monitoring, testimony of this case.

14.

The focus of my review is to provide consultation, implementation, monitoring, and quality assurance and improvement evaluation services for Defendants' Mental Health Stabilization Unit ("MHSU").

15.

As Defendants' retained expert who specializes in the implementation of mental health programs in jail confinement environments, I will consult with the Sheriff's Office and NaphCare, Inc. on an ongoing basis to ensure that the

proposed MHSU is successfully implemented and will provide refinements to the plan where necessary to ensure an optimal outcome.

16.

As Defendants' retained expert, I will serve as the Sheriff's Independent Outside Compliance Sustainability Monitor and Technical Assistance Consultant with regard to the following operational areas: (a) Inmate / Jail Mental Health Compliance; (b) Suicide Prevention Compliance; (c) Protection from Harm/Use of Force Compliance; (d) Segregation and Conditions of Housing for Mentally Ill Inmates; and other areas of performance as mutually agreed.

17.

As Defendants' retained expert, I will serve as confidential Litigation Expert to the Office of the County Attorney in matters involving the services provided herein.

18.

As Defendants' retained expert, I will provide and perform professional consulting services including, but limited to, on-site and off-site assessment of compliance, related technical assistance, related reports, quality improvement and assurance, data analysis, document/information assessments, facility tours, individual and group meetings and consultations, consultation with others involved

in the scope of work, facilities and officials as required to achieve the desired outcomes and services.

19.

As Defendants' retained expert, I will provide onsite monitoring, consulting, and technical assistance to not exceed bi-monthly for the term of this agreement. Additional onsite visits may be provided with mutual agreement of the parties.

### III. FOUNDATION

20.

I have engaged through numerous telephone conferences with Defendants, their legal representatives, and the health care provider at the Fulton County Jail, NaphCare, Inc., reviewed the court filings in the above-styled case, and conducted independent research regarding issues relevant to the Court's order.

### IV. STATEMENT OF FACTS

21.

The South Fulton Annex, also referred to as the South Fulton Municipal Regional Jail or the Union City Jail, is a detention facility located in Union City, GA.

22.

Fulton County, Georgia purchased the South Fulton Annex from the South Fulton Municipal Regional Jail Authority in October 2018.

23.

There are approximately 253 inmates currently housed at the Fulton County Jail.

24.

Female detainees are exclusively housed at the South Fulton Annex, and those who suffer acute mental illness are specifically housed in Pods B, C, and G.

25.

Health services at the Union City jail, including both physical and mental health are provided by NaphCare, Inc., the contract health provider, pursuant to an agreement between NaphCare, Inc., Fulton County and the Fulton County Sheriff.[1]

26.

The record demonstrates that as the medical provider, NaphCare, Inc. is responsible for providing mental health programs designed to address inmates with serious health needs.[2]

---

[1] Fulton Cty. Gov't Contract Documents for No. 17RFP07012016B-BR, *Inmate Medical Services for Sheriff's Dep't* (Jan. 1, 2018) (Doc. 16, Ex. J).

27.

The NaphCare Mental Health Services Mental Health Program and Residential Unit Policy and Procedure outlines the mental health services that are to be provided to detainees.

> "Non-Acute Mental Health Residential Units, when provided, [are to] include: a) a defined scope of care; b) program or therapist as needed; c) a sufficient number of mental health staff assigned to the unit; d) individualized treatment plans; e) orientation and training for correctional officers assigned to the unit; and f) housing in a clean and safe environment, including facilities necessary for maintaining personal hygiene and guidance for Activities of Daily Living, if necessary."[3]

28.

There is no record that Fulton County currently provides a competency restoration program at any of their locations or facilities. There is a competency restoration program housed at the Rice Street location that is solely operated by Emory University and the Georgia Department of Behavioral Health and Developmental Disabilities (DBHDD).[4]

---

[2] NaphCare Policy No. J-F-03, *Mental Health Services–Mental Health Programs and Residential Units* (Nov. 2018) (Doc. 16, Ex. I-6).
[3] NaphCare Policy No. J-F-03, *Mental Health Services—Mental Health Programs and Residential Units* (Nov. 2018) (Doc. 16, Ex. I-6).
[4] Doc. 25-1.

29.

Some of the detainees at the South Fulton Annex, due to their psychiatric disabilities, present safety and security concerns to the employees and staff of both the Fulton County Sheriff's Office and NaphCare, Inc. as the medical provider.

30.

Defendants in conjunction with NaphCare, Inc. have developed a Mental Health Stabilization Unit (MHSU) program to address the Court's Order. (Doc. 65).

**V. OPINIONS**

31.

Defendants' MHSU plan adequately addresses the Court's concerns regarding deficiencies at the South Fulton Annex.

32.

Based on my examination of the record and Fulton County's remediation proposal, discussions with Fulton County officials, independent research, and many years of comparable work, I am confident the MHSU program will comply with the Court's temporary order.

33.

The MHSU plan is well-reasoned and designed to consistently improve and sustain improvement in the care and custody of female inmates diagnosed with mental and/or behavioral health disorders housed in pods B, C, and G at the South Fulton Annex.

34.

The MHSU program is designed to improve the care and custody of female inmates diagnosed with mental and/or behavioral health disorders housed in pods B, C, and G at the South Fulton Annex.

35.

It is also designed to consistently improve and sustain improvement of physical conditions of confinement regarding sanitation and environmental and inmate hygiene.

36.

This program and its practices are specifically intended to achieve the following outcomes:

a. Accomplish the court-ordered substantive requirements;

b. Ensure and sustain durable Constitutional levels of custodial care and confinement for female inmates assigned to these housing pods;

13

c. Provide and sustain responsive, timely, and adequate levels of integrated medical and mental health care for the inmates that is durable;

d. Improve and sustain meaningful inmate socialization activities;

e. Improve and sustain durable environmental sanitation and inmate self-care and hygiene;

f. Provide and sustain clinical necessary and evidence-based and structured individual and group therapeutic treatment plans and treatment using operational and clinical best-practices by trained and qualified staff;

g. Improve the quality of life for the inmates while housed in the pods;

h. Improve the effectiveness and compassion of health care and custody staff for providing custodial and health care services to program inmates;

i. Help to reduce negative incidents involving the inmates and use of force incidents involving mentally ill inmates;

j. Help to reduce use of segregation of the inmates;

k. Help to improve quality of life for the inmates after release from the jail;

l. Provide ongoing data driven tracking and evaluation of MHSU practices, processes, and outcomes to facilitate durable and sustainable care and security programming.

m.

37.

Defendants' plan seeks to provide their female mental health detainees with steps to assist them in maintaining their hygiene; in achieving a clean and safe living space in each pod; with structured out-of-cell group activities; and with the designation and training of officers assigned to work in a non-acute housing unit.[5]

38.

Defendants' plan will allow the female inmates to receive at least four hours of daily out-of-cell time, with at least one hour per day of outdoor recreation or indoor gym time, structured activities as detailed in "Exhibit C," to include mediation and mindfulness exercises and group sessions, and designated officers who are presently being trained to work with the female inmates currently housed in Pods B, C, and G.[6] These officers will conduct "cell checks" Monday through Friday of the MHSU participants' cells to ensure maintenance and cleanliness of each individual inmate's cell.

---

[5] Although the Court's July 23, 2019 order specifies that the designation and training of officers should be for a non-acute housing unit, most if not all of the female mental health inmates housed in housing pods B, C, and G suffer from actual mental illness.

[6] With the new configuration of the South Fulton Annex, which has been done to accommodate the MHSU, the mental health inmates will now be housed in pods B, C and D.

39.

Defendants propose providing female mental health inmates in Phase 1 of the MHSU an hour of therapeutic treatment, in addition to 15 minutes of meditation, and to those inmates in Phases 2 and 3 two hours each of therapeutic treatment, in addition to the 15 minute mediation period.

40.

With Defendants' plan, each inmate will be monitored and their mental healthcare overseen by both the MHSU treatment team and non-MHSU mental health professionals. These NaphCare professionals will continually assess the inmate's need for additional individual treatment.

41.

Defendants' proposed MHSU plan adequately addresses the Court's concerns regarding deficiencies at the South Fulton Annex.

42.

As Defendants' retained expert with a specialization in the planning, development, implementation, evaluation, and compliance monitoring of mental health programs in jail confinement environments, I will consult with the Sheriff's Office and NaphCare on an ongoing basis to ensure that the proposed MHSU is successfully implemented and will provide refinements to the plan where

necessary to ensure an optimal outcome in accordance with court order and according to Constitutional requirements for the care and custody of prisoners with mental illness.

I declare under penalty of perjury that the information given herein is true and correct and I understand that a false answer to any item my result in a charge of false swearing.

Sworn by me this 23rd day of September, 2019.

_____
Dr. Kenneth A. Ray, DBH, MEd