IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GEORGIA ADVOCACY OFFICE, *et al.*, | ) ) ) ) |
| Plaintiffs, | ) CIVIL ACTION ) |
| v. | ) NO. 1:19-CV-1634-WMR-JFK ) |
| THEODORE JACKSON, *et al.*, | ) ) |
| Defendants. | ) ) ) |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO
MODIFY PRELIMINARY INJUNCTION ORDER**

The Court's preliminary injunction order rests on an extensive and largely undisputed factual record of abuses in the South Fulton Jail. Properly implemented, the injunction will alleviate the suffering of some of society's most vulnerable and may very well save someone's life while this case proceeds to final judgment. Importantly, Plaintiffs are not the sole beneficiaries; Defendants also appear to benefit from the injunction. As illustrated by the incident reports Defendants recently filed under seal (*see* Doc. 121-1), women with psychiatric disabilities are not inherently disruptive or unmanageable. Indeed, out of the 18

disruptive incidents Defendants cite in their brief (Doc. 120 at 4), not one incident involved a woman assigned to B-Pod or C-Pod (*see* Doc. 121-1), the only two pods where women with psychiatric disabilities receive anything approaching the therapeutic programs, socialization, and other out-of-cell activities contemplated by the Court's order. With therapy and opportunities for socialization, the symptoms of individuals with psychiatric disabilities can—as both Dr. Jeffrey Metzner and corrections expert Emmitt Sparkman testified—be treated and stabilized, resulting in corresponding behavioral improvements.

In an important respect, however, the preliminary injunction is not achieving its purpose. As Defendants concede, the South Fulton Jail has been "reconfigure[ed]" (Doc. 120 at 5 & n.1), with women who previously would have been held in B-Pod, C-Pod, and G-Pod sometimes being assigned long-term to the intake area or D-Pod. In addition, Defendants no longer consider G-Pod to be a "mental health" pod and have admittedly stopped providing more than one hour per day of out-of-cell time to women in that pod. As a result, the injunction is now both arguably overbroad (in that it applies to women in G-Pod who do not appear to have psychiatric disabilities), and underinclusive (in that it fails to cover women

with psychiatric disabilities who are held in other pods).[1]

Despite evidence that the injunction is both workable and necessary, Defendants devote much of their response brief (Doc. 120 at 2-3) to arguing that the preliminary injunction expired automatically after 90 days under 18 U.S.C. § 3626(a)(2) irrespective of the Court's September 23, 2019, addendum order, which was entered specifically to "satisf[y] 18 U.S.C. § 3626(a)(2)" (Doc. 94 at 1). According to Defendants, the only way to avoid § 3626(a)(2)'s automatic termination provision is "to issue a final order, which would be a permanent injunction." (Doc. 120 at 9.) As discussed below, however, that interpretation of the statute contravenes the text of § 3626(a)(2) and basic principles of statutory interpretation. The Court should therefore hold that the preliminary injunction remains effective and grant the narrow modification requested by Plaintiffs.

## ARGUMENT

The Court should grant the motion to modify the preliminary injunction. As discussed below, Defendants do not appear to dispute that the preliminary injunction, which by its terms applies to B-Pod, C-Pod, and G-Pod, fails to protect

---

[1] Plaintiffs believe that the Court's order clearly prohibits using solitary confinement to punish women with psychiatric disabilities. Rather than move for contempt, however, Plaintiffs seek only clarification of the preliminary injunction at this time.

3

women with psychiatric disabilities who are now being assigned to other pods and thus fails to achieve the injunction's basic purpose of ensuring that women with psychiatric disabilities receive adequate out-of-cell time and mental health services. Instead of addressing the substance of Plaintiffs' motion, Defendants argue that the preliminary injunction automatically terminated under 18 U.S.C. § 3626(a)(2), making modification of the injunction irrelevant. But that interpretation of the statute disregards the statute's text and results in numerous practical difficulties. In all events, preliminary injunctive relief remains necessary and Plaintiffs will move for a second preliminary injunction if the Court concludes that the previous injunction terminated.

**I.      The Modification Requested Is Necessary and Narrow.**

Plaintiffs' motion to modify the preliminary injunction seeks a limited change so that the injunction applies to women based on their status—having psychiatric disabilities—regardless of their housing location within the South Fulton Jail. This modification is necessary because Defendants have begun housing women with psychiatric disabilities in the jail's intake area and in D-Pod, and because G-Pod has been designated a disciplinary pod, yet still houses women with serious mental illnesses. The modification should be uncontroversial given that it will ensure that the injunction is neither overinclusive nor underinclusive

with respect to the class of individuals that the Court sought to protect.

Defendants' brief has little to say about the requested modification. Despite accusations that Plaintiffs are trying to "manipulate" the Court (Doc. 120 at 2), "spewing false allegations" (*id.*), "twist[ing] the law" (*id.*), displaying "astounding" levels of "ignorance" about the jail (*id.* at 8), being "flat out defamatory" (*id.* at 11), and so forth, Defendants do not appear to dispute the straightforward facts on which Plaintiffs' motion is premised, namely, that Defendants now operate G-Pod as a disciplinary segregation unit and that Defendants house women with psychiatric disabilities in G-Pod, D-Pod, and the jail's intake area. For the reasons discussed in Plaintiffs' brief (Doc. 111-1 at 4-7, 8-13), the Court should modify the preliminary injunction if it determines that the injunction remains in force.

## II.   The Injunction Did Not Automatically Expire.

Defendants' principal argument is that there is no injunction to modify because the preliminary injunction expired 90 days after it was entered. Defendants base this argument on 18 U.S.C. § 3626(a)(2), which provides, in relevant part, "Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final

before the expiration of the 90-day period." According to Defendants, a district court can only make a preliminary injunction order final by entering "a final order, which would be a permanent injunction." (Doc. 120 at 9.) And because the Court did not enter a permanent injunction within 90 days of entering it, Defendants argue that the preliminary injunction "expired." (Doc. 120 at 2.)

Defendants' interpretation of § 3626(a)(2) is unsupported by precedent and is inconsistent with the text and structure of the statute. "In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself." *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) (Gorsuch, J.). Beginning with the text, the provision at issue here requires only that a district court "make[] [its preliminary injunction] order final" within a certain period of time. 18 U.S.C. § 3626(a)(2). Defendants take the phrase "makes the order final" to refer to the entry of "a permanent injunction" (Doc. 120 at 9), but the ordinary meaning of "makes . . . final" is not so limited. All that the statute requires is "an order finalizing the preliminary injunction," not a permanent injunction. *See United States v. Secretary, Fla. Dep't of Corr.*, 778 F.3d 1223, 1226 (11th Cir. 2015). District courts regularly refer to "finalizing" preliminary injunctions by simply entering more detailed or carefully tailored orders supplementing earlier, less-

detailed ones drafted under time pressure and without the opportunity for substantial deliberation.[2] That iterative manner of formulating and finalizing preliminary injunction orders reflects "the haste characteristic of a request for a preliminary injunction," requiring courts "to make determinations without the aid of full briefing or factual development." *See Firefighters Local Union No. 1784 v.*

---

[2] *See, e.g.*, *MACOM Technology Solutions Holdings, Inc. v. Infineon Technologies*, No. 2:16-CV-2859, 2017 WL 3834726, at *5 (C.D. Cal. Sept. 1, 2017) ("The Court's October 2016 Order was intended to preserve the status quo until the Court could finalize the preliminary injunction on December 7, 2016."); *Baldin v. Wells Fargo, N.A.*, No. 3:12-CV-648, 2015 WL 5521988, at *5 (D. Ore. Sept. 16, 2015) (noting preliminary injunction initially entered on July 3, 2012, "was not finalized until October 10, 2012," due to differing interpretations of district court's ruling); *Carrier v. Bradley*, No. 7:10-CV-5044, 2012 WL 13105504, at *3 (S.D.N.Y. May 17, 2012) (stating preliminary injunction entered orally at July 2010 hearing "was finalized" by written order entered in September 2010); *Natural Resources Defense Council, Inc. v. Gutierrez*, No. 3:07-CV-4771, 2008 WL 360852, at *32 (N.D. Cal. Feb. 6, 2008) (stating stipulated preliminary injunction would remain in place "pending finalization of the preliminary injunction"); *Berger v. Weinstein*, No. 07-CV-994, 2008 WL 191172, at *12 (E.D. Pa. Jan. 23, 2008) (holding, after modifying the scope of preliminary injunction, that order was "now finalized"); *Natural Resources Defense Council, Inc. v. Evans*, 232 F. Supp. 2d 1003, 1055 (N.D. Ca. 2002) (granting preliminary injunction, ordering that "defendants should not deploy [challenged] sonar," and setting conference "to address finalizing the preliminary injunction"); *cf. Lone Star Promotions, LLC v. Abbey Lane Quilts, LLC*, No. 1:18-CV-73, 2018 WL 5808802, at *7 (D. Utah Nov. 6, 2018) (noting parties were waiting on state court's preliminary injunction "to be finalized in writing"); *Snyder v. Ocwen Loan Serv., LLC*, 258 F. Supp. 3d 893, 916 (N.D. Ill. 2017) (finding plaintiffs were entitled to a preliminary injunction, but concluding that "more work [was] required before the [district court could] finalize . . . an appropriate preliminary injunction order").

*Stotts*, 467 U.S. 561, 603 n.7 (1984).  Under the Prison Litigation Reform Act, to ensure that district courts would have a reasonable but not unlimited opportunity to deliberate over the scope of preliminary injunctive relief, Congress chose language instructing district courts that their time for reviewing the record, making findings under § 3626(a)(1), and finalizing the operative text of a preliminary injunction is limited to 90 days after entering initial injunctive relief.  Accordingly, the ordinary meaning of "makes the order final," 18 U.S.C. § 3626(a)(2), is not limited to orders converting preliminary injunctions to permanent injunctions.  The phrase instead includes within its meaning orders tailoring preliminary relief to the circumstances of the case through a finalized preliminary injunction order containing the findings and narrowly tailored provisions mandated by § 3626(a)(2).

The ordinary meaning of § 3626(a)(2) is confirmed by the statute's structure. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."  *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748 (2019) (Thomas, J.) (quoting *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989)).  Here, two contextual factors show that the term "makes the order final" does not refer to entering a permanent injunction.

First, the phrase "makes the order final" must be read in the context of the

entire sentence in which Congress placed it, which provides that "[p]*reliminary injunctive relief* shall automatically expire . . . *unless* the court . . . makes the order final" within the specified time period. 18 U.S.C. § 3626(a)(2) (emphasis added). The "unless" clause unambiguously refers to conditions that will prevent "*preliminary* injunctive relief" from expiring. Thus, the action that "makes the order final" cannot refer to entering a permanent injunction, which would result in preliminary injunctive relief being supplanted by permanent injunctive relief instead of being saved from automatic termination.

 Second, and relatedly, Defendants' interpretation of § 3626(a)(2) renders the "unless" clause superfluous. One of the "most basic interpretive canons" is that "a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 825 (2018) (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)). If Defendants were correct that the phrase "makes the order final" required the entry of permanent injunctive relief, the entirety of § 3626(a)(2)'s "unless" clause would be rendered superfluous, because a different subsection of the statute, 18 U.S.C. § 3626(a)(1), already sets out the baseline requirements for permanent injunctive relief in prison conditions cases. If Congress had wanted to codify Defendants' interpretation of the statute, it could

9

have simply said that preliminary injunctions automatically terminate after 90 days and omitted the remainder of the sentence, leaving the provisions of § 3626(a)(1) to govern the replacement of preliminary injunctive relief with permanent injunctive relief. By contrast, Plaintiffs' interpretation of § 3626(a)(2) allows the "unless" clause to have independent effects by dictating the conditions under which preliminary injunctive relief may remain in force beyond 90 days.

Though the Eleventh Circuit has not directly addressed this issue, its decision in *United States v. Secretary, Florida Department of Corrections*, 778 F.3d 1223 (11th Cir. 2015), suggests that "makes the order final" does not require permanent injunctive relief. There, the Eleventh Circuit vacated a district court's preliminary injunction order in a prison-conditions case, in part because the district court had not "issued an order finalizing the preliminary injunction." *Id.* at 1226. In describing that error, the Eleventh Circuit did not say that the district court had failed to enter a permanent injunction, but instead repeatedly referred to the district court's failure to "finalize its order." *See, e.g.*, *id.* at 1288, 1289. Moreover, the Eleventh Circuit found "no basis" for believing that, if the plaintiff again moved for a preliminary injunction on remand, the district court would "decline to make the required need-narrowness-intrusiveness findings" or "refrain from finalizing its order." *Id.* at 1229. The Eleventh Circuit's suggestion that the district court had

the ability to "refrain from finalizing" a preliminary injunction order suggests that the Eleventh Circuit interpreted the finalization requirement to mean something less momentous than entering a permanent injunction, because entry of a permanent injunction could occur only after a trial on the merits or, at a minimum, summary judgment proceedings.

Although Defendants' interpretation of § 3626(a)(2) should be rejected, Plaintiffs agree with Defendants that if, contrary to the statute's text and structure, § 3626(a)(2)'s automatic-termination provision can only be avoided by entering a permanent injunction, the Court should permit Plaintiffs to move for a second preliminary injunction. As Defendants note in their brief (Doc. 120 at 6), courts have held that § 3626(a)(2) does not prevent district courts from renewing preliminary injunctive relief after a previous injunction has expired. *See, e.g.*, *Edmo v. Corizon, Inc.*, 935 F.3d 757, 783 n.12 (9th Cir. 2019); *Alloway v. Hodge*, 72 F. App'x 812, 817 (10th Cir. 2003); *Mayweathers v. Newland*, 258 F.3d 930, 935-36 (9th Cir. 2001); *see also United States v. Secretary, Fla. Dep't of Corr.*, 778 F.3d at 1228 n.9. Therefore, if the Court denies this motion on the ground that the preliminary injunction expired, Plaintiffs will move for a renewed preliminary injunction.

11

### III.  Defendants' Remaining Arguments Lack Merit.

Defendants make a number of passing arguments and representations that are irrelevant to Plaintiffs' motion but nonetheless warrant a brief response. First, Defendants mischaracterize the goals of this litigation, asserting that Plaintiffs' counsel seek "to control" the Sheriff's Office (Doc. 120 at 4), exercise "carte blanche" authority "to dictate how the Fulton County Jail should be run" (*id.*), and have the jail "recreated in their image" (*id.* at 8). In reality, this lawsuit was filed as a last resort after Defendants failed to address obviously unconstitutional conditions at the South Fulton Jail. And Plaintiffs seek modest relief: a few hours per day of out-of-cell time and appropriate therapeutic activities for women with psychiatric disabilities. Far from dictating how the jail should be run, Plaintiffs sought and the Court ordered narrow relief that leaves Defendants broad discretion to administer the jail as they see fit. The limited out-of-cell time requirements imposed by the preliminary injunction leave almost entirely to Defendants' discretion how to go about complying with the order on a day-to-day basis, and the MHSU program was designed solely by Defendants. These changes represent neither "carte blanche" reform nor unbridled "control" over the jail.

Second, Defendants claim that women with psychiatric disabilities should not "get a pass" for committing disciplinary infractions. (Doc. 120 at 8.) Plaintiffs

12

do not disagree, and nothing in the Court's preliminary injunction prevents Defendants from imposing disciplinary sanctions or denying women out-of-cell time where "necessary to prevent an immediate and substantial risk of serious harm to a person." (*See* Doc. 94 at 45 (modifying preliminary injunction order to permit denials of out-of-cell time and providing for periodic review when those denials occur).) But Defendants' preference for imposing long-term solitary confinement to punish disciplinary infractions is unnecessary and likely counterproductive with respect to women experiencing psychiatric disabilities, for whom isolation exacerbates their psychiatric symptoms and related behavioral challenges. As Dr. Metzner explained in his testimony at the preliminary injunction hearing, "supermaxes around the country" have found ways of providing "the residential level of care," including "20 hours of out-of-cell time," to individuals deemed "dangerous." (Doc. 62 at 112 ("If you're too dangerous, the way you'll get your 20 hours of out-of-cell time will be different than the way you get your 20 hours of out-of-cell time if you're [in general population].").) Moreover, providing out-of-cell treatment and activities to individuals with psychiatric disabilities can decrease disruptive behavior. (*See, e.g.*, Doc. 68 at 41-42 (correctional expert Emmitt Sparkman describing the "dramatic change" in behavior when prisoners with serious mental illness were diverted from long-term

13

solitary confinement to programs offering increased activities and out-of-cell time).)  Indeed, out of the 18 incident reports filed by Defendants (Doc. 121-1), not a single incident occurred in B-Pod or C-Pod, which are currently the only areas of the jail operated as part of the MHSU program.

Finally, Defendants argue that they have "transformed" the South Fulton Jail by adding and training new staff members, obtaining funding for the MHSU, and providing more activities[3] to women in the MHSU.  (Doc. 120 at 6.)  Although Plaintiffs agree that conditions have improved as a result of the preliminary injunction, Defendants fail to acknowledge a number of problems that continue to exist at the jail.  For example, Defendants continue to confine women with psychiatric disabilities to their cells for 23 to 24 hours per day (*see, e.g.*, Doc. 111-2 ¶¶ 7-8, 10; Doc. 111-3 ¶ 11; Doc. 111-4 ¶ 7) under conditions that are unsanitary (*see, e.g.*, Doc. 111-3 ¶¶ 6-8).  Regarding staffing and training, Plaintiffs expect to show at a hearing that Deputy Louise Crowder was reassigned from the MHSU program, and that officers currently assigned to the South Fulton Jail display a lack

---

[3] While Defendants claim that "mental health inmates" are provided activities such as "a basketball league, talent shows, and upcoming holiday celebrations" (Doc. 120 at 6), it appears that those representations are overstated.  For example, current detainees report that the alleged basketball league is not open to women with psychiatric disabilities, and that there was one talent show (in October 2019).

of appropriate training, such as by taunting women who are having psychiatric episodes.  (*See, e.g.*, Doc. 111-3 ¶¶ 12-15.)

For these and other reasons that Plaintiffs will address at an appropriate time, injunctive relief was necessary in July 2019 and remains necessary today to ensure that women with psychiatric disabilities receive necessary mental health care and avoid serious psychological harm.  For present purposes, however, the Court need only decide whether to grant the narrow modification of the injunction requested by Plaintiffs.  As discussed above and in Plaintiffs' opening brief, there is no serious dispute that the operative text of the preliminary injunction fails to reach certain areas of the jail where women with psychiatric disabilities are held.  The Court should modify the injunction to protect those women from harm.

## CONCLUSION

The Court should modify the preliminary injunction to clarify that the injunction applies to women with psychiatric disabilities and that the Court's addendum order (Doc. 94) finalized the preliminary injunction.

                                                Respectfully submitted,

Devon Orland
Ga. Bar No. 554301
Anne Kuhns
Ga. Bar No. 149200
GEORGIA ADVOCACY OFFICE
1 West Court Square
Suite 625
Decatur, Georgia 30030
(404) 885-1234
(404) 378-0031 (fax)
dorland@thegao.org

/s/ Ryan Primerano
Sarah Geraghty
Ga. Bar No. 291393
Atteeyah Hollie
Ga. Bar No. 411415
Ryan Primerano
Ga. Bar No. 404962
SOUTHERN CENTER
FOR HUMAN RIGHTS
60 Walton Street, NW
Atlanta, Georgia 30303
(404) 688-1202
(404) 688-9440 (fax)
sgeraghty@schr.org

Michael A. Caplan
Ga. Bar No. 601039
CAPLAN COBB LLP
75 Fourteenth Street, NE
Suite 2750
Atlanta, Georgia 30309
(404) 596-5600
(404) 596-5604 (fax)
mcaplan@caplancobb.com

*Counsel for Plaintiffs*

January 3, 2020

## CERTIFICATE OF COMPLIANCE

I certify that this document has been prepared in compliance with Local Rule 5.1C using 14-point Times New Roman font.

/s/ Ryan Primerano

January 3, 2020

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing using the CM/ECF system, which will send notification of filing to all counsel of record.

/s/ Ryan Primerano

January 3, 2020