## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| GEORGIA ADVOCACY OFFICE, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| v. | ) ) | NO. 1:19-CV-1634-WMR-RDC |
| THEODORE JACKSON, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' MOTION TO EXCLUDE
## EXPERT OPINIONS FROM DR. KENNETH RAY

Devon Orland
Anne Kuhns
GEORGIA ADVOCACY OFFICE
1 West Court Square
Suite 625
Decatur, Georgia 30030

Sarah Geraghty
Atteeyah Hollie
Ryan Primerano
SOUTHERN CENTER
FOR HUMAN RIGHTS
60 Walton Street, NW
Atlanta, Georgia 30303

Michael A. Caplan
Jarred Klorfein
CAPLAN COBB LLP
75 Fourteenth Street, NE, Suite 2750
Atlanta, Georgia 30309

*Counsel for Plaintiffs*

Plaintiffs respectfully move the Court to exclude the expert opinions of Defendants' identified expert witness, Dr. Kenneth Ray.[1]

Defendants originally identified Dr. Ray as an expert retained to review their plan for a mental health stabilization unit and to consult with Defendants as the plan was implemented. But over the course of discovery, Dr. Ray's purview expanded to include several additional opinions: assessing whether Defendants were complying with this Court's Preliminary Injunction Order, opining as to the constitutionality of Defendants' actions, and establishing the clinical standard of care for individuals with serious mental illness.

But when Dr. Ray formed these new (previously undisclosed) expert opinions, Defendants did not submit a corresponding expert report. And while it appears ████████████████████████████████████ ██████ ████████████████████████████████████████ ████████████████████████████████. Oct. 7, 2020 Ray Dep. Tr. at 99:25–100:6, 100:14–100:19.

---

[1]     Defendants have made passing reference to another retained expert, Dr. Richard Dudley, who Defendants have not identified as a testifying witness. Defendants have not sought to rely on Dr. Dudley's opinions in their Motion for Summary Judgment. *See generally* Doc. 253. To the extent Defendants later seek to admit his testimony, however, Plaintiffs reserve the right to seek exclusion of Dr. Dudley's opinions in their entirety.

The majority of Dr. Ray's opinions should be excluded because Defendants did not submit an expert report in compliance with Federal Rule of Civil Procedure 26(a)(2)(B). And the remaining opinions should be excluded because Dr. Ray is not qualified to provide expert testimony regarding the standard of care for individuals with serious mental illness. Finally, several of his opinions should be excluded because they constitute improper legal opinions and, additionally, they lack sufficient facts and data upon which to base his conclusions. Dr. Ray's expert opinions should be excluded in their entirety.

## BACKGROUND

### A.   Dr. Ray's disclosed opinions were initially limited to assessing the plan for Defendants' proposed mental health program.

Plaintiffs brought this case as a last resort to remedy unconstitutional conditions of confinement—in particular, the frequent use of prolonged segregation, denial of services, and failure to provide treatment—for women with serious mental illness ("SMI") in the South Fulton Jail. After three days of testimony, Doc. 62; Doc. 68; Doc. 69, the Court summarized the conditions as "repulsive" and "something that's got to be remedied and needs to be remedied immediately." Doc. 73 at 54. The Court observed that there was "zero [expert testimony] offered by anyone for the defense that [said] that what's going on [in the jail] is acceptable." *Id.* at 55. The Court therefore entered a preliminary

2

injunction requiring Defendants to, among other things, offer minimum levels of out-of-cell time (four hours daily, for five days each week) and to submit a written plan to address the conditions. Doc. 65; Doc. 94.

Meanwhile, the parties proceeded through the discovery process. The Parties agreed to submit expert reports at least 90 days prior to the close of discovery. Doc. 95 at 11. In their initial disclosures, Defendants identified Dr. Kenneth Ray, who has served as a consultant, compliance monitor, and licensed mental health counselor in other matters, and as a testifying expert in this case. Doc. 96 at 7; Doc. 96-1 at ¶¶ 3, 5. Defendants also filed a declaration by Dr. Ray dated September 23, 2019, which listed Dr. Ray's opinions. Doc. 96-1 at ¶¶ 31–42.

The opinions in Dr. Ray's September 2019 Declaration related to his assessment of Defendants' plan for a Mental Health Stabilization Unit ("MHSU"). *Id*. As of the date of the opinion, the MHSU had not been implemented. Thus, the opinions focused exclusively on whether the plan itself was "adequate," and provided no conclusions regarding the on-the-ground conditions in the jail. *Id.* Dr. Ray's opinions centered on how the plan was designed and what it intended to achieve.[2] Dr. Ray opined that the plan "adequately addresses the Court's concerns"

---

[2]     Dr. Ray opined that the plan was "designed" to provide improvements for women diagnosed with "mental and/or behavior health disorders" and for sanitation and hygiene conditions. *Id.* ¶¶ 33–35, 37. He opined that the plan was "intended" to

and would comply with the Court's preliminary injunction. *Id.* ¶¶ 31–32, 41.[3]
These opinions did not, however, address whether women were receiving the
Court-ordered out-of-cell time or otherwise abiding by the preliminary injunction.
The opinion did not address whether the MHSU had been properly implemented or
whether, as implemented, the MHSU met the requirements of the Preliminary
Injunction Order.

Because it was unclear whether Defendants intended to supplement Dr.
Ray's opinions, which were limited to the MHSU plan itself, Plaintiffs sought the
written reports that Dr. Ray was required to provide under Fed. R. Civ. P.
26(a)(2)(B). Doc 209-2. The day before Dr. Ray's deposition, Defendants rejected
the request on the basis that Dr. Ray "is both a consulting and testifying witness."
Doc 209-3. Plaintiffs objected to Defendants' withholding of Dr. Ray's consulting
opinions based on his supposed dual designation. *See, e.g.*, Feb. 28, 2020 Ray Dep.
Tr. at 118:20–119:17; Doc. 209-9 at 3–4.

---

achieve several outcomes, including to accomplish court-ordered requirements,
reduce segregation, and provide ongoing tracking and evaluation of the MHSU. *Id.*
¶ 36. Dr. Ray also opined that the MHSU "will allow" for women to receive at least
four hours of daily out-of-cell time and one hour-per-day of recreation or gym time.
*Id.* ¶ 38.

[3]     Dr. Ray also stated he would "consult" with Defendants regarding
implementing the MHSU. *Id.* ¶ 42.

Plaintiffs then explored Dr. Ray's opinions in a deposition on February 28, 2020. Dr. Ray confirmed he was opining as to the MHSU plan, namely that he was recommending the "tools" for Defendants themselves to use to achieve compliance. Feb. 28, 2020 Ray Dep. Tr. at 29:11–32:22; 136:22–138:17.[4] But Dr. Ray was clear that his expert opinion was limited: he was "not a monitor in this case," and "would not be providing an opinion on whether or not Fulton County Sheriff's Office is complying with [the] out-of-cell time requirement." *Id.* at 32:11–33:4. *See also id.* at 31:25 ("I'm not monitoring here . . .").

At the deposition, Dr. Ray also confirmed that he had brought on a forensic psychiatrist, Dr. Richard Dudley, to serve as the "primary clinician on the project." *Id.* at 34:12–19. Dr. Dudley was retained to "look at the efficacy of clinical care, to be sure that care is consistent with certain medical standards." *Id.* at 134:3–11. Dr. Ray confirmed he needed a psychiatrist to opine regarding "the efficacy of clinical care to be sure that care is consistent with certain medical standards . . . ." *Id.* Dr. Ray also confirmed he would need a prescriber (which Dr. Ray was not) to provide such an opinion. *Id.* at 134:12–15 ("Q. And you need a psychiatrist to opine on that? A. Yes, I do. I'm not a prescriber, so I would want a prescriber to do that.").

---

[4]    Dr. Ray also stated he would provide opinions regarding staffing. *Id.* at 33:5–20.

5

Dr. Ray's deposition ended early by agreement to permit Dr. Ray time to make an early flight, to be continued at a later date. *Id.* at 4:10–19. The deadline for submitting an expert report 90 days prior to close of discovery passed on March 3, 2020.[5] Prior to that time, Defendants did not disclose any additional expert reports under Federal Rule of Civil Procedure 26(A)(2)(B).

### B. As discovery progressed, Dr. Ray developed additional undisclosed opinions but did not submit a corresponding expert report.

Because Dr. Ray had not provided a report to supplement the September 2019 Declaration, Plaintiffs served an interrogatory requesting that Defendants identify all of Dr. Ray's expert opinions. Doc. 209-5. In response, Defendants did not submit an updated report under Rule 26(A)(2)(B). Instead, Defendants responded on September 4, 2020 by identifying several new opinions by Dr. Ray. Doc. 209-7. These new opinions went far beyond assessing the MHSU plan and were not included in a Rule 26(a)(2)(B) report.

According to Dr. Ray's new opinions, Defendants were "not deliberately indifferent to the individual Plaintiffs, their medical or mental health problem or their conditions of confinement." Doc. 209-7 at 4. He also opined that Defendants

---

[5]    The discovery deadline was subsequently moved to a later date, but not before this deadline had passed. Docs. 155, 159.

had provided "adequate" medical and mental health care, and that women with SMI were "offered, although sometimes refuse, out-of-cell time" *Id.* The identified opinions implied—but did not explicitly state—that Defendants were currently complying with the "spirit" of the preliminary injunction. *See id.* ("Defendants have retained a recognized court monitor that can ensure continued compliance with the spirit of the injunction."). The response was also at odds with Dr. Ray's earlier testimony that he was not acting as a monitor, because the new disclosures identified a new opinion that "there is no need for court monitoring, especially in light of the fact that Defendants have retained a recognized court monitor." Doc. 209-7 at 4. Finally, Defendants noted that Dr. Ray had made "numerous" additional "recommendations." *Id.* Defendants provided a partial list of these recommendations, but refused requests for the full list because of Dr. Ray's dual role as a testifying expert and consultant.[6]

As noted above, Defendants did not provide a Rule 26(a)(2)(B) report for these new opinions. Defendants instead produced emails from Dr. Ray, as well as a

---

[6]     Plaintiffs sent a good faith letter that requested Defendants "confirm whether the recommendations listed constitute the entirety of the recommendations by Dr. Ray and, if not, supplement the response to include all recommendations by Dr. Ray." Doc. 209-9 at 3. In response, Defendants stood by their assertion that Dr. Ray's opinions as a "consultant" were privileged and refused to disclose those recommendations made in his consulting capacity. Doc. 209-10 at 3–4. Plaintiffs continue to dispute this distinction.

"DRAFT" Quality Assurance & Compliance Monitor Report and a list of suggested recommendations. Oct. 7, 2020 Ray Dep. Exs. 3 & 4. These documents did not relate to Dr. Ray's newly disclosed opinions regarding (1) whether Defendants had been deliberately indifferent, (2) whether the provision of mental health services was adequate, or (3) whether Defendants were complying with the preliminary injunction, thus obviating the need for a court monitor. *Id.* The documents, at most, related to Dr. Ray's recommendations regarding the implementation of the MHSU. *Id.*

**C.** 

Plaintiffs resumed Dr. Ray's deposition on October 7, 2020 and

Oct. 7, 2020 Depo Tr. at 26:7–15.

Specifically, Dr. Ray testified

*Id.* at 29:25–30:6.

Although Dr. Ray █████████████████████████████████████████

████████████████████████████████████████, *id.* at 28:19–29:4, █

████████████████████████████████████████████████████████████

████████████████ *Id.* at 13:19–14:3, 31:6–33:13 (████████████████

████████████████████████████████ ). ███████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

*Id.* at 30:15–24. ███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████ *Id.* at 31:18–32:23.

Dr. Ray then █████████████████████████████████████████

████████████████████████████████████████████████████████████

████ *Id.* at 27:7–16. Instead, he testified █████████████████████████

████████████████████████████. *Id.* Dr. Ray then testified ██████████████

████████████████████████████████████████████████

████████████████████████████ *Id.* at 86:1–87:15.

Remarkably, Dr. Ray █████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████



Oct. 7, 2020 Ray Dep. Ex. 5 at 1 (emphasis added). At his deposition, Dr. Ray

█████████████████████████████████████ Oct. 7, 2020 Ray Dep. Tr. at

99:25–100:6 (" ████████████████████████████████████████████

██████████████████████ ").

    Dr. Ray ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████ *Id.* at

99:25–100:13 (emphasis added). *See also id.* 100:14–100:19 (" ███████████

███████████████████████████████████████

████████████████████████████████████████████

███████████████████████████ "). ███████████████████████

████████████████████████████████████████████

████████████████████████████████████. *Id.* at 100:20–

101:8 (" ██████████████████████████████████████████

███████████████████████████████████████

██████ ).

**D.** ███████████████████████████████████████████
███████████.

At his deposition, Dr. Ray also ████████████████████████
████████████████. ████████████████████████████████
████████████████████████████████████████████████
████████████████████████. Oct. 7, 2020 Ray Dep. Ex. 6 at 1
(emphasis added). Dr. Ray explained: ████████████████████████
████████████████████████████████████████
████████████████████████████████████████████████
████████████████ *Id. See also id.* ("████████████████████████
████████████████). At his deposition, Dr. Ray ████████████████
████████████████████████████████████████
████████████████████████ Oct. 7, 2020 Ray Dep. Tr. at
101:22–103:7. *See also id.* at 103:5-7 ("████████████████████████
████████████████████████████████████").

████████████████████████████████████████
████████████████████████████████████. *Id.* at 34:18–
35:14 (████████████████████████████████████████
████████████); 73:11–74:2 (████████████████████████████
████████████████████████████████████████████████████;

82:21–83:1 ██████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████ *Id.* at

74:20–22.

Defendants never disclosed an updated expert report by Dr. Ray. Discovery

closed on October 29, 2020.[7]

### E. In support of Defendants' motion for summary judgment, Dr. Ray provided an affidavit with a new opinion.

On January 27, 2021, Defendants filed a motion for summary judgment.

Doc. 253. In his declaration supporting the motion, Dr. Ray offered a new opinion

regarding the impact of Defendants' practices on inmate mental health. He opined

that the denial of out-of-cell time does not harm people with SMI. Doc. 253-9 ¶ 6.

("I am not aware of any minimum requirement or scientific research studies for

minimum or maximum out-of-cell time, such that an inmate can be said to be in

imminent danger of harm . . . if she receives less . . . ."). He concluded that out-of-

---

[7]     Although Discovery was extended to December 28, 2020, the extension was for limited purposes unrelated to Dr. Ray's expert reports. Doc. 229 at 5. At any rate, Defendants still have not provided an expert report for these opinions.

cell time should "not be viewed in a vacuum" or as a "per se indicator of adequacy of mental health treatment." *Id.* ¶ 6.[8]

Finally, Dr. Ray expanded upon his previous opinion that Defendants had not acted with deliberate indifference. *Id.* ¶ 7. But Dr. Ray went further, stating there was no evidence that Defendants expressed a "subjective awareness" of danger to inmate health. *Id.* ¶ 8. He concluded that "the plan is constitutionally adequate and that the Defendants are in substantial compliance with it." *Id.* ¶ 10.

In response, Plaintiffs file this motion to exclude Dr. Ray's shifting, unfounded, and undisclosed expert opinions.

## ARGUMENT

Because expert testimony "can be both powerful and quite misleading because of the difficulty in evaluating it," the trial court serves a "gatekeeping" function. *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 595 (1993) (internal quotation marks omitted). Defendants bear "the burden of demonstrating

---

[8] The declaration also reiterated several of Dr. Ray's previous opinions, including how the MHSU program was "designed" and what it "intended" to accomplish. Doc. 253-9 at ¶ 4. The declaration suggested that the MHSU's "program and practices . . . serve the adequate levels of custodial care and confinement." *Id.* Dr. Ray also opined how the "current" plan operates, how it "allows" inmates to "receive at least four hours of daily out-of-cell time," *Id.* ¶ 5, and how it "adequately addresses" the Court's "concerns." *Id.* ¶ 11.

that each . . . proffered expert[] is qualified to render an expert opinion, that the

opinion is reliable, and that the opinion would assist the trier of fact in resolving a

disputed issue of material fact." *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th

Cir. 2004).

Courts apply Federal Rule of Evidence 702 to engage in a "rigorous three-

part inquiry":

> (1) the expert is qualified to testify competently regarding the
> matters he intends to address; (2) the methodology by which the
> expert reaches his conclusions is sufficiently reliable as
> determined by the sort of inquiry mandated in *Daubert*; and (3)
> the testimony assists the trier of fact, through the application of
> scientific, technical, or specialized expertise, to understand the
> evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (*en banc*) (internal

quotation marks omitted).

And "[w]hile an expert may testify as to his opinion on an ultimate issue of

fact, he may not provide legal opinions on the ultimate issues in this case or simply

tell the jury what result to reach." *Architects Collective v. Pucciano & English,*

*Inc.*, 247 F. Supp. 3d 1322, 1335 (N.D. Ga. 2017).

Here, Dr. Ray's opinions fall into six categories. First, he opines that the

original plan for the MHSU "adequately" addressed the Court's concerns, was

"designed" and "intended" to address court-ordered requirements and would

adequately improve conditions for those with mental health disorders (the "MHSU Plan Opinion") Doc. 96-1 at ¶¶ 31–42; Doc. 253-9 at ¶ 4. Second, he opines that Defendants had successfully implemented the MHSU as he directed (the "Implementation Opinion"). Doc. 209-7 at 4; Doc. 253-9 at ¶ 4. Third, he concludes that Defendants are in ███████████████ with the Preliminary Injunction Order and there is no need for the Court to appoint a monitor (the "Compliance Opinion"). Doc. 209-7 at 4; Oct. 7, 2020 Ray Dep. Tr. at 29:25–30:6; Doc. 253-9 at ¶ 10. Fourth, he opines that Defendants have not acted with deliberate indifference, have not demonstrated a "subjective awareness" of danger to inmates, and meet constitutional standards (the "Constitutionality Opinion"). Doc. 209-7 at 4; Doc. 253-9 at ¶¶ 7–8, 10. Fifth, he opines regarding whether out-of-cell time harms those with SMI ("Impact of Segregation Opinion") Doc. 253-9 at ¶ 6. Finally, Dr. Ray has consulted with Defendants throughout the litigation, making "recommendations" regarding how to implement the MHSU. Feb. 28, 2020 Ray Dep. Tr. at 29:11–19, 33:5–20, 136:22–138:17. Some of these recommendations have been disclosed, Oct. 7, 2020 Ray Dep. Exs. 3 & 4, and others have been withheld as privileged, Doc. 209-7 at 4; Doc. 209-10 at 3–4 (collectively, the "Consulting Opinions").

     None of Dr. Ray's opinions are proper, and they should each be excluded.

## I. Dr. Ray's opinions should be excluded in their entirety.

All of Dr. Ray's opinions are properly excluded for two reasons: (a)

Defendants have not produced an expert report for the majority of his opinions,

and (b) as to the remaining opinions, Dr. Ray is not qualified as an expert.

### A. Dr. Ray has not produced a report for the majority of his opinions and they should be excluded.

For the majority of Dr. Ray's opinions, Defendants have not produced a

written report in compliance with Federal Rule of Civil Procedure 26(a)(2)(B) and

Northern District of Georgia's Local Rules 26.1 and 26.2. Where "a party fails to

provide information . . . as required by Rule 26(a) or (e), the party is not allowed to

use that information or witness to supply evidence on a motion, at a hearing, or at a

trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P.

37(c). Defendants have not produced a Rule 26 report for four of the six opinions:

the Implementation Opinion, the Compliance Opinion, the Constitutionality

Opinion, and the Impact of Segregation Opinion. They should therefore be

excluded.

Circuit precedent supports the exclusion of these opinions. In *Mann v. Taser*

*International, Inc*. for example, the plaintiffs had disclosed a Rule 26 report

opining on a cause of death based on "excited delirium." 588 F.3d 1291, 1310

(11th Cir. 2009). After the deadline for submitting an expert report had passed,

Plaintiffs filed a second affidavit listing two new theories of causation—acidosis and electrocution. *Id.* The trial court excluded these two new theories as untimely. *Id.* On appeal, the plaintiffs argued that the second affidavit was admissible because the first affidavit had mentioned acidosis—and the second affidavit clarified the earlier opinion. *Id.* at 1310–11. The Eleventh Circuit analyzed this argument, and explained the disclosure requirements for expert reports:

> A Rule 26 report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B). Federal Rule 26 correlates with local rule 26.2, which mandates that expert opinions must be disclosed sufficiently early in the discovery period to allow the opposing party to react before the close of discovery, under penalty of exclusion. N.D. Ga. R. 26.2C.

*Id.* The Eleventh Circuit then rejected plaintiffs' argument, noting that a "plain reading" of the first affidavit did not indicate that the plaintiffs would present acidosis as a theory of causation. *Id.* at 1311. The Eleventh Circuit affirmed the trial court, concluding that the plaintiffs had not complied with disclosure requirements and that exclusion was warranted. *Id. See also Curtis v. United States*, 3:15-cv-176-TCB, 2017 WL 5639937, at *1 (N.D. Ga. Jan. 26, 2017) (striking expert for party's failure to disclose report).

Similarly, in *Walter International Productions, Inc. v. Salinas*, the Eleventh Circuit reviewed the district court's order striking six expert witnesses from

testifying based on the plaintiff's failure to disclose reports. 650 F.3d 1402, 1409 (11th Cir. 2011). And as to one expert, where the plaintiff produced a document resembling a report, the Eleventh Circuit concluded the report nevertheless failed to provide the information required under Rule 26(a). *Id.* at 1409–10. The Eleventh Circuit also noted that there was no justification for plaintiff's failure and that the conduct was not harmless: it "deprive[d] opposing counsel of the expert's report before his deposition." *Id.* at 1413.

Here, exclusion of Dr. Ray's opinions is similarly appropriate. Defendants have not produced reports containing the "basis and reasons" for, or "the facts or data considered . . . in forming" the Implementation Opinion, the Compliance Opinion, the Constitutionality Opinion, or the Impact of Segregation Opinion. Fed. R. Civ. P. 26(a)(2)(B). Most of these opinions (except the Impact of Segregation Opinion, which was disclosed later) were first disclosed in Defendants' September 2020 interrogatory responses. Doc. 209-7 at 4. But Defendants never produced a corresponding Rule 26 report to outline the basis, reasons, or data considered to form these opinions. Had they done so, such a report would be untimely. And as to the Impact of Segregation Opinion, Defendants failed to disclose the existence of the opinion until after discovery had closed.

Further, Defendants are foreclosed from arguing that the failure to produce the report was "substantially justified or [] harmless." Fed. R. Civ. P. 37. Towards the end of discovery in October 2020, Plaintiffs explored Dr. Ray's failure to produce an expert report. ██████████████████████████████████ ██████████████████ *Id.* at 27:7–16. ██████████████████████ ██████ . . . ." *Id.* ████████████████████████████████████ ████████████████████████ . *Id.* at 86:1–87:15.

But as Plaintiffs discovered, ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████ Oct. 7, 2020 Ray Dep. Ex. 5 at 1; Oct. 7, 2020 Ray Dep. Tr. at 99:25–101:8. ████████████████ ████████████████████████████████████████████████████ ████████ Oct. 7, 2020 Ray Dep. Tr. 13:19–14:3, 28:19–29:4, 31:6–33:13, ██ ████████████████████████████████████████████████ ██████████ Oct. 7, 2020 Ray Dep. Ex. 6 at 1 (emphasis added); Oct. 7, 2020 Ray Dep. Tr. at 101:22–103:7. ████████████████████ ██████ an expert cannot take a "'maybe I'll tell you someday' approach [that] mocks the very purpose of Rule 26(a)(2) . . . ." *Sommers v. Hall*, CV408-257, 2010

WL 3463608, at *3 (S.D. Ga. Sept. 1, 2010) (striking expert for failing to provide a detailed expert report).

Defendants failed to disclose Rule 26 reports for the Implementation Opinion, the Compliance Opinion, the Constitutionality Opinion, or the Impact of Segregation Opinion. They should be excluded on this basis.[9]

### B. Dr. Ray is not qualified to provide expert opinions regarding the needs of individuals with SMI.

As to the remaining opinions, Dr. Ray is not qualified to provide expert testimony because he is not an expert in the care of individuals with SMI. Dr. Ray's MHSU Plan Opinion, Consulting Opinions, and Impact of Segregation Opinion[10] each relate to the level of care for individuals with SMI. Because he is not qualified to make these determinations, his opinions should be excluded.

Experts may be qualified by knowledge, skill, experience, training, or education. *Frazier*, 387 F.3d at 1261. But "[e]xpertise in one field does not qualify a witness to testify about others." *Lebron v. Sec'y of Fla. Dep't of Children &*

---

[9]     Should the Court deny Plaintiffs' request to exclude these opinions, Plaintiffs respectfully move in the alternative to compel Defendants to produce an expert report covering all of his opinions and permit Plaintiffs to depose Dr. Ray on those topics.

[10]    The Impact of Segregation Opinion should also be excluded because, as discussed above, Dr. Ray has not disclosed an expert report covering the opinion.

*Families*, 772 F.3d 1352, 1368 (11th Cir. 2014). Here, Dr. Ray may have experience in consulting with prison systems that provide mental health services, but that experience does not qualify him to testify as to the standard of care for individuals with SMI or to the adequacy of proposed treatment.

In *Cottone v. Jenne*, for example, the court considered the qualifications of a highly credentialed expert. No. 00-7545-CIV-ZLOCH, 2006 WL 8448566, at *3 (S.D. Fla. July 21, 2006). The proposed expert in *Cottone* had a "Ph.D. in neuropsychology, a law degree, a Master's of Arts in the biological sciences and a Bachelor's of Arts in psychology." *Id.* The expert was also "well published in her field and has made many presentations to various associations and educational institutes." *Id.* But the court noted that she was "not a psychiatrist, nor is she a medical doctor and there is no evidence . . . that she has experience in the diagnosis and treatment of schizophrenia." *Id.* The court therefore concluded that she was not qualified to provide expert testimony regarding the provision of medical care and limited her testimony on that basis. *Id.*

Similarly here, Dr. Ray is neither a medical doctor nor a psychiatrist. And as Dr. Ray himself testified, he needed a psychiatrist to provide opinions regarding "clinical care" of the SMI population consistent with "medical standards." Feb. 28, 2020 Ray Dep. Tr. at 134:3–11. It was for this exact reason that Dr. Dudley—not

21

Dr. Ray—served as the "primary clinician" on the project. *Id.* at 34:12–19.

Defendants may not use Dr. Ray to act as a "mere conduit" for Dr. Dudley's

opinions. *Mann v. Taser Int'l, Inc.*, No. 4:05-CV-0273-HLM, 2007 WL 9712075,

at *8 (N.D. Ga. Dec. 27, 2007) ("[A]n expert cannot act as a mere conduit for the

opinions of other persons") (internal quotation marks omitted). To the extent

Defendants wished to submit expert opinions regarding the provision of mental

health services, they should have offered Dr. Dudley.

Dr. Ray is not qualified to provide expert testimony regarding the needs of

those with SMI. His MHSU Plan Opinion, Consulting Opinions, and Impact of

Segregation Opinion should all be excluded on this basis.

**II. Dr. Ray may not provide expert testimony on legal issues.**

The Constitutionality Opinion should also be excluded because it is an

improper legal opinion. Expert opinions on legal issues that "offer[] nothing more

than what lawyers for the parties can argue" should be excluded. *Cook ex rel.*

*Estate of Tessier v. Sheriff of Monroe Cnty., Fla*., 402 F.3d 1092, 1111 (11th Cir.

2005) (internal quotation marks omitted). Such opinions violate the evidentiary

principle that "testifying experts may not offer legal conclusions." *Ma v. Equifax*

*Info. Servs., LLC*, 288 F. Supp. 3d 1360, 1367 (N.D. Ga. 2017) (internal quotation

marks omitted). This principle is well-established. *See, e.g., Plantation Pipeline*

*Co. v. Cont'l Cas. Co.*, No. 1:0-CV-2811-WBH, 2008 WL 4737163, at *7 (N.D. Ga. July 31, 2008) *clarified on denial of reconsideration*, No. 1:03-CV-2811-WBH, 2008 WL 11336246 (N.D. Ga. Nov. 18, 2008) ("Expert legal opinion is not admissible under Fed. R. Evid. 702."); *Race v. Bradford Cnty., Fla.*, 3:18-cv-153-J-39PDB, 2020 WL 8222416, at *3 (M.D. Fla. Dec. 15, 2020) (excluding opinions that "contain legal conclusions when making determinations regarding deliberate indifference").

Here, the Constitutionality Opinion relates to whether Defendants acted with deliberate indifference, demonstrated a "subjective awareness" of danger to inmates, and met constitutional standards. Doc. 209-7 at 4; Doc. 253-9 at ¶¶ 7–8, 10. The rule against permitting expert legal opinions has been upheld where, as here, the legal opinion concerned whether a defendant engaged in unconstitutional behavior or acted with deliberate indifference. *Omar v. Babcock*, 177 F. App'x 59, 63 n.5 (11th Cir. 2006) (affirming trial court "striking portions of an affidavit provided by plaintiff's expert" because "the stricken statements contain[ed] legal conclusions as to whether appellants acted with deliberate indifference"). *See also Salvani v. Corizon Health, Inc.*, No. 17-24567-Civ-SCOLA/TORRES, 2019 WL 4101794, at *3 (S.D. Fla. Aug. 29, 2019) ("Dr. Zawitz's expert report runs afoul of *Daubert* because he repeatedly opines that there was 'no evidence of deliberate

indifference or a deviation from any medical standards of care.'"). The

Constitutionality Opinion should therefore be excluded.

**III.    Dr. Ray's opinions regarding implementation and compliance should be excluded based on insufficient facts and data.**

Finally, Dr. Ray's Implementation Opinion and Compliance Opinion should

be excluded on the additional basis that they do not rely on sufficient facts or data.

To be sufficiently "reliable," an expert opinion must be "based on sufficient facts

or data." Fed. R. Evid. 702(b). Here, Dr. Ray's opinions were formed in the

absence of data and are insufficiently reliable.

Both the Implementation Opinion and Compliance Opinion focus on

whether Defendants are abiding by their own MHSU plan as well as the Court's

Preliminary Injunction Order.[11] ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

Oct. 7, 2020 Ray Dep. Ex. 6 at 1; Oct. 7, 2020 Ray Dep. Tr. at 101:22–103:7. ██

████████████████████████████████████

████████████████████████████████████

---

[11]    Defendants repeatedly conflate the MHSU plan with the Preliminary Injunction Order. Plaintiffs dispute Defendants' argument that the MHSU plan does not abide by all of the substantive requirements of the Preliminary Injunction Order.

██████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████ Oct. 7, 2020 Ray Dep.

Tr. at 13:19–14:3, 31:6–33:13, 34:18–35:14, 73:11–74:2; 74:20–22, 82:21–83:1,

101:22–103:7. ████████████████████████████████████████

████████████████████████████████████████ He did not

have sufficient facts and data to form the Implementation Opinion and Compliance

Opinion, and they should be excluded.

## CONCLUSION

For the reasons above, the Court should exclude Dr. Ray's expert

opinions.

[signature on following page]

Respectfully submitted,

Devon Orland
Ga. Bar No. 554301
Anne Kuhns
Ga. Bar No. 149200
GEORGIA ADVOCACY OFFICE
1 West Court Square
Suite 625
Decatur, Georgia 30030
(404) 885-1234
(404) 378-0031 (fax)
dorland@thegao.org

Sarah Geraghty
Ga. Bar No. 291393
Atteeyah Hollie
Ga. Bar No. 411415
Ryan Primerano
Ga. Bar No. 404962
SOUTHERN CENTER
FOR HUMAN RIGHTS
60 Walton Street, NW
Atlanta, Georgia 30303
(404) 688-1202
(404) 688-9440 (fax)
sgeraghty@schr.org

/s/ Jarred A. Klorfein
Michael A. Caplan
Ga. Bar No. 601039
Jarred A. Klorfein
Ga. Bar No. 562965
CAPLAN COBB LLP
75 Fourteenth Street, NE
Suite 2750
Atlanta, Georgia 30309
(404) 596-5600
(404) 596-5604 (fax)
mcaplan@caplancobb.com

*Counsel for Plaintiffs*

March 3, 2021

## CERTIFICATE OF COMPLIANCE

I certify that this document has been prepared in compliance with Local Rule 5.1C using 14-point Times New Roman font.

/s/ Jarred A. Klorfein

March 3, 2021

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing using the CM/ECF system, which will send notification of filing to all counsel of record.

<u>/s/ Jarred A. Klorfein</u>

March 3, 2021