## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| GEORGIA ADVOCACY OFFICE;<br>J.N., on behalf of herself and<br>others similarly situated,<br><br>　　　Plaintiffs,<br><br>v.<br><br>PATRICK LABAT, in his official<br>capacity as Sheriff of Fulton County, *et al.*,<br><br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION FILE NO.<br>1:19-cv-01634-WMR-RDC |

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SECOND PRELIMINARY INJUNCTION

### I.　　INTRODUCTION

GAO's renewed motion for preliminary injunction—misleadingly styled a motion for issuance of a *second* preliminary injunction—misreads the Eleventh Circuit's Opinion (the "Opinion") as well as the procedural posture of this lawsuit. In a 2-1 decision, the Eleventh Circuit panel affirmed that the PLRA imposes a 90-day time limitation on preliminary injunctions subject to its governance. Regardless of the status of the mandate in this action, the Opinion retains its binding precedential value. In no way does it expand this Court's authority to permit the re-issuance of a preliminary injunction absent a new showing of necessity. Plaintiffs' cursory brief makes no effort to satisfy this standard, which is itself dictated by the strict

limitations Congress placed upon judicial intervention in cases governed by the PLRA. But Plaintiffs' failings are not merely procedural. Plaintiffs are not entitled to a hearing on a renewed or "second" preliminary injunction unless they can allege conditions at the South Annex that still justify injunctive relief. Plaintiffs made no effort to show such conditions exist, and moreover cannot do so, because they do not.

## II.    PROCEDURAL HISTORY

On July 23, 2019, this Court issued a preliminary injunction requiring Defendants, in pertinent part, to offer members of the Plaintiff class "...at least four hours of daily out-of-cell time...at least five days each week, with at least one hour per day of outdoor recreation or indoor gym time," and imposing additional conditions upon denials and refusals of out-of-cell time, and the documentation thereof. In imposing these requirements, the Court indicated that it would make the "particularized findings required by 18 U.S.C. § 3626(a)(2) in a subsequent order." (*See* Doc. 65 at 1).

On August 20, 2019, Defendants filed a motion for reconsideration or stay of the preliminary injunction pending the Court's issuance of particularized findings of fact. (Doc. 76). On August 22, 2019, Plaintiffs submitted a proposed "Addendum Order," purporting to make the particularized findings of fact and conclusions of law required to satisfy 18 U.S.C. § 3626(a)(2). (Doc. 78). Plaintiffs then filed a response

to Defendants' motion for reconsideration on September 2, 2019.  (Doc. 83).  On September 16, 2019, Defendants filed a reply to Plaintiffs' response to their motion for reconsideration, incorporating their objections to the proposed Addendum Order. (Doc. 89).

On September 23, 2019, the Court signed the 54-page "Addendum Order" without ruling on Defendants' objections.  (Doc. 94).  On October 18, 2019, Defendants/Appellants filed a notice of appeal related to the Court's denial of Defendants' motion for reconsideration and granting of Plaintiffs' motion for preliminary injunction and the related Addendum Order.  (Doc. 105).

The legal theory underlying Plaintiffs' constitutional claim (a parallel ADA claim is not especially relevant to this motion—although arguably it provided a separate basis for issuing the injunction, the relief ordered was not expressly tied to the alleged ADA violation)[1] remains difficult to pin down.  In essence, it is that the conditions in the Fulton County Jail's South Annex—especially with regard to the amount of out-of-cell time each inmate received—were either aggravating the symptoms of inmates with a mental illness, or preventing those inmates from getting better, such that the alleged conditions at the Jail constituted a deliberate denial of

---

[1] To be clear, Defendants do not cede the viability of Plaintiffs' ADA claim. Defendants have argued elsewhere, for reasons outside the scope of this memorandum, that no federal courts appear ever to have embraced Plaintiffs' ADA theory.  (*See* Doc. 253-1 at 47, 51-53).

adequate care or otherwise violated the Eighth Amendment's prohibition on cruel and unusual punishment, as applied through the Fourth and Fourteenth Amendments.

Relevant to this proceeding, Defendants argued on appeal that the "Addendum Order" failed to show, as required under the PLRA, that the relief ordered was narrowly drawn, extended no further than necessary to correct the harm the Court found required preliminary relief, and was the least intrusive means necessary to correct that harm. Moreover, Defendants argued, the relief was not in fact narrowly tailored to address the alleged constitutional violation at issue. Finally, Defendants argued that the injunction had likely expired, but that appellate review was nevertheless appropriate under an exception to the mootness doctrine. (*See generally* Appeal No. 19-14227, Brief of Appellees).

As the Court is aware, the Eleventh Circuit held that the preliminary injunction had expired and declined review of the remaining issues. (*See* Doc. 313). Presumably at the request of the dissenting judge, Judge Wilson, the mandate was withheld. (Doc. 316). Plaintiffs now essentially seek reinstatement of the injunction that was deemed to have expired.

### III.   ARGUMENT AND CITATION OF AUTHORITY

#### A. The Eleventh Circuit's Opinion is Binding Precedent.

Under the law of this circuit, published opinions are binding precedent, regardless of the issuance or non-issuance of the mandate. *See Martin v. Singletary*, 965 F.2d 944, 945 n.1 (11th Cir. 1992). As the Eleventh Circuit has explained, "A mandate is the official means of communicating our judgment to the district court and of returning jurisdiction in a case to the district court." *Id.* Thus, the stay of the mandate "merely delays the return of jurisdiction to the district court to carry out our judgment in that case." *Id.* The opinion itself remains binding authority and is "…the law in this circuit unless and until it is reversed, overruled, vacated, or otherwise modified by the Supreme Court of the United States or by this court sitting en banc." *Id.*

Here, Judge Tjoflat's Opinion was clear. Recognizing that, even under the traditional framework for imposing equitable relief, an injunction "must be no broader than necessary to remedy the constitutional violation," (Doc. 313 at 14, quoting *Newman v. State of Ala.*, 683 F.2d 1312, 1319 (11th Cir. 1982)), Judge Tjoflat noted that the PLRA "supercharges and particularizes" some of the traditional equitable principles of injunctive relief including the traditional public interest consideration. These supercharged requirements apply to both the issuance of relief and the tailoring of relief. (*Id.*).

Against this backdrop, Judge Tjoflat went on to analyze the language governing the expiration of preliminary injunctions under the PLRA, ultimately agreeing with Defendants' interpretation of the statutory language setting  a 90-day limit.  In doing so, Judge Tjoflat found that "preliminary injunctive relief under the PLRA more closely resembles a temporary restraining order ('TRO') than a traditional preliminary injunction."  (*Id.* at 15).   In this regard, preliminary injunctions become "final" only when courts issue final prospective relief.  The PLRA's 90-day cap on preliminary injunctions "limits the harmful effects of potentially unjustified or overbroad injunctions" and encourages the efficient resolution of prison cases. (*Id.* at 16).  "The PLRA thus subordinates the traditional function of preliminary injunctive relief—the prevention of injury pending a trial on the merits—to the PLRA's overarching goal of reducing judicial involvement in prison management."  (*Id.*).[2]

---

[2] Defendants do not dispute that the PLRA appears to allow for a renewed injunction upon a showing of necessity.  *See Mayweathers v. Newland*, 258 F.3d 930, 936 (9th Cir. 2001).  The availability of a renewed injunction would appear to weigh against Judge Wilson's concern that a 90-day expiration period would be inadequate to protect plaintiffs' interests in prisoner lawsuits.

**B. Plaintiffs' Preliminary Injunction Motion Fails to Show that Further Injunctive Relief is Warranted.**

1. Requirements for Injunctive Relief.

A traditional injunction is warranted where the movant succeeds in establishing four things, that: (1) it has a substantial likelihood of success on the merits of one or more of its claims; (2) it will suffer irreparable injury, absent an injunction; (3) the harm posed to the party opposing the injunction does not outweigh the movant's threatened injury; and (4) the injunctive relief sought is not adverse to the public interest. *Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam). The "failure to meet even one [of these four prerequisites] dooms" a request for injunctive relief. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). Further, as noted above, the PLRA contains additional restrictions that are made for the express purpose of limiting judicial intervention in custodial litigation.

By analogy to temporary restraining orders, injunctions under the PLRA are renewable, but only upon a showing of "good cause." *See* Fed.R.Civ.P. 65(b)(2); *see also Mayweathers*, 258 F.3d at 936 (injunction under the PLRA renewable upon showing of necessity). Here, Plaintiffs' request for a preliminary injunction does not make any attempt to demonstrate a continued necessity for injunctive relief, much less relief of the dramatic scope presented by the original, expired preliminary injunction. And this failure has due process implications because, by only referring

7

to the original preliminary injunction order, Plaintiffs' motion fails to adequately put Defendants on notice of what current conditions they allege warrant injunctive relief.

      2.  <u>Plaintiff's Motion Fails to Provide Notice of the Basis for their Request for Injunctive Relief.</u>

Defendants should not be expected to participate in an evidentiary hearing without some indication of its subject matter and scope.  *See* Fed.R.Civ.P. 7(b)(1)(B) (motion must state "with particularity" the grounds on which it is made and the relief or order sought); *Hinz v. Neuroscience, Inc.*, 538 F.3d 979, 983 (8th Cir. 2008).  The "particularity" requirement is satisfied "when no party is prejudiced by a lack of particularity or when the court can comprehend the basis for the motion and deal with it fairly."  *Registration Control Systems, Inc. v. Compusystems, Inc.*, 922 F.2d 805, 807–08 (Fed. Cir. 1990) (quotations omitted).

Here, it does not appear that Plaintiffs are alleging that the conditions are the same as when the original injunction was issued, nor could they in good faith.  What, then, is the current set of conditions that give rise to a constitutional claim that warrants injunctive relief?  In order to be able to mount a defense to the request for injunctive relief—indeed, to mount a defense on the ultimate merits of this lawsuit— Plaintiffs need to make clear the *current* basis for injunctive relief.  Simply put, Plaintiffs' motion does not provide adequate notice of the basis for the relief that is sought.

Judge Tjoflat's Opinion reinforces the principle that Plaintiffs must demonstrate a current necessity for injunctive relief.  Indeed, in Judge Tjoflat's view, "[i]f the district court is satisfied that the defendant's reforms are in earnest and sufficiently enduring," the PLRA contemplates expiration of the injunction and dismissal of the underlying suit.  (Doc. 313 at 17).  "Because circumstances may change during the 90-day period in which the preliminary injunction is in place, this requirement furthers the PLRA's goal of eliminating unnecessary and overbroad prison injunctions."  (Doc. 313 at 25).

Here, regardless of the merits of Plaintiffs' initial request for injunctive relief, the conditions at the South Annex have changed dramatically in the intervening years.  While Plaintiffs will argue that these changes occurred only as a result of the preliminary injunction, the law is clear that it is Plaintiffs' burden to prove that Defendants are likely to revert to their previous, challenged conduct.  *See Keohane v. Fl. Dept. of Corr. Sec'y,* 952 F.3d 1257, 1267-1268 (11th Cir. 2020) (reaffirming prior holding that "governmental entities and officials have…considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities.") (citations omitted).  In the instant matter, not only have Defendants failed to revert to their previously challenged conduct, Defendants have aggressively pursued actions that go above and beyond the relief Plaintiffs sought and the Court granted in the now expired preliminary injunction.

3.  <u>There is No Actual Basis for Further Injunctive Relief.</u>

Plaintiffs will likely make two arguments on reply:  First, they will argue that the instances of technical non-compliance and arguable record-keeping issues they raised in their now-mooted Contempt Motion demonstrate Defendants' intention to return to their prior practices; and second, they will argue that Defendants' decision to challenge the breadth of the relief ordered is itself sufficient evidence of their intent to revert to their prior practices.  Neither argument would have merit.

While Defendants do not have a burden of production at this juncture, they have submitted evidence concurrently herewith, in the form of the Declarations of Sheriff Patrick Labat, Lieutenant Colonel Derrick Singleton, Captain Tyna Taylor, Lieutenant Temeka Cherry, Dr. Kenneth Ray, Dr. Tracey Elam, and Keith Carr, each attesting to the institutional changes that have occurred at the South Annex.

Since taking office in January 2021, Sheriff Labat has advanced his goal of prioritizing the care of mentally ill inmates.  (*See* Labat Declaration).  Additionally, throughout this litigation, Defendants have benefitted from the guidance of a leading consultant in the field of treating mental illness in jail and prison settings—one who has worked successfully with Plaintiffs' own expert to promote best practices in a variety of penological settings.  (*See* Ray Declaration).  The changes that have been implemented—both under the impetus of the previous injunction and, primarily, of the Sheriff's own accord—include the following: specially trained officers are

dedicated to the mental health pods and assist in the care and custody of SMI inmates; Sheriff Labat has committed to hiring and training additional mental health officers; Sheriff Labat has executed a contract, in the amount of $540,000, for the full implementation of the NoteActive platform, which occurred at the South Annex July 12-14, 2021; Sheriff Labat has directed the creation and implementation of additional programming for SMI inmates, including music and art therapy, gardening, and the purchase and utilization of a therapy dog; Sheriff Labat has hired a full-time chaplain who is located at the South Annex and provides faith based services and support for all inmates, including SMI inmates; Sheriff Labat has directed the construction of two (2) cool down rooms to be utilized by inmates who exhibit aggressive, hostile or disruptive behavior, such that the inmate would ordinarily be subject to disciplinary action; jail staff is held accountable, by way of progressive disciplinary action, for any failure to either offer the appropriate amount of out-of-cell time or document same; high ranking members of the jail's command staff are present at the South Annex to assure that operations are consistent with Sheriff Labat's directives; Sheriff Labat has hired Dr. Tracey Elam, Health Program Manager, to oversee the NaphCare contract, conduct patient chart reviews and coordinate patient care of SMI inmates with members of the NaphCare team; Sheriff Labat is in the process of vetting and contracting a community mental health provider to supplement the mental health services already provided by NaphCare;

jail staff create mental health referrals for any SMI inmate who refuses out-of-cell time for more than 48 hours, such that mental health providers can assess the subject inmate's mental health condition; and NaphCare's mental health professionals provide input in the inmate disciplinary process, where an SMI inmate is subject to disciplinary sanctions, such that the Disciplinary Committee considers whether the subject behavior is a symptom of a mental illness and should exempt or reduce any disciplinary sanction. (*See* Labat, Singleton, Taylor, Cherry, Elam, Ray, and Carr Declarations). It is important to note that none of the aforementioned actions were required by the now expired preliminary injunction but rather were steps taken by Defendants to achieve best practices related to the care and custody of SMI inmates. These wide-ranging improvements further undercut any contention that Defendants will revert to their prior practices.

While Defendants continue to dispute that they were or currently are guilty of deliberate indifference to the medical needs of inmates with a mental illness (and to challenge the breadth and scope of the relief this Court has ordered), there is no reason to believe that the situation will revert to the status quo ante absent further judicial intervention. *See generally Keohane*, 952 F.3d at 1267-68 (stating presumption that governmental entities and officials are unlikely to resume illegal activities).  The magnitude of Sheriff Labat's undertakings and those of his staff would fatally undermine any argument that there is any reasonable likelihood that

Defendants will revert to their previously challenged practices. But Plaintiffs have not even effectively made the argument.

Moreover, any reliance upon *Rich v. Secretary, Florida Department of Corrections*, 716 F.3d 525, 530–31 (11th Cir. 2013) to establish the necessity for further injunctive relief would be misguided. To the extent that dicta in that case suggests that the assertion of a defense in litigation is *evidence* of an intent to engage in unconstitutional behavior (in itself, a loaded proposition), it certainly does not constitute dispositive proof of a need for a renewed injunction. As this Court is aware, Defendants did not even seek a stay of the injunction pending their appeal. There can be no question of the good faith and efficacy of Defendants' efforts to address all of the concerns the Court had following the preliminary injunction hearing, Plaintiffs' misguided contempt motion notwithstanding. The PLRA and Rule 65 apply whether a lawsuit challenging prison conditions is opposed or is unopposed. Plaintiffs' assertion of their procedural and substantive rights in this case does not relax the requirements for ordering injunctive relief, and they have not been demonstrated here.

The cases cited in Plaintiffs' own brief demonstrate that a successive injunction may not issue unless further injunctive relief is necessary. In *Mayweathers*, the Ninth Circuit observed that, "[i]f anything, the [expiration] provision…imposes a burden on plaintiffs to continue to prove that preliminary

relief is warranted.  The imposition of this burden conforms with how the PLRA governs the termination of final prospective relief."  258 F.3d  at 936 (citing 18 U.S.C. § 3626(b) (providing for the termination of final injunctions by motion of a party unless "the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right…")); *Alloway v. Hodge*, 72 F. App'x 812, 817 (10th Cir. 2003) ("Alloway effectively renewed his motion by arguing the merits of continuing the prospective relief at the hearing on defendants' motion to terminate the injunction.").  Plaintiffs' suggestion, that this Court may issue a second injunction based solely upon the findings it made in 2019, is untenable and contrary to the requirements for entering injunctive relief under the traditional framework, much less the "supercharged" PLRA standard.

## III.   CONCLUSION

The Eleventh Circuit's Opinion clearly placed Plaintiffs at an uncomfortable crossroads.  They had to either seek a new the injunction or concede that injunctive relief was no longer warranted.  Their half-hearted, pro forma request to renew the injunction that issued over 24 months ago should be considered such a concession. Plaintiffs' motion should be denied because they have not and cannot allege an actual basis for continuing injunctive relief.

Respectfully submitted, this 6th day of August, 2021.

**OFFICE OF THE FULTON COUNTY ATTORNEY**

Kaye Woodard Burwell
Acting County Attorney
Georgia Bar No. 775060

Steven Rosenberg
Supervising County Attorney
Georgia Bar No. 614560

Amelia M. Joiner
Assistant County Attorney
Georgia Bar No. 362825

*/s/ Thomas Blaylock*
Thomas Blaylock
Assistant County Attorney
Georgia Bar No. 738369

**Attorneys for Defendants**

141 Pryor Street, SW
Suite 4038
Atlanta, Georgia 30303
(404) 612-0246 (Office)
(404) 730-6324 (Facsimile)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| GEORGIA ADVOCACY OFFICE;<br>J.N., on behalf of herself and<br>others similarly situated, | )<br>)<br>) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION FILE NO. |
| v. | ) | 1:19-cv-01634-WMR-RDC |
| | ) | |
| PATRICK LABAT, in his official<br>capacity as Sheriff of Fulton County;<br>MARK ADGER, in his official capacity<br>as Chief Jailer;<br>MEREDIETH LIGHTBOURNE, in her<br>official capacity as Medical Director;<br>TYNA TAYLOR, in her official<br>Capacity as Detention Captain;<br>PEARLIE YOUNG, in her official<br>Capacity as Detention Lieutenant, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that the foregoing **DEFENDANTS'**

**OPPOSITION TO PLAINTIFFS' MOTION FOR SECOND PRELIMINARY**

**INJUNCTION** has been prepared with one of the font and point selections approved

by the Court in Local Rule 5.1(C).  The undersigned counsel further certifies that a

copy of this notice has been served on counsel of record with the Clerk of Court

using the CM/ECF system, which will automatically send e-mail notification of such

filing to the following attorneys of record:

Devon Orland
Anne Kuhns
Georgia Advocacy Office
1 West Court Square
Suite 625
Decatur, Georgia 30030

Sarah Geraghty
Ryan Primerano
Atteeyah Hollie
Southern Center for Human Rights
83 Poplar Street, NW
Atlanta, Georgia 30303

Michael A. Caplan
Jarred Klorfein
CAPLAN | COBB
75 Fourteenth St. NE
Suite 2750
Atlanta, Georgia 30309

This 6th day of August, 2021.

*/s/ Thomas Blaylock*
Thomas Blaylock
Assistant County Attorney
Georgia Bar No. 738369
thomas.blaylock@fultoncountyga.gov

**Attorney for Defendants**

**OFFICE OF THE FULTON COUNTY ATTORNEY**
141 Pryor Street, SW
Suite 4038
Atlanta, Georgia 30303
(404) 612-0246 (Office)
(404) 730-6324 (Facsimile)