**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| GEORGIA ADVOCACY OFFICE, J.N., | |
|     Plaintiffs, | CIVIL ACTION NO: 1:19-cv-1634-WMR-RDC |
| v. | |
| PATRICK LABAT, in his official capacity as Sheriff of Fulton County, et al., | PRISONER CIVIL RIGHTS 42 U.S.C. § 1983 |
|     Defendants. | |

## <u>ORDER</u>

This matter is before the Court on the Magistrate Judge's Report and Recommendation ("R&R"), which recommends that Defendants' Motion for Summary Judgment be GRANTED as to all of Plaintiffs' claims against Mark Adger, Meredieth Lightbourne, Tyna Taylor, and Pearlie Young and as to Plaintiffs' equal protection claim in Count III of the Complaint, and DENIED as to Plaintiffs' claims against Patrick Labat, in his official capacity as Sheriff of Fulton County, in Counts I, II, and IV of the Complaint. [Doc. 306]. Upon consideration of the R&R, together with Defendants' objections [Doc. 310] and Plaintiffs' response thereto

[Doc. 312], the Court ADOPTS the findings and conclusions of the R&R as the Opinion and Order of this Court.

## I.  <u>LEGAL STANDARDS</u>

<u>Review of R&R</u>

In reviewing a magistrate court's report and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." <u>United States v. Schultz</u>, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting <u>Marsden v. Moore</u>, 847 F.2d 1536, 1548 (11th Cir. 1988)) (internal quotation marks omitted). If no specific objections are made or no objections are made at all, "the appropriate standard of review for the report and recommendation is clear error." <u>Lattimore v. Bank of Am., N.A.</u>, No. 12-CV-1776, 2014 WL 11456272, at *1 (N.D. Ga. Feb. 10, 2014), <u>aff'd sub nom.</u> <u>Lattimore v. Bank of Am. Home Loans</u>, 591 F. App'x 693 (11th Cir. 2015). Because objections have been filed in this case, the Court conducts de novo review of the specific matters raised by the objections.

<u>Standard on Motion for Summary Judgment</u>

Rule 56 of the Federal Rules of Civil Procedure lets courts "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." <u>See Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). A dispute is "genuine" if evidence suggests a reasonable jury could return a verdict for the nonmovant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). If a genuine dispute is found, summary judgment must be denied, and "court[s] may not weigh evidence to resolve factual disputes." <u>Hutcherson v. Progressive Corp.</u>, 984 F.2d 1152, 1155 (11th Cir. 1993).

The movant bears the burden of showing there is no genuine issue of material fact to be decided at trial. <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991). Furthermore, courts must consider evidence and any inferences in the light most favorable to the nonmovant. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158-159 (1970). If the moving party carries its initial burden, then the burden shifts to the nonmovant to demonstrate an issue of material fact, and summary judgment is only appropriate if the nonmovant fails to meet its burden of presenting evidence sufficient to create a genuine issue of material fact as to an essential element of its claim. <u>Celotex Corp.</u>, 477 U.S. at 323.

## II.  <u>ANALYSIS</u>

The Defendant have raised six objections, which the Court shall address in turn.

### A.  Objection to Magistrate Court's Reliance on Facts

Defendants first object to the portion of the R&R entitled "Defendants' Statement of Material Facts" because it "fails to indicate whether it agrees that the asserted fact is disputed or undisputed, or the basis for any dispute." [Doc. 310 at 3]. Defendants also contend that the R&R's analysis of Plaintiffs' § 1983 claims does not fully indicate how a dispute regarding the asserted facts gives rise to a triable issue. [*Id*.]

On a summary judgment motion, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Anderson</u>, 477 U.S. at 251. "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." <u>Miranda v. B & B Cash Grocery Store, Inc.</u>, 975 F.2d 1518, 1534 (11th Cir.1992).

The R&R cites to both parties' facts, which are identified in the body of the R&R and the footnotes. It is clear that evidence present on both sides creates a disagreement about the conditions of confinement of seriously mentally ill ("SMI")

inmates, the harms they could have suffered, and prison officials' awareness of those harms. As noted in the following sections, Plaintiffs' claims are accompanied by evidence supporting denial of summary judgment. The R&R plainly presents the evidence that it relied upon in making its recommendation. The totality of evidence offered by both parties for this motion and recited by the R&R support the conclusion that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," meaning there is a genuine dispute of material fact presented here. See Anderson, 477 U.S. at 248.

Defendants cite to Local Rule 56.1 to argue that the Magistrate Judge erred by relying, in part, on facts not set out in either parties' statements of material facts. [Doc. 310 at 4].  Under LR 56.1(B)(1), N.D. Ga., "[t]he Court will not consider any fact ... set out only in the brief and not in the movant's statement of undisputed facts." Further, the Court deems the movants facts as admitted unless respondent's statement of undisputed facts "(i) directly refutes the movant's fact [with evidentiary support] . . . ; (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or ... is not material." LR 56.1(B)(2)(a)(2), N.D. Ga.

Defendants filed their Statement of Material Facts [Doc. 253-2], much of which was reprinted verbatim in the R&R [Doc. 306 at 7-14]. Plaintiffs filed their

Statement of Material Facts Responsive to Defendants' Statement. [Doc. 265-2]. This document, alongside exhibits supplementing Plaintiffs' response, was used by the Magistrate Judge when referring to Plaintiffs' evidence and analyzing their claims. [Doc. 306 at 17-22, 25-33, 36, 40]. The R&R juxtaposes the differences in both parties' facts, and plainly lays what of Plaintiffs' evidence creates a dispute warranting a trial.

In sum, the Court finds that this objection seems largely conclusory. Defendants attack the R&R as a whole without specifying which evidence used by the Magistrate Judge is improper. The sections below explore how Plaintiffs' evidence, as outlined in the R&R, supports the Magistrate Judge's recommendation. Defendants do little more than lodge a general complaint about how the R&R refers to the evidence upon which it relies.  As the R&R demonstrates a genuine factual dispute between the parties, Defendants' first objection is without merit.

**B. Objection to Finding on Mootness Argument**

Defendant's next objection argues the Magistrate Judge did not apply the correct mootness standard for governmental actors for Plaintiffs' Count One. [Doc. 310 at 5]. Defendants argue that the Chief Jailer's issuance of a directive memorandum constituted an ambiguous termination of the former policy regarding SMI inmates and, thus, there is no longer a basis for Plaintiffs' claims. [*Id.*]

In their Complaint, Plaintiffs raised a constitutional challenge to the practice of keeping SMI inmates in restrictive confinement for up to twenty-three hours a day. [Doc. 1 at 78-79]. Defendants argue that this claim is now moot due to a directive memorandum issued on July 23, 2019, that changed the jail's policy for out-of-cell time. [Doc. 253-1 at 25-29]. Specifically, Defendants argue that the claim is moot because government actors receive a presumption that they are unlikely to resume their illegal activities. [*Id*. at 26]. However, the Magistrate Judge concluded in the R&R that the Defendants' issuance of the directive memorandum does not show an *unambiguous* termination of the restrictive confinement policy, as required for the presumption, because the facts support an inference that the policy change was induced by litigation and that Defendants continue to deny that their prior policy was unconstitutional. [Doc. 306 at 16-22].

Disposal on mootness grounds is treated as if it were a dismissal for lack of subject matter jurisdiction as to that count. See Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173, 1182 (11th Cir. 2007). Ending a challenged practice will not always deprive a federal court of its power to decide the legality of the practice. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000). "[A] defendant claiming that its voluntary compliance moots a case bears

the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Id. at 190.

The Eleventh Circuit employs this standard even for government actors. Harrell v. Fla. Bar, 608 F.3d 1241, 1268 (11th Cir. 2010). "[W]hen the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will not recur," and that presumption is rebutted "only when there is a substantial likelihood that the offending policy will be reinstated if the suit is terminated." Troiano v. Supervisor of Elections, 382 F.3d 1276, 1283-84 (11th Cir. 2004). The Eleventh Circuit considers the following factors to determine if challenged conduct will recur: "(1) whether the termination of the offending conduct was unambiguous; (2) whether the change in government policy or conduct appears to be the result of substantial deliberation ...; and (3) whether the government has consistently applied a new policy or adhered to a new course of conduct." Doe v. Wooten, 747 F.3d 1317, 1322-23 (quotations omitted) (citing Rich v. Sec'y, Fla. Dept. of Corr., 716 F.3d 525, 531-32 (11th Cir. 2013)).

To support their contention that the termination of the prior policy was voluntary and unambiguous, Defendants state that the new policy "occurred at the behest of the Chief Jailer at the onset of litigation" and has been accompanied by several administrative changes. [Doc. 310 at 6]. However, the motive for the new

policy efforts is cast into doubt by the Court's issuance of a preliminary injunction order that required Defendants to provide more out-of-cell time for SMI inmates. [Doc. 65]. Moreover, Defendants do not explain the extent of deliberation about the policy change, and it is unclear whether any such deliberation was independent of litigation. It is also unclear how consistently this policy has been applied since "officers and deputies still have discretion to cancel or delay out of cell time." [Doc. 253-1 at 27]. Thus, the Court finds "some reasonable basis to believe that the policy will be reinstated if the suit is terminated."[1] Troiano, 382 F.3d at 1285.

Moreover, Defendants' objection does not refute the Magistrate Judge's finding that there is a live controversy rebutting the presumption that conduct will not recur. "[A] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." Troiano, 382 F.3d at 1282. In particular, "a defendant's failure to acknowledge wrongdoing similarly suggests that cessation is motivated merely by a desire to avoid liability, and furthermore ensures that a live dispute between the parties remains." Sheely, 505 F.3d at 1187.

Defendants argue that their actions of defending the constitutionality of their former policy does not defeat mootness. [Doc. 310 at 6]. However, continued efforts

---

[1] The Court notes that Plaintiffs have filed a second motion for preliminary injunction in this case. [See Doc. 318].

to defend the legality of former practice shows an interest in ensuring the practice remains permissible, and a favorable ruling would leave Defendants free to revert back to it. An unambiguous change is not established merely because Defendants state so in their brief, particularly where they also argue in defense of their prior actions.  Defendants are not bound by their court statements representing that the new policy will remain in place and, absent an injunction, may be "free to resume it at any time." ACLU v. Fla. Bar, 999 F.2d 1486, 1494-95 (11th Cir. 1993). Since Defendants continue to assert that their prior restrictive confinement practices were not improper, it is fair to say that their termination of those practices is ambiguous. Thus, the Court finds that the Magistrate Judge identified and applied the correct mootness standard when recommending that Count One survive summary judgment. Defendants have failed to show an unambiguous termination of their challenged confinement policy, and their mootness objection is without merit.

### C. Objection to Framing of Plaintiffs' Deliberate Indifference Claim

Defendants argue that the Magistrate Judge reformulated Plaintiffs' theory of deliberate indifference, which Defendants contend was limited to alleged custodial practices constituting a "denial of medical care," into a more general claim about unreasonable risk of harm. [Doc. 310 at 7].  Defendants request some clarification on which theory the Court relies if it adopts the R&R. [*Id*. at 8]

Upon review of the Complaint, the Court notes that Plaintiffs have alleged that the restrictive confinement is both a denial of care and a condition presenting a serious risk of harm. [*See* Doc. 1 ¶¶ 7, 10]. Consistent with those allegations, Plaintiffs have argued that the isolation of SMI inmates in solitary confinement for excessive periods of time subjects them to a substantial risk of serious psychological harm and deprives them of necessary psychiatric care. [*See* Doc. 265 at 29]. Moreover, this Court has previously found that the restrictive confinement and denial of programs and services alleged by Plaintiffs may, in many ways, constitute a denial of proper medical care. [See Doc. 94 at 23-30]. The two presumed theories seem closer in application than Defendants assert.

The Court disagrees with Defendants' argument that the conditions at the jail which may affect the SMI inmates' psychiatric care "do[] not articulate a dangerous condition that would provide the basis for an Eighth Amendment deliberate indifference claim." [Doc. 310 at 7-8]. The Court notes that "[t]he Eighth Amendment 'imposes a duty on prison officials' to 'take reasonable measures to guarantee the safety of the inmates.'" Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (alterations omitted) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)).

In this case, Plaintiffs brought forth evidence suggesting that restrictive isolation is harmful to the psychological health of SMI inmates. [Doc. 38-1 at 17-22; Doc. 62 at 82; Doc. 266-1 at 123-25]. Any refusal to correct or relieve conditions adversely affecting the mental health of these inmates could plausibly also constitute a safety risk based on a denial of mental health care.  The Eleventh Circuit has recognized that "[i]n the context applicable here, denial of medical care," deliberate indifference can lie where "an objectively serious medical need . . . , if left unattended, poses a substantial risk of serious harm." Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) (quotations and alterations omitted). As it has been shown that SMI inmates have objective medical needs, it follows, then, that exposing them to unduly restrictive conditions that could severely harm their mental state may function as both a denial of mental health care and a safety risk. The two theories Defendants espouse are not so different as they contend, as the two theories seem closely linked in the mental health care context. Upon review, the Court finds that the Magistrate Judge did not misrepresent or reformulate Plaintiffs' theory of deliberate indifference, but rather correctly addressed Plaintiff's theory underlying their claims since the start of this litigation.  Defendants' objection to the framing of Plaintiffs' theory of deliberate indifference is without merit.

**D. Objection to Analysis of Deliberate Indifference Issue**

Defendants argue that the R&R fails adequately to analyze the elements of a deliberate indifference claim, particularly the elements of whether there was an objective risk of serious harm and a subjective knowledge of that risk. [Doc. 310 at 8-9].

Conditions under which an inmate is held are reviewed under the Eighth Amendment's proscription on cruel and unusual punishment, and conditions under which pretrial detainees are held are reviewed under the Fourteenth Amendment's Due Process Clause. See Jacoby v. Baldwin, 835 F.3d 1338, 1344 (11th Cir. 2016). Conditions must not "involve the wanton and unnecessary infliction of pain" and are reviewed under "contemporary standard of decency." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Denial of medical care is cruel and unusual as "it can result in physical torture, and, even in less serious cases, it can result in pain without any penological purpose." Id. (citing Estelle v. Gamble, 429 U.S. 97 (1976)). "[O]fficials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates[.]'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citation omitted).

"In order to state a cognizable claim [of medical mistreatment under the Eighth Amendment], a prisoner must allege acts or omissions sufficiently harmful

to evidence deliberate indifference to serious medical needs." <u>Estelle</u>, 429 U.S. at 106. The inquiry involves both objective and subjective tests. <u>See</u> <u>Braggs v. Dunn</u>, 257 F. Supp. 3d 1171, 1189 (M.D. Ala. 2017). Objectively, a prisoner must show that they have "serious medical needs . . . and either has already been harmed or been incarcerated under conditions posing a substantial risk of serious harm." <u>Id.</u> (quotations and citations omitted). Subjectively, a prisoner must show prison officials acted with deliberate indifference to that risk of harm, meaning that "the official must have known of and disregarded an excessive risk to inmate health or safety." <u>Id.</u> (alterations, quotations, and citations omitted).

Here, the Magistrate Court noted in the R&R that the restrictive confinement at issue was being regarded as an unconstitutional condition imposed on SMI inmates, not as a claim of inadequate psychiatric care per se. [Doc. 306 at 30]. However, as the Magistrate Judge noted, "[i]n institutional level challenges to prison health care, systemic deficiencies can provide the basis for a finding of deliberate indifference." <u>Rogers v. Evans</u>, 792 F.2d 1052, 1058-59 (11th Cir. 1986). The risk of serious harm inquiry weighs "both the severity and the duration of the prisoner's exposure" to a condition that may violate the Eighth Amendment if it persists for an extended time. <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1295 (11th Cir. 2004). "*Some conditions of confinement may establish an Eighth Amendment violation "in*

combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need[.]" Wilson v. Seiter, 501, U.S. 294, 304 (1991). The Eleventh Circuit looks at the totality of conditions in cases about deficient prison conditions. See Hamm v. DeKalb Cty., 774 F.2d 1567, 1575-76 (11th Cir. 1985).

Defendants argue that the R&R fails to address the issue of whether the failure to provide a minimum of 4 hours out-of-cell time, five days a week, is a per se "dangerous condition" for SMI inmates. [Doc. 310 at 8-9]. However, the Magistrate Judge addressed this issue in the R&R [*see* Doc. 306 at 30-33], and it pointed out that the failure to provide SMI inmates with adequate out-of-cell time can constitute a dangerous condition for SMI inmates. [*Id*. at 32-33]. "Out-of-cell time is crucial for patients housed in mental-health units. Without bringing patients out of their cells for counselling sessions, treatment team meetings, group sessions, and activities, placement in a 'mental-health unit' does no good for patients who need the highest level of care[.]" Braggs, 257 F. Supp. 3d at 1214 ("without out-of-cell time and effective treatment, housing severely mentally ill prisoners in a mental-health unit is tantamount to 'warehousing' the mentally ill") (citing Wyatt v. Aderholt, 503 F.2d 1305, 1309 n.4 (5th Cir. 1974)).

Here, Plaintiffs' evidence shows that the lack of out-of-cell time can constitute a dangerous condition for SMI inmates, contributing to instances of self-harm, increased stress, suicidal thoughts, and mental decompensation. [Doc. 39-1; Doc. 62 at 82-83; Doc. 266-1 at 123-25 and 141-42; Doc. 265-3; Doc. 265-4; *see also* Doc. 306 at 26-28.  Thus, it appears that the effects of isolation on a class of inmates who are highly sensitive to the worst effects of isolation could qualify as a serious risk of harm. The Court finds that the totality of the conditions surrounding the restrictive confinement could pose a substantial risk to the health and safety of SMI inmates, which satisfies the risk of harm element of Plaintiffs' deliberate indifference claim. The Defendants' objection as to this issue is without merit.

For the subjective knowledge of the risk element, a finder of fact "may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." Hope v. Pelzer, 536 U.S. 730, 738 (2002). This question of fact can be answered by circumstantial evidence. See Farmer, 511 U.S. at 824. Here, the evidence shows that the Southern Center for Human Rights sent a letter to Defendants informing them of the harmful conditions at the jail. [Doc. 16-19 at 4-13; *see also* Doc. 306 at 29 (referring to this letter)]. The evidence also shows that Defendants received the letter and were, thus, aware of the offending conditions. [Doc. 265-10 at 125-27, 129-30, 171-71; Doc. 69 at 134-35; *see also* Doc. 306 at

29]. The R&R also notes that jail logbooks were replete with prior incidents of suicidal ideation, self-harm, and worsening mental health crises on the part of SMI inmates that could also provide subjective notice of the harmful conditions. [Doc. 306 at 26-27]. The Court finds that this evidence is sufficient to show Defendants' subjective knowledge of the risk of harm posed by the conditions of confinement imposed on the SMI inmates at the jail.

As acknowledged by the Magistrate Judge in her R&R, "[t]o survive summary judgment on a § 1983 Eighth Amendment claim about prison conditions, a plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Jinks v. Owens, 517 F. App'x 913, 915-16 (11th Cir. 2013) (quotation omitted). The above discussion shows that restrictive confinement can be a condition upon which Plaintiffs can argue a risk of serious harm. Moreover, there is evidence in the record which allows an inference of Defendants' deliberate indifference to that risk. After review, the Court finds that the R&R adequately addressed the elements of whether there was an objective risk of serious harm and a subjective knowledge of that risk, and Defendants' objection as to these issues is without merit.

**E. Objection to Analysis of Representative Plaintiff's Claims**

Defendants argues that the Magistrate Judge failed to make evidentiary findings about the Representative Plaintiff's claims and that the R&R is "literally devoid of factual findings." [Doc. 310 at 10].   However, this Court has already determined that Representative Plaintiff J.N. has standing to qualify as a class representative [*see* Doc. 191], and that determination was made on the basis of evidence showing that J.N. is an SMI inmate who has been subjected to prolonged and improper isolation at the jail. [*Id*. at 3-6].

Furthermore, the R&R cites to a portion of J.N.'s deposition which suggests that Defendants' policy of restrictive confinement worsened her mental health condition. [Doc. 306 at 28 (citing Doc. 266-1 at 123-25, 141-42)]. The R&R also refers to Dr. Metzner's opinion of the harms of overly restrictive confinement and records of other inmates' self-harm and mental health emergencies. [Doc. 306 at 26-28 and n.11].

At the summary judgment stage, Plaintiffs "[are] only required . . . to bring forth sufficient evidence of the essential elements on which it bears the burden of proof." Bischoff v. Osceola Cty., 222 F.3d 874, 880 (11th Cir. 2000). Here, that evidence is comprised of testimony, records, and opinions which suggest that J.N. and the other SMI inmates were experiencing conditions at the jail which were

unconstitutional. As the citations to that evidence are included in the R&R, the Court finds that Defendants' objection to the analysis of the Representative Plaintiff's claim is without merit.

### F. Objection to Analysis of ADA and Rehabilitation Act Claims

Defendants' final objection is that the R&R does not properly analyze Plaintiffs' ADA and Rehabilitation Act claims and relies on a summary of Plaintiffs' argument, and not on evidence, in recommending that Plaintiffs' claims survive summary judgment. [Doc. 310 at 11].  However, the Court finds that the R&R does cite to the portions of the evidence which supports Plaintiffs' claims.

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Under the similar language of § 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a).

ADA and RA claims involve the same substantive liability standard. <u>Silva v. Baptist Health S. Fla., Inc.</u>, 856 F.3d 824, 830 (11th Cir. 2017). An ADA plaintiff must show (1) that she is a "qualified individual with a disability;" (2) that she was either "excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (3) that the exclusion, denial of benefit, or discrimination was "by reason of the plaintiff's disability." <u>Bircoll v. Miami-Dade Cty.</u>, 480 F.3d 1072, 1083 (11th Cir. 2007).

A qualified individual with a disability is anyone "who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131. A jail or prison is considered a "public entity" and the "many recreational activities, medical services, and educational and vocational programs" are benefits of its services. <u>Pa. Dep't of Corr. v. Yeskey</u>, 524 U.S. 206, 210 (1998).

Plaintiffs' claims are based on the denial or restriction of prison services offered to SMI inmates and a failure of reasonable accommodations. [Doc. 1 at 82-85]. Plaintiffs assert that there is no dispute that they are qualified individuals with

disabilities, the first element of an ADA claim. [Doc. 265 at 37]. Defendants contend, however, that restrictions on out-of-cell time are "based on inmates' status as security risks or administrative concerns," not their mental health status, and that such safety measures do not create ADA or Rehabilitation Act liability. [Doc. 310 at 11-12].

As to the elements of exclusion or denial from Defendants' programs or benefits and discrimination on the basis of disability, the R&R specifically referred to depositions which provide evidence raising triable issues of fact. [Doc. 306 at 39-40. n. 17 (*citing to* Doc. 265-27 at 135-37; Doc. 265-13 at 5, 87-89; Doc. 265-1 ¶5; Doc. 265-12 at 44, 165; Doc. 265-13 at 5, 87-89; and Doc. 266-1 at 135-37)]. The deposition testimony referenced above establishes a genuine issue of material fact regarding SMI inmates' access to educational and recreation programs, such as certain prison GED programs, New Beginnings programs, basketball programs, and general out-of-cell time.  The R&R also cites to evidence of the failure to make reasonable accommodations, as identified in the declarations of Dr. Jeffrey Metzner [Doc. 306 at 39-40 n. 18 (*citing to* Doc. 146-2 at 31)] and the deposition testimony of the Chief Jailer [Doc. 306 at 39-40 at n. 17 (*citing to* Doc. 265-10 at 152)].

Under the broad definition of programs or benefits provided by a prison facility, the record and the R&R contain sufficient evidence to show that SMI

inmates have been denied or excluded from Defendant's benefits on the basis of their disabilities. Furthermore, under the broad language and interpretation of the ADA, the Court finds that providing out-of-cell time or "yard time" to inmates may be viewed as a recreational activity or benefit within the scope of the ADA. See Pa. Dep't of Corr., 524 U.S. at 210; see also Rinehart v. Weitzell, 964 F.3d 684, 687, 689 n.1 (8th Cir. 2020).

The Court notes that "[u]njustified isolation [of mentally disabled persons] . . . is properly regarded as discrimination based on disability." Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 597 (1999).  This rationale would clearly apply to Defendants' restrictive confinement of the SMI inmates in this case. Although Defendants argue that, under the Olmstead factors, no reasonable accommodations were possible to safely end the isolation of the SMI inmates, the Court finds that there is evidence in the record to suggest that there were reasonable accommodations that Defendants could have taken to avoid unreasonably isolating the female SMI inmates. [*See* Doc. 265-10 at 152; Doc. 146-2 at 24-25 ¶¶51-52].  Accordingly, the Court finds that Defendants' objection to the analysis of Plaintiffs' ADA and RA claims is without merit.

III.   **CONCLUSION**

After considering the R&R and conducting a de novo review of the issues raised in Defendant's objections, the Court hereby ADOPTS the recommendation of the Magistrate Judge as the Opinion and Order of this Court.  Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is **GRANTED IN PART** as to all claims against Defendants Mark Adger, Meredieth Lightbourne, Tyna Taylor, and Pearlie Young and as to Plaintiff's equal protection claim in Count III of the Complaint, and **DENIED IN PART** as to the claims against Patrick Labat, in his official capacity as Sheriff of Fulton County, in Counts I, II, and III of the Complaint.

IT IS SO ORDERED, this 13th day of September, 2021.


WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE