## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| GEORGIA ADVOCACY OFFICE, *et al.*, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| PATRICK LABAT, in his official capacity as Sheriff of Fulton County, *et al.*, | ) ) ) ) |
| Defendants. | ) ) ) |

CIVIL ACTION

NO. 1:19-cv-01634-WMR

## FINAL ORDER APPROVING SETTLEMENT

The parties reached and the Court preliminarily approved, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, a class action Settlement Agreement resolving the claims for injunctive and declaratory relief in this case.  (*See* Preliminary Approval Order (Doc. 329).)  After granting preliminary certification of the settlement class, appointing Plaintiffs' counsel as class counsel, granting preliminary approval of the Settlement Agreement, and approving a process for giving notice to the class, the Court did not receive objections or comments from class members and held a final fairness hearing on March 16, 2022.  For the reasons below, and those set forth in the Court's preliminary approval order, the

Court now grants final certification of the settlement class and final approval of the

Settlement Agreement, and, per the joint request of the parties, adopts the

Settlement Agreement by incorporation as the order of the Court.

## I. BACKGROUND AND PROCEDURAL HISTORY

The complaint sought class-wide injunctive relief to ensure that people with

serious mental illness who cannot function within the general population at the

South Fulton Jail (the "Class Members") received appropriate out-of-cell time,

access to therapeutic services, appropriate food and water, and humane living

conditions. Plaintiffs' Motion for Preliminary Injunction was granted July 23,

2019[1] (Doc. 65); class certification was granted September 10, 2019 (Doc. 86); and

after almost two years of discovery, Defendants' Motion for Summary Judgment

was denied in large part on September 13, 2021. (Doc. 321.)

Through the lengthy discovery process, Plaintiffs obtained and reviewed

many relevant records. In addition, Plaintiffs deposed the prior Sheriff, the Chief

Jailor, mental health and correctional staff, and the Defendants' experts.

Defendants deposed Plaintiffs' two experts, Dr. Jeffrey Metzner, an expert in

---

[1] Defendants appealed, and on July 14, 2021, the Eleventh Circuit Court of Appeals held that the preliminary injunction expired by operation of law. (Doc. 313.) The appeal was dismissed as moot and the preliminary injunction was vacated. (*Id.*) However, on July 19, 2021, a judge of the Eleventh Circuit withheld issuance of the mandate in the appeal. (Doc. 316.)

correctional psychiatry, and Mr. Emmitt Sparkman, an expert in corrections. The parties engaged in settlement discussions over the course of three weeks.

The Settlement Agreement has three core components.  First, it requires the Defendants to take immediate and ongoing steps to ensure that people with serious mental illness who are housed at the South Fulton Jail and who cannot function within the general population receive out-of-cell time; out-of-cell therapeutic activities; reading materials; access to drinking water; toiletries, personal hygiene items; clean clothing; showers; equal access to recreational opportunities, visitation, educational or enrichment activities; and food that is not soured, expired, or moldy.  Second, the Defendants must maintain the highest possible standards of cleanliness and sanitation in the areas in which Class Members are housed.  And third, the Defendants must designate specially trained correctional staff to work with Class Members.

## II.  DISCUSSION

In weighing final approval of a class settlement, the Court's role is to determine whether the settlement, taken as a whole, is "fair, adequate and reasonable and . . . not the product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (internal quotation marks and citations omitted).  The factors the Court must consider are set forth in Federal Rule of Civil Procedure 23(e)(2).  These factors were largely addressed in the

Court's preliminary approval order; that analysis will not be repeated here.  (*See* Doc. 329 at 7-9.)  However, the Court will expand on its discussion of six issues relevant to the propriety of approval and not fully addressed in the preliminary approval order: (1) the Settlement Agreement's compliance with the requirements of the Prison Litigation Reform Act; (2) the adequacy of notice to class members; (3) the objections and comments submitted by class members; (4) the views of class counsel; (5) the proposed attorneys' fee award, *see* Rule 23(e)(2)(C)(iii), and agreements required to be identified under Rule 23(e)(3), *see* Rule 23(e)(2)(C)(iv); and finally, (6) the views of the Court.

The Court also concludes that the settlement class preliminarily certified should be finally certified for settlement purposes under Federal Rule of Civil Procedure 23(b)(2) for the reasons set forth in the Court's preliminary approval order.  (*See* Doc. 329 at 3-4.)  This class is defined as "all people housed in the South Fulton Jail who experience serious mental illness and cannot function within the general population of the South Fulton Jail because of the nature or severity of their psychiatric disability."  "Experiences a psychiatric disability" shall mean that a person has any diagnosed mental disorder currently associated with significant impairment in psychological, cognitive, or behavioral functioning that substantially interferes with the person's ability to meet the ordinary demands of living.  For purposes of this Agreement, a person shall be deemed to experience a psychiatric

disability if they: (a) have been identified by the Sheriff or his agents as having been diagnosed with a psychiatric disorder, including, but not limited to, schizophrenia, bipolar disorder, an unspecified psychotic disorder, major depressive disorder, schizoaffective disorder, or borderline personality disorder; or (b) have been identified by the Sheriff or his agents as having been prescribed psychotropic medication within the preceding twelve (12) months; or (c) have been identified by the Sheriff or his agents as having been placed on the caseload for mental health care within the preceding twelve (12) months; or (d) have entered the custody of the Sheriff and evidenced symptoms that would cause the person to be referred to mental health services for an evaluation or treatment; and (e) have been assigned housing separate from the general population under because their psychiatric disability requires a residential level of care.

**A.    Compliance of the Settlement Agreement with the PLRA's Need-Narrowness-Intrusiveness Requirements**

The Prison Litigation Reform Act (PLRA) generally mandates that prospective relief orders in prison conditions cases "extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs," and requires that courts entering them "find[] that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."  18 U.S.C. § 3626(a)(1)(A); *see also* 18 U.S.C. § 3626(c)(1)

(applying these requirements to consent decrees).  Together, these requirements are commonly referred to as the "need-narrowness-intrusiveness" requirements.

In *Cason v. Seckinger*, the Eleventh Circuit addressed the sort of findings courts are required to make with respect to the need-narrowness-intrusiveness requirements where the parties dispute whether these requirements are met.  231 F.3d 777 (11th Cir. 2000).  *Cason* involved a contested motion by defendant prison officials to terminate a consent order under 18 U.S.C. § 3626(b), which provides a right to terminate prospective relief in certain circumstances if the need-narrowness-intrusiveness requirements are not satisfied.  *Cason*, 231 F.3d at 781; *see* 18 U.S.C. § 3626(b)(3) (providing that prospective relief "shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation").  The *Cason* panel read § 3626(b)(3) as generally "requiring particularized findings, on a provision-by-provision basis, that each requirement imposed by the consent decree satisfies the need-narrowness-intrusiveness criteria."  *Cason*, 231 F.3d at 785.  Where the parties disagree on whether those criteria are satisfied, "[i]t is not enough to simply state in conclusory fashion that the requirements of the consent decrees satisfy those criteria.  Particularized

findings, analysis, and explanations should be made as to the application of each criteria to each requirement imposed by the consent decrees."[2]  *Id.*

*Cason* went on to recognize, however, that the provision-by-provision, particularized-finding requirement does not apply where the parties have agreed that the PLRA's need-narrowness-intrusiveness requirements are satisfied.  *See Cason*, 231 F.3d at 785 n. 8.  Specifically, a district court may simply rely on the parties' "concessions" and "stipulations" concerning those criteria, just as it would any other undisputed facts.  *Id.*  Thus, when defendants expressly concede that the PLRA's need-narrowness-intrusiveness requirements are met, the Court need not enter the particularized findings that are otherwise required.  *See id.* ("Of course, we do not mean to suggest that the district court must conduct an evidentiary hearing about or enter particularized findings concerning any facts or factors about which there is not dispute.  The parties are free to make any concessions or enter into any stipulations they deem appropriate").  Here, Defendants have not only consented to entry of the Settlement Agreement as an order, but has also expressly stipulated that the Settlement Agreement satisfies the various requirements of the

---

[2] The Eleventh Circuit later held that *Cason*'s particularized-finding requirement applies not just to termination, but also to entry of prospective relief under 18 U.S.C. § 3626(a).  *See United States v. Sec'y, Fla. Dep't of Corr.*, 778 F.3d 1223, 1228 (11th Cir. 2015) (involving contested motion for preliminary injunction sought by United States in case challenging Florida's failure to provide kosher meals to incarcerated people).

PLRA, including the need-narrowness-intrusiveness requirements.  (Doc. 329.)

Therefore, particularized findings are not required.  *See Dunn v. Dunn*, 318 F.R.D.

652, 682 (M.D. Ala. 2016); *Laube v. Campbell*, 333 F. Supp. 2d 1234, 1239 (M.D.

Ala. 2004); *see also Martinez v. Maketa*, 2011 WL 2222129, at *1 (D. Colo. June

7, 2011) (entering a prospective relief order after observing that "Plaintiffs and

Defendant jointly stipulate that the Court should make the findings required for

prospective relief under 18 U.S.C. § 3626(a)(1)(A)"); *cf. Thomas v. Bryant*, 614

F.3d 1288, 1323 & n.33 (11th Cir. 2010) (holding defendant prison officials could

waive challenge to district court's failure to make particularized findings by failing

to raise issue in district court or on appeal).

The Court, has nevertheless, conducted an independent review of the record

in this case and assessed the core terms of the Settlement Agreement in light of that

record.  The Court independently finds that the provisions of the Settlement

Agreement satisfy the PLRA's requirements for the following additional reasons.

### 1.    Settlement Terms

Plaintiffs alleged that the conditions in the South Fulton Jail constituted

solitary confinement, which was defined as 22 or more hours per day in a cell

without meaningful human contact.  (Doc. 1).  Plaintiffs further alleged that their

solitary confinement presented a substantial risk of serious psychological harm to

the Plaintiffs and Class Members in violation of the Eighth Amendment, that

Plaintiffs were denied access to programs and services by virtue of their disability in violation of the Americans with Disabilities Act and the Rehabilitation Act, and that procedures for placing people with serious mental illness in solitary confinement was causing their mental health condition to deteriorate, amounting to cruel and unusual punishment.  Defendants stipulate that the Settlement Agreement is "the least intrusive means necessary to correct the violations of federal rights" alleged by Plaintiffs.

As discussed in greater detail below, the Court finds that the prospective relief provided in the Settlement Agreement is necessary to prevent violations of peoples' constitutional and federal rights in this case, is narrowly tailored and extends no further than necessary to correct those violations and constitutes the least intrusive means of ensuring compliance with minimal constitutional requirements.  As an initial matter, *Cason*'s requirement of "particularized" and "provision-by-provision" findings, 231 F.3d at 785, allows for some flexibility in light of the circumstances of each case.  Where the parties dispute whether relief is appropriate under § 3626, a district court ordinarily holds an evidentiary hearing, creates a record, and makes factual findings.  *See Loyd v. Alabama Dep't of Corr.*, 176 F.3d 1336, 1342 (11th Cir. 1999).  In this case, however, the parties have chosen to resolve the case without further proceedings.  The record in this case is extensive, although not complete, due to the stage at which the case was resolved,

but the Eleventh Circuit has recognized that a district court applying § 3626(a) should "discuss those factors and enter findings that are as specific to the case as the circumstances permit." *Johnson v. Breeden*, 280 F.3d 1308, 1326 (11th Cir. 2002). Therefore, the Court concludes that it need not hold an evidentiary hearing or require the parties to expend time and resources on presenting evidence. *See generally Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts"); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement"). The Court will instead make findings "as specific to the case as the circumstances permit," recognizing that "there may not be much to say" about certain matters in light of the record available to the Court. *See Johnson*, 280 F.3d at 1326.

Making the findings required by § 3626 "requires a degree of judgment." *See Brown v. Plata*, 563 U.S. 493, 538 (2011). And, even under the limitations imposed by the PLRA, "[c]ourts have substantial flexibility when making these judgments." *Id.* To determine whether a remedial provision is "narrowly drawn" and "extends no further than necessary," 18 U.S.C. § 3626(a)(1)(A), courts assess the "fit between the remedy's ends and the means chosen to accomplish those ends." *Brown*, 563 U.S. at 531 (quoting *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989)) (internal alterations and quotation marks omitted).

The necessity and narrow-tailoring requirements forbid orders that "unnecessarily reach out" to fix problems other than those that violate federal law.  *Id.*  Rather, the "scope of the remedy must be proportional to the scope of the violation, and the order must extend no further than necessary to remedy the violation."  *Id.*  Similarly, the requirement that the relief ordered be "the least intrusive means necessary," 18 U.S.C. § 3626(a)(1)(A), aims to ensure that the relief ordered "does not excessively impede upon the [prison system's] internal administration," *see Thomas*, 614 F.3d at 1325.  The least intrusive orders will tend to be those that track a prison system's "current policy" and leave discretion to prison officials in implementing the ordered relief.  *Id.*

In determining the permissible scope of relief, a court must consider what relief would be sufficient "to adequately protect future class members" from harm.  *Plata*, 563 U.S. at 532.  A remedial order narrowly tailored to preventing future violations of certain class members' federal rights is not overbroad even though its "collateral effects" may improve conditions for prisoners generally.  *Id.* at 531 (holding order requiring release of incarcerated people to ensure timely medical care for class members was not overbroad, even though the order would benefit people outside of the plaintiff class by, among other things, reducing prison violence and prompting parole reform).

### a. Out-of-Cell Time

Paragraphs 22-27 of the Settlement Agreement provide that Class Members will ordinarily receive a minimum of four hours out-of-cell time per day, five days a week, subject to specified limitations and conditions.

The Settlement Agreement provides for 20 hours per week of total out-of-cell time. The Court finds that the out-of-cell time provisions are narrowly tailored and extend no further than necessary to prevent an unconstitutional "risk of psychological harm" to the class members. *See Thomas*, 614 F.3d at 1315 (recognizing risk of psychological harm can violate Eighth Amendment). Provisions for documenting out-of-cell time are necessary and narrowly tailored to ensuring that the Settlement Agreement is implemented. Finally, given that Defendant expressly consented to these provisions, the Court cannot find that there is a less intrusive means of protecting the class members' federal rights.

In short, the out-of-cell provisions protect the class members' rights while ensuring that the Sheriff's ability to run a safe and secure facility is not compromised. Accordingly, the Court finds that the out-of-cell time provisions are necessary, are narrowly drawn, and intrude no further than necessary.

### b. Activities, Programs, and Privileges

Paragraphs 29 to 34 of the Settlement Agreement provide that class members will have access to certain activities and privileges.

The Court finds that each of these provisions necessarily correlate to the out-of-cell time provisions discussed above, including therapeutic activities, reading material and recreational opportunities.

Accordingly, the provisions concerning activities, programs, and privileges are necessary, are narrowly drawn, and intrude no further than necessary.

### c.    In-Cell Conditions of Confinement

Paragraphs 35-41 of the Settlement Agreement address general living conditions, including food, laundry, drinking water, and sanitation. Defendants shall provide Class Members with access to all recreational opportunities, visitation, educational or enrichment, or other opportunities that are provided to those who do not experience psychiatric disabilities unless specific conditions are met regarding the threat of safety to a Class Member or others.

The Court finds that these provisions, which principally concern the conditions in which class members live while confined to their cells, address general living conditions consistent with constitutional principles and federal law. Although the Settlement Agreement provides for out-of-cell time and activities, the class members will continue to spend many hours of their time in their cells.  It is thus necessary that class members be provided minimally adequate living conditions—including food, sanitation, hygiene items, clean clothing, and other basic needs—during the time that they are held in those cells.  *See Hamm v.*

*DeKalb Cty.*, 774 F.2d 1567, 1573 (11th Cir. 1985).  The Court finds that these provisions are narrowly tailored, extend no further than necessary, and are the least intrusive means available to correct violations of class members' federal rights.

Accordingly, the Court finds that the provisions concerning in-cell conditions of confinement are necessary, are narrowly drawn, and intrude no further than necessary.

### d.    Assignment, Periodic Review, and Duration of Confinement

Paragraphs 24-27 establish limits on the denial of out-of-cell time, and procedures for review and supports related to these denials.

The Court finds that the limitations on the denial of out-of-cell time, and the protections provided, are narrowly drawn, extend no further than necessary to correct the violations alleged by Plaintiffs, and are the least intrusive means necessary to correct those violations.  Taken as a whole, the Settlement Agreement's provisions concerning limitations on denials of out of cell time, and the review of those denials, are necessary and narrowly tailored to correct the alleged due process violations.  Finally, the provisions for periodic mental health evaluations of class members, treatment for class members who are decompensating, and training for officers in responding to signs of mental illness are necessary so that class members with serious mental health concerns are identified, assessed, and treated.  (Settlement Agreement ¶¶ 25-27, ¶¶ 42-47).

The Settlement Agreement specifies certain criteria, but leaves the application of the criteria to individual class members in the Sheriff's hands. These provisions address the concerns about prolonged and indefinite confinement in isolation raised by Plaintiffs but are narrowly drawn and do not unnecessarily constrain the Sheriff's decision-making authority.

Accordingly, the Court finds that the provisions concerning out-of-cell time, denial of out-of-cell time, review, and duration of, are narrowly drawn, and intrude no further than necessary.

### e.    Provisions for Monitoring and Implementation

Paragraphs 49-56 of the Settlement Agreement provide for monitoring and implementation of the agreement's substantive terms.  The principal terms in that regard provide for monitoring meetings between the parties, limited access to records, on-site visits, notice and training for officers and staff members, and monitoring reports.  The Court finds that these provisions are narrowly drawn, extend no further than necessary to correct the violations alleged by Plaintiffs, and are the least intrusive means necessary to correct those violations.  Regarding the provisions for meetings, site visits, and training of officers and staff, the Settlement Agreement's provisions are plainly narrowly tailored and no more intrusive than necessary to ensure that the Sheriff's subordinates are aware of their obligations, and that class counsel can perform their role in monitoring compliance on behalf of

their clients.  The Court notes that the Settlement Agreement also includes a notice

and conferral requirement, so as to ensure that the Sheriff is given the opportunity

to resolve potential concerns without court intervention if possible.  Some process

for verifying compliance is of course necessary and is commonplace in

institutional reform orders of this sort; a process designed to ensure that the Sheriff

is made aware of any alleged issues of non-compliance before Plaintiffs resort to

adversarial proceedings is reasonable and nonintrusive.

Accordingly, the Court finds that the provisions concerning monitoring and

implementation are necessary, are narrowly drawn, and intrude no further than

necessary.

## 2.      Impact of the Settlement Agreement on Public Safety

Neither the parties nor the Court has identified "any adverse impact on

public safety or the operation of a criminal justice system caused by the relief"

provided in the Settlement Agreement.  18 U.S.C. § 3626(a)(1)(A).

In sum, the parties stipulate, and the Court concludes, that the Settlement

Agreement meets the requirements of 18 U.S.C. § 3626(a)(1)(A).

## B.      Notice to Class Members

The Court must ensure that notice has been provided to class members in

compliance with Federal Rule of Civil Procedure 23(e)(1).  Per the Court's

preliminary approval order, the Defendants were required to provide notice and a

copy of the Settlement Agreement directly to every current class member. Such individual delivery clearly constitutes adequate notice under Rule 23(e)(1). *See, e.g.*, *Dunn*, 318 F.R.D. at 668 (concluding that notice was adequate when people confined in cells rather than dormitories were individually "hand-delivered" notice forms). Defendants stipulate that this has occurred and that the settlement terms have been publicly posted throughout the jail. The parties agree that the class notice process was carried out as set forth in the Court's Preliminary Approval Order. The Court concludes that notice to the class members satisfies the requirements of Federal Rule of Civil Procedure 23(c)(2) and 23(e)(1).

### C.    Objections to the Settlement Agreement

In determining whether a class settlement should be approved, "the reaction of the class is an important factor." *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005). As the Court noted in its preliminary approval order, the degree of opposition to a settlement by class members can only be assessed once they are provided with notice. (*See* Doc. 210 at 11 (citing *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 560 (N.D. Ga. 2007)).) The Court received no objection or comment from any class member.

The agreement contemplates that its terms will be incorporated into an order of this Court, will remain in effect for at least 12 months from the signing of this order, will be monitored, and, if necessary, enforced and extended through

motions practice by class counsel.  The Court understands that the parties have

been in communication and agree that the absence of objections supports the

adoption of this agreement, and evidences the fairness, reasonableness, and

adequacy of the terms of the Settlement Agreement.

### D.    Judgment of Class Counsel on the Adequacy of the Settlement

In considering a proposed class settlement, the Court "may rely upon the

judgment of experienced counsel for the parties. . . .  Absent fraud, collusion, or

the like, the district court 'should be hesitant to substitute its own judgment for that

of counsel.'" *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434

(11th Cir. 2012) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

Here, class counsel have extensive experience litigating and settling conditions of

confinement cases, and strongly endorse the Settlement Agreement as appropriate.

This factor therefore weighs in favor of approval.

### E.    Attorneys' Fees and Costs and Other Agreements

In compliance with the Court's preliminary approval order, the parties have

conferred regarding attorneys' fees and costs.  They reached a negotiated

agreement that attorneys' fees and costs should be paid by Defendant to class

counsel in the amount of $1,200,000.  Plaintiffs thereafter filed an uncontested fee

petition seeking an award of such fees in compliance with Federal Rule of Civil

Procedure 23(h).  The Court **ORDERS** that notice be given to the class members

by April 19, 2022, regarding the joint motion for attorneys' fees, and that class members be provided until May 4, 2022, to file an objection.  If no objection is filed, the Court **ORDERS** that Defendants pay Plaintiffs $1,200,000 by May 20, 2022.  If an objection is filed, the Clerk shall notify the parties by May 6, 2022, and the parties shall file a response to the objection no later than May 13, 2022.  The Court shall make a ruling on any objections by May 20, 2022.  Because the fee award was negotiated following the parties' entry into the Settlement Agreement, and because the parties agree that the Settlement Agreement stands regardless of whether the Court grants the fee petition, the Court finds that nothing in Plaintiffs' request for attorneys' fees undermines the fairness or adequacy of the Settlement Agreement.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).  The fee petition will be resolved pursuant to a separate order.

### F.    Court's Assessment

"Finally, with the above considerations in mind, the court should itself [finally] assess whether the settlement agreement is fair, adequate, and reasonable."  *Gaddis v. Campbell*, 301 F. Supp. 2d 1310, 1316 (M.D. Ala. 2004) (citation and internal quotation marks omitted).  Based on a review of the Settlement Agreement and of the entire record in this case, and based on the analysis of the Rule 23(e) factors set forth in the Court's preliminary approval opinion and in this opinion, the Court concludes that the Settlement Agreement is

19

fair, adequate, and reasonable, should be approved, and should be adopted as an order of the Court.  The Court finds that this settlement, reached after extensive discovery and arms-length negotiations by the parties, represents an appropriate and desirable resolution of this case, and substantially affords class members the relief Plaintiffs sought regarding conditions, solitary confinement and access to programs and services, without the cost and uncertainty of further litigation. Because Defendants were involved in crafting and agreed to the provisions of the Settlement Agreement, the Court expects that they will successfully implement those terms to the benefit of the class members.

### III.  Grant of Settlement Agreement

For the foregoing reasons, the Court will grant final approval of the settlement [Doc. 328-1] and incorporate it as an order of the Court.[3]  In accordance with foregoing opinion and findings, it is the **ORDER** of the Court as follows:

(1)     A settlement class is certified, consisting of "all people housed in the South Fulton Jail who experience serious mental illness and cannot function within the general population of the South Fulton Jail because of the nature or severity of

---

[3] Note that although the Settlement Agreement [Doc. 328-1] has been attached to this opinion as an appendix, it is incorporated as the Order of the Court.  The parties expressly stipulate, and the Court finds that this order complies with Federal Rule of Civil Procedure 65(d)(1).  *See Williams v. City of Dothan, Ala.*, 818 F.2d 775, 761 (11th Cir. 1987).

their psychiatric disability" under Federal Rules of Civil Procedure 23(a) and

(b)(2);

(2)     The joint motion to adopt the Settlement Agreement (Doc. 336) is

**GRANTED**;

(3)     The terms of the Settlement Agreement [Doc. 328-1], which is

attached as an appendix to this judgment, are incorporated as the Order of this

Court;

(4)     In accordance with the terms of the Settlement Agreement, the Court

retains jurisdiction to enforce the agreement during its term;

(6)     The Sheriff, in his official capacity, his officers, agents, servants, and

employees, and those persons in active concert or participation with them who

receive actual notice of this injunction by personal service or otherwise, are each

enjoined from failing to comply with the terms of the Settlement Agreement; and

(7)     The Settlement Agreement shall expire, in accordance with its terms,

12 months from the date of entry of this Order unless there is an additional motion

or finding by the Court as dictated by the terms of the Settlement Agreement.

In order to provide class members with notice of the final disposition of this

lawsuit, it is further **ORDERED** that, within fourteen (14) days from the date of

this Order, Defendant shall cause to be provided to class members notice of the

final disposition of this lawsuit by delivering to each class member this Order and the settlement agreement.

The Clerk of the Court is **DIRECTED** to place the case on administrative closure for 12 months from today's date.  After expiration of the 12 months, unless there are additional proceedings that alter the date, the case shall be closed.

SO ORDERED, this 4th day of April, 2022.

_____
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| GEORGIA ADVOCACY OFFICE, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| v. | ) ) | NO. 1:19-CV-1634-WMR-RDC |
| PATRICK LABAT, *et al.*, | ) ) | |
| Defendant. | ) ) | |

## SETTLEMENT AGREEMENT REGARDING WOMEN WHO EXPERIENCE PSYCHIATRIC DISABILITIES IN THE FULTON COUNTY JAIL SYSTEM

Plaintiffs, on behalf of themselves and all others similarly situated; Plaintiff Georgia Advocacy Office on behalf of itself and its constituents; and Defendant Patrick "Pat" Labat (the Plaintiffs and Defendant, collectively, are referenced as "the Parties"), enter this Settlement Agreement as a resolution of all claims for prospective relief asserted by Plaintiffs in this action.

1.     This is an action under 42 U.S.C. § 1983, the Americans with Disabilities Act and the Rehabilitation Act seeking prospective relief to remedy an alleged policy and practice of holding people with psychiatric disabilities in

solitary confinement and under allegedly unconstitutional conditions at the South

Fulton Municipal Regional Jail ("South Fulton Jail").

2.      Plaintiffs in this action are the Georgia Advocacy Office ("GAO")—a

federally funded protection and advocacy system for people experiencing

disabilities, and class plaintiffs defined as all Covered Persons.

3.      The sole Defendant against whom this Agreement shall be

enforceable is Patrick "Pat" Labat, in his official capacity as the Sheriff of Fulton

County and his successors and agents, hereinafter referred to as the "Fulton County

Sheriff" or "Sheriff."  The Sheriff may choose to use contractors or third parties to

fulfill the terms of the Agreement, but he and his successors are solely responsible

for the provisions of this Agreement.

4.      The parties agree that this Court has jurisdiction to enter prospective

relief against Defendant under 28 U.S.C. § 1331.  Venue is proper in this District

under 28 U.S.C. § 1391(b).

5.      This Agreement has been entered into by the Parties solely to avoid

further burdens of litigation.  Plaintiffs agree and acknowledge that this Agreement

is the result of a compromise and is not and shall never at any time or for any

purpose be construed as an admission by Defendants of any liability or

wrongdoing. The Parties agree that this Agreement is not evidence, and shall not raise an inference that Defendants engaged in any unlawful or wrongful conduct.

6.     In settlement of this Agreement, the parties agree that this case shall be administratively closed for a period of twelve (12) months from the execution of this Agreement.  During that 12-month period, the Defendant shall implement the agreed-upon measures below.  If after twelve (12) months the below measures are implemented without a material breach, this case shall be closed.

7.     Defendant shall fully implement the terms of this Agreement within twenty-one (21) days of the parties signing the Agreement. If the terms of the Agreement are not implemented within twenty-one (21) days, Plaintiffs can notify Defendant of a material breach.

8.     In the event of a material breach of the terms of this Agreement, the term for the case to remain on administrative closure shall be extended for an additional six (6) months beyond the initial 12-month enforcement period.  If after the extension period there is no additional material breach, the case will be closed.

9.     In the event of a second material breach of the terms of this Agreement, the terms of this Agreement will be converted to a consent order and will be enforceable as if newly agreed upon by the parties.

10.     A material breach is to be determined by applying the same standard used for a determination of contempt.  The determination shall be made by the Magistrate Judge assigned to the case.  The method for the determination (whether through documentary sworn or live testimony) will be at the discretion of the Magistrate Judge.  The Magistrate Judge will only be required to determine if there is a material breach of the Agreement.  That determination of the Magistrate Judge will be subject to de novo review by the District Court on the factual record presented to the Magistrate Judge.  The decision of the District Court will be binding on the parties.

11.     In the event that the below Agreement is converted to a consent order after two material breaches of the agreement, the Parties agree that this Agreement is a settlement of the underlying lawsuit.  The parties also agree that this Agreement satisfies the requirements of 18 U.S.C. § 3626(a)(1)(A) (the "Prison Litigation Reform Act") in that the relief is narrowly drawn, extends no further than necessary to correct the alleged violations of those federal rights as asserted by Plaintiffs, and is the least intrusive means necessary to correct the violations of federal rights.  The Parties agree that the relief set forth in this Agreement will not have an adverse impact on public safety or the operation of the criminal justice

system, nor will it require or permit government officials to exceed their authority under state or local law, or otherwise violate state or local law.

12.     Defendant may seek to terminate the consent order after twelve (12) months if they demonstrate substantial compliance.  Unless the consent decree is terminated consistent with the previous sentence, the prospective relief set forth in this Agreement shall be terminated pursuant to the termination provisions of 18 U.S.C. § 3626(b) and Rule 60(b) of the Federal Rules of Civil Procedure.  The enforcement and termination provisions of the Prison Litigation Reform Act apply.

13.     The terms of this Agreement apply to all people housed in the South Fulton Jail who experience serious mental illness and cannot function within the general population of the South Fulton Jail because of the nature or severity of their psychiatric disability.

14.     In recent months, Defendant has implemented certain remedial measures, including implementation of programming for women with psychiatric disabilities.  This Agreement builds on those remedial measures to establish a mutually agreeable framework for the Parties to resolve this case without the need for further litigation.  Resolving this matter with this Agreement is in the best interest of Defendant, Plaintiffs and their constituents, and the members of the certified class.

## TERMS AND CONDITIONS

## I.     DEFINITIONS

15.     "Covered Person" shall mean all people housed in the South Fulton Jail who experience serious mental illness and cannot function within the general population of the South Fulton Jail because of the nature or severity of their psychiatric disability.

16.     "Experiences a psychiatric disability" shall mean that a person has any diagnosed mental disorder currently associated with significant impairment in psychological, cognitive, or behavioral functioning that substantially interferes with the person's ability to meet the ordinary demands of living.  For purposes of this Agreement, a person shall be deemed to experience a psychiatric disability if they: (a) have been identified by Defendant or his agents as having been diagnosed with a psychiatric disorder, including, but not limited to, schizophrenia, bipolar disorder, an unspecified psychotic disorder, major depressive disorder, schizoaffective disorder, or borderline personality disorder; or (b) have been identified by Defendant or his agents as having been prescribed psychotropic medication within the preceding twelve (12) months; or (c) have been identified by Defendant or his agents as having been placed on the caseload for mental health care within the preceding twelve (12) months; or (d) have entered the custody of

6

the Defendant and evidenced symptoms that would cause the person to be referred to mental health services for evaluation or treatment; and (e) have been assigned housing separate from the general population under Policy 2100-01 at 13 because their psychiatric disability requires a residential level of care.

17.    "Notice" as referenced in this Agreement shall be defined as Counsel for one party emailing Counsel for the other party.  If "notice" is provided before 5 p.m., the notice is deemed to be served on the day of the notice.  If "notice" is given after 5 p.m., notice is deemed to be served on the next business day.

18.    "Gymnasium" shall mean the area that the Fulton County Sheriff has designated as the indoor exercise area for Covered Persons detained at the South Fulton Jail.

19.    "Therapeutic activities" shall mean structured and unstructured activities occurring outside of cell that are deemed appropriate by a licensed mental health care provider for treating the respective psychiatric disabilities experienced by Covered Persons.

20.    "South Fulton Jail" or "Jail" means the detention facility located at 6500 Watson Street in Union City, Georgia.

21.    "Yard" shall mean the area that the Fulton County Sheriff has designated as the outdoor recreation area for covered persons detained at the South Fulton Jail.

## II.    CONDITIONS OF CONFINEMENT

### A. Out-of-Cell Time

22.    Defendant shall offer[1] at least four (4) hours of daily out-of-cell time to each Covered Person, five (5) days per week.  At least one hour per day of that out-of-cell time shall include access to a Yard, or in the case of inclement weather, to the Gymnasium.  Defendant shall additionally offer at least one (1) hour of daily out-of-cell time to each Covered Person on the two days a week that the Covered Person does not receive four hours of daily out-of-cell time.  On the days where Covered Persons do not receive at least four (4) hours of out-of-cell-time, mental health professionals will conduct rounds, communicate with each Covered Person, and provide therapeutic activities or referral to a higher-level provider if the Covered Person demonstrates evidence of distress or decline.

---

[1] An offer of out-of-cell time to a Covered Person shall be in compliance with this Agreement when a correctional officer unlocks a Covered Person's cell and verbally notifies the Covered Person of the option to participate in out-of-cell time and, as appropriate, go to a Yard or a Gymnasium.  The officer shall allow a reasonable time for the individual to respond to the offer of out-of-cell time.  Compliance with this Settlement Agreement does not require Sheriff's Office personnel to force a Covered Person to leave their cell.

23.     Defendant shall maintain a record of the exact times that the Covered Person is offered out-of-cell time and the exact times at which the Covered Person returns to their cell if the out-of-cell time offer is accepted.  Such information shall be recorded through Note Active or a similar tracking system.  Reports shall be generated and provided, in electronic format, to Plaintiffs' counsel biweekly.  The reports shall include, for each individual by name and cell number, the date the person was offered out-of-cell time, the exact time the person was offered out-of-cell time, the exact time the individual left their cell for the Yard or Gymnasium, the exact time they returned to their cell from the Yard or Gymnasium, the exact time they began therapeutic activities, and the exact time they returned to their cell after completing therapeutic activities.

24.     Defendant may depart from the out-of-cell time requirements as outlined in this Agreement where doing so is necessary to prevent an immediate and substantial risk of serious harm to a person.  If out-of-cell time, is denied for any Covered Person under this Paragraph, the specific reasons for the denial shall be fully documented, to include the name of the Covered Person, date and time of out-of-cell time denial, and a detailed, specific reason for the denial.

25.     A Covered Person denied out-of-cell time shall be reviewed by a correctional supervisor once every 24 hours to determine whether the denial of out-

of-cell time remains necessary to prevent an immediate and substantial risk of serious harm to a person.  In any such case, the mental health treatment team shall be notified, and a member of the mental health staff shall visit and assess the Covered Person at least once every 24-hour period. A licensed mental health professional must approve in writing a denial of out-of-cell time for a Covered Person if that denial continues for more than 48 (forty-eight) consecutive hours. The use of disciplinary lockdown does not excuse the Defendant from compliance with this provision.  Denial of consecutive hours is defined as any time a Covered Person is denied an opportunity for agreed upon out-of-cell time.

26.     In the event a Covered Person in a housing pod tests positive for COVID-19, that individual will be placed in medical isolation, with medical and mental health wellness checks occurring twice daily, and more frequently as is medically and clinically indicated.  All persons in contact with the impacted individual will be tested.  Any person in the housing pod who tests negative will continue to receive out-of-cell time and therapeutic activities within the pod for 10 days.  After 10 days, if there are no additional positive individuals, the pod will resume activities as indicated by this Agreement.  The parties recognize that the impact and understanding of COVID-19 continues to evolve and agree to confer in good faith should circumstances change necessitating alteration of this provision.

27.     In the event that a Covered Person refuses out–of-cell time for seventy-two (72) hours or more, that Covered Person will be referred to a mental health professional who shall conduct a meaningful assessment of the Covered Person's well-being, assess for decompensation, and take appropriate steps to refer that person to a higher level provider as indicated.  If, after the initial 72--hours assessment, the Covered Person continues to refuse out-of-cell time, the Covered Person will be reassessed at least once every 24 hours by a mental health professional.   The assessment shall be conducted in accordance with the ordinary standards of care to assess for decompensation.  Defendant shall maintain a record of (1) mental health referrals related to a Covered Person's refusal of out-of-cell time for greater than seventy-two (72) hours; and (2) the existence of a mental health assessment(s) of those Covered Persons who refuse out-of-cell time for a period greater than seventy-two (72) hours.

28.     The Fulton County Sheriff shall assign sufficient administrators, correctional officers and supervisors, and other staff members to the South Fulton Jail to carry out the terms of this Agreement.

**B. Out-of-Cell Therapeutic Activities**

29.     Defendant shall offer out-of-cell, therapeutic activities to Covered Persons on at least five (5) days each week for at least 2 hours per day.

11

30.    The program of such activities shall be created by or with the substantial participation of a licensed mental health professional, and shall reflect the contemporary standard of care for treating people experiencing psychiatric disabilities.

31.    In the event that a Covered Person is placed in disciplinary lockdown, they will not be prevented from participating in therapeutic activities, provided that they are not an immediate threat to the health or safety of themselves or others.  If denied participation in therapeutic activities because the individual poses an immediate threat to themselves or others, the terms of Paragraphs 24–25 apply.

32.    The out-of-cell therapeutic activities referenced in Paragraph 30 shall be facilitated by one or more licensed mental health professionals.

33.    Therapeutic activities may include, but are not limited to: medication management, art therapy, music therapy, group counseling, meditation, and maintenance of personal hygiene.  Within thirty (30) days of the effective date of this Agreement, Defendant shall provide a finalized curriculum of therapeutic activities to Plaintiffs' counsel to replace the previous Mental Health Stabilization Unit Plan filed with the Court.  Defendant shall provide a curriculum to include both individual and group programming to Plaintiffs' counsel within 30 days of the

effective date of this Agreement, and shall notify Plaintiffs' counsel within 5 business days in the event the curriculum changes.

### C. Reading Material

34.    Defendant shall provide Covered Persons with access to reading material, including soft bound books and newspapers.  A mobile book cart will be available.  Covered Persons will have access to the book cart at least once per week.  Defendant shall make reasonable efforts to solicit Covered Persons' preferences for the material added to the book carts.  However, Defendant shall retain the right to decide which books and reading materials will be made available to Covered Persons. Defendant shall retain the right to provide reading material in an electronic format. In the event Defendant provides reading materials exclusively in an electronic format, Covered Persons shall be provided with electronic tablets to access reading material.  Indigent persons who cannot pay for the use of an electronic device will be provided an electronic device at no charge.

### D. Access to Drinking Water

35.    Covered Persons shall be given access to a reasonable amount of clean drinking water. Drinking water shall be provided with each meal. If a thermos or cooler is utilized to provide drinking water, the container shall be refilled as necessary throughout the day.  Upon request, and within a reasonable

amount of time, drinking water shall be provided to individuals who cannot access the drinking water because they are locked in their cells.

### E. Toiletries, Personal Hygiene Items, and Laundry

36.    Indigent Covered Persons shall be provided toiletries and personal hygiene items, including toothpaste, toothbrush, sanitary napkins, tampons, and shampoo, and all Covered Persons shall receive those toiletry items that are distributed to all persons detained in the Jail, including toilet paper and soap. These items shall be provided in reasonable quantities and at reasonable intervals to permit Covered Persons to maintain basic hygiene.

37.    Covered Persons shall be provided a freshly laundered uniform, including clean underwear, in sufficient quantities to allow for their uniform and underwear to be changed daily.  The Defendant is not required to force the Covered Persons to use the clean clothing or underwear provided.

38.    Covered Persons shall be provided a clean towel and clean bedding at least once per week.  Covered Persons shall be issued at least one blanket. Covered Persons shall additionally be provided a clean replacement towel, bedding and/or blanket within a reasonable period of time if the Covered Person's issued towel, bedding and/or blanket has become soiled with toilet water, feces, bodily fluids, and/or other substances that render the towel, bedding and/or blanket unsanitary.

14

In addition, Covered Persons shall be issued either a second blanket or a sweatshirt or sweater during times when the outside temperature falls below 60 degrees.

### F. Sanitation and Inspections

39.     Defendant shall maintain the highest possible standards of cleanliness and sanitation in the areas in which Covered Persons are housed.  Officers shall conduct daily "cell checks" of all Covered Persons' cells and shall facilitate the cleaning of the cell either by encouraging the Covered Person to do so and providing appropriate tools and detergents to clean. The common areas of the Covered Persons' housing areas shall be cleaned every day.  In instances in which a Covered Person is unable to clean their cell, the cell shall be cleaned by the designated trustees or another person, as determined by Defendant's staff.

### G. Showers

40.     All Covered Persons shall be offered the opportunity to shower at least once per day.   Defendant is not required to force a Covered Person to shower.  Except where necessary to prevent a substantial risk of serious harm to a person, Covered Persons shall be provided reasonable privacy while showering, to include the use of semi opaque barriers to shield the person's body from the view of others, to the extent reasonably possible while still preserving the ability of Defendant to maintain the operations of the Jail.

15

### H. Equal Opportunities for Covered Persons

41.     Defendant shall provide Covered Persons with access to all recreational opportunities, visitation, educational or enrichment, or other opportunities that are provided to those who do not experience psychiatric disabilities as long as the individual otherwise qualifies to participate in the program.

### I.  Training for Correctional Staff

42.     Covered Persons shall be supervised by correctional staff that are specially trained to work with people who experience psychiatric disabilities.

43.     Correctional staff who supervise Covered Persons shall receive specialized training specifically targeted to working with people who experience psychiatric disabilities.  The training shall include techniques for deescalating conflict with individuals experiencing psychiatric disabilities and alternatives to use of physical force to gain compliance.

44.     Trained staff will wear a visible patch, uniform, or other consistently displayed evidence that clearly identifies the staff member as having received the training identified in Paragraphs 42 and 43 of this agreement.

45.     Once the initial training requirement is completed, correctional staff who supervise Covered Persons shall continue to receive additional training offered for persons working with people with psychiatric disabilities.

46.      The training records for each correctional staff member supervising Covered Persons shall be maintained in the staff member's personnel file.

47.     Specially trained staff will provide direct supervision to Covered Persons.  To the extent practicable, the Fulton County Sheriff will ensure that the officers and other staff members assigned to areas in which Covered Persons are housed remain consistent, so that the same staff members generally work in the mental health pods when they are on duty. Defendant reserves the right make staffing changes based on the needs of the Fulton County Sheriff's Office.

**J. Food**

48.     Recognizing that Defendant has made changes, Defendants shall not serve food that is soured, expired, or moldy.  Defendant shall exercise quality control efforts and implement a system of checks to ensure that he does not feed Covered Persons sandwich meat or any other food that is soured, expired, or moldy.

17

III.     MONITORING AND REPORTING REQUIREMENTS

A. Monitoring Meetings

49.     The parties will have regular, in-person meetings to discuss Defendant's compliance with this Agreement.  Meeting participants will include at a minimum the following: the Chief Jailer or his representative, a senior member of the correctional staff assigned to the South Fulton Jail, a senior member of the mental health provider staff, and one or more representatives of the County Attorney's Office.  The meetings will take place approximately once every six months during the Agreement's term, the first one to take place within sixty (60) days of implementation of this Agreement.  The parties will work in good faith to schedule the meetings at a mutually convenient time and location.  Plaintiffs' counsel will circulate a proposed agenda for each meeting seven (7) calendar days before each meeting.

B. Access to Records and Data

50.     On a biweekly schedule, Defendant will provide, to Plaintiff's and Defendant's counsel, documents (or reports) reflecting the following in a text-

searchable format where possible based upon the system utilized by the

Defendant[2]:

1) Out-of-cell time for Covered Person by name and cell location;

2) Refusals of out-of-cell time by name and cell location, including reasons for the refusal if known;

3) Yard or Gymnasium time by name and cell location;

4) Refusals of Yard or Gymnasium time by name and cell location, including reasons for the refusal if known;

5) Opportunities for structured time through group or individual therapies by name and cell location;

6) If a member of the Covered Person has been denied out-of-cell time for any reason including disciplinary lockdown and the reason for the denial;

7) If the denial of out–of-cell time for a Covered Person exceeds 24 hours, that an officer ranking Lieutenant or higher has signed off, at least once per every 24-hour period, and that denial of the individual's out-of-cell time remains necessary to prevent both an immediate and substantial risk of serious harm to a person;

8) If the denial of out-of-cell time for a Covered Person exceeds 24 hours, that a member of the mental health staff has visited the individual at least once per every 24-hour period;

9) Defendant's list of people they have identified as covered by this agreement;

10)       List of people on suicide watch;

---

[2] The parties note and agree that nothing about this Agreement prevents Plaintiffs from seeking additional information as provided through Georgia's Open Records Act or GAO's access authority.

11)      List of Covered Persons who die or experience serious injury;

12)      List of Covered Person who are hospitalized; and

13)       South Fulton Jail Census Report.

51.    Within fifteen (15) days after the execution of this Agreement, the Parties will present to the Court a joint motion for a protective order to govern the release of confidential and/or HIPAA-protected information to Plaintiffs' counsel. Assuming that the Court enters a protective order, the Defendant will provide Plaintiffs' counsel with documents and data as set forth in this Agreement.  The protective order will permit Plaintiffs to share confidential records with the expert witnesses of their choosing, subject to the protective order's terms.  Should the Court decline to enter a protective order, Plaintiffs will be required to provide the Defendant with HIPAA-compliant releases before the release of any Covered Person's protected health information.

52.    For purposes of identifying Covered Persons, Defendant will provide the following documents on a monthly basis to Plaintiffs' counsel upon execution of this agreement: (a) a list of all persons on the mental health caseload; (b) a list of all persons waiting for a competency hearing (if known to Defendant); (c) a list of all persons deemed incompetent to stand trial (if known to Defendant); (d) documentation of out-of-cell time denials under Paragraphs 24–25 of this

Agreement; (e) documentation showing the curriculum of therapeutic activities actually offered during the previous month, and (f) the identities of all persons who participated in such programming.

53.     The Defendant will provide the following documents to Plaintiffs' counsel in electronic format at least fourteen (14) days in advance of each monitoring meeting:

   a.  A roster of all detained people in the South Fulton Jail, to include name, housing assignment, and offense charged

   b.  A list of all persons on the mental health caseload

   c.  A list of all persons waiting for a competency evaluation, if known by Defendant

   d.  A list of all persons deemed incompetent to stand trial, if known by Defendant

   e.  Documentation of out-of-cell time denials under Paragraphs 24–25 of this Agreement

   f.  Documentation showing the identities of all Covered Persons, who are actively participating in therapeutic activities

   g.  The institutional, medical, and mental health files, subject to the Court's protective order, for up to 20 Covered Persons (per round of

document production), to be selected by the Plaintiffs' counsel, specifically:

    i. Institutional file, to include booking file, classification file, incident reports, disciplinary reports, and grievances; and

    ii. Full medical/mental health file.

h. Amendments, modifications, or draft modifications to any policies or procedures relating to the housing or treatment of Covered Persons.

**C. On-Site Visits**

54. Plaintiffs' counsel, investigators, and paralegals may visit the South Fulton Jail during the period of the Agreement pursuant to the provisions above. Defendant will allow Plaintiffs' counsel, investigators, and paralegals to visit areas of the South Fulton Jail to which Covered Persons have access. Plaintiffs' counsel understand that they will be escorted by deputies and/or other security officials during on-site visits, but they should be allowed to have confidential conversations in the housing pods with Covered Persons. Plaintiffs' counsel may be accompanied on visits by Dr. Jeffrey Metzner, Emmitt Sparkman, or another credentialed expert, if the Covered Person has granted a release to said individuals.

55. Nothing in this Agreement shall interfere with, alter, or otherwise impact the legal authority, including access authority, of the Georgia Advocacy

Office in its role as Georgia's Protection and Advocacy System, as outlined in case 1:19-CV-0256-LMM.

### D. Access to Copies of This Agreement and Training of Jail Staff

56. Covered Persons entering the South Fulton Jail shall be provided an information sheet, mutually approved by the Parties, informing them of the material terms of this Agreement. A copy of the Agreement shall be provided to any Covered Person who requests it. In addition, copies of the Agreement shall be provided to all people in the South Fulton Jail at the time that class notice is accomplished and shall be available on the kiosk system. All Fulton County Sheriff's Office employees who are involved in the daily operation of the South Fulton Jail will be trained on the provisions of this Agreement.

## IV. IMPLEMENTATION AND ENFORCEMENT

### A. Communications with and Responsibilities of Class Counsel

57. Plaintiffs' counsel shall be entitled to meet with and speak confidentially with all persons covered by this Agreement. Defendant's staff shall facilitate Plaintiffs' counsel's requests for reasonable access to such individuals with as reasonable speed as practicable. Plaintiffs' counsel and their investigators and paralegals shall be permitted to have confidential contact visits in the housing

pods with Covered Persons unless individualized security concerns dictate otherwise.

58.     Any complaints or concerns by any Covered Person relating to this Agreement, or to the injunctive relief claims in the Complaint in this matter, shall be referred to Plaintiffs' counsel who shall determine whether enforcement action is warranted. The enforcement provisions above are exclusive and only Plaintiffs' counsel may seek enforcement of any of the terms and conditions of this Agreement.  Except for motions by Plaintiffs' counsel as outlined above, no Covered Person, including any member of the class, may be heard upon any motion for alleged non-compliance with this Agreement or bring any separate action or proceeding to enforce this Agreement.

59.     In the event Plaintiffs' counsel believes that an individual should be treated as a Covered Person and has not been identified by Defendant, Plaintiffs' counsel will notify Defendant, and an assessment by a qualified mental health professional will take place within forty-eight (48) hours of Plaintiffs' notice. If Plaintiffs' counsel's belief is confirmed, Defendant will take action to move and/or treat the individual at issue. Defendant will provide a response to Plaintiffs' counsel within three (3) business days of the notice

### B.     MEET AND CONFER OBLIGATIONS

60.     If Plaintiffs believe that Defendant has committed or is committing a material breach of this Agreement, Plaintiffs' counsel will provide Defendant, through defense counsel, with a written notice describing the alleged breach. Defendant will provide a written statement responding to the notice within fifteen (15) calendar days from receipt of the notice and, within fifteen (15) calendar days of receipt of Defendant's written response, counsel for the Parties shall confer in a good faith effort to resolve their dispute.  The Plaintiffs will not file an enforcement motion without first having provided the Defendant with a notice of alleged material breach.  In addition, Defendant shall have 30 days from the initial notice to cure the alleged material breach or advise Plaintiffs of a position advising that they deny that a material breach has occurred.  If Plaintiffs determine that Defendant has not cured the material breach within 30 days from initial notice, or during any additional time granted by the Plaintiffs, Plaintiffs may move the Court regarding the material breach as provided in this Agreement.  In the event there are less than 30 days remaining in the Agreement at the time of the alleged material breach, Plaintiffs can move the Court to enforce the Agreement as long as the Agreement has not expired at the time Plaintiffs served notice to Defendant that regarding an alleged material breach.

**C.    Enforcement**

61.    Plaintiffs may request enforcement of the Agreement by filing a notice with the

Court of a material breach and request for an extension of the Agreement (1st

violation) or institution of a consent order (2nd violation).  The Magistrate Judge

will set a hearing on the motion at the time the motion is filed.

**D.    Notice and Joint Motion for Preliminary Approval**

62.     By joint motion to be filed no later than November 1, 2021, the Parties will

request that the Court preliminarily approve this Agreement, require that

individualized notice of the proposed settlement be sent to class members,

provide for an objection period, and schedule a fairness hearing.

63.      Prior to or concurrent with the joint motion for preliminary approval, the

Parties will jointly request that the Court and Eleventh Circuit Court of Appeals

stay all other proceedings in this case pending resolution of the fairness hearing.

Following the close of the objection period, the Parties will jointly request that

the Court enter a final order approving this Agreement and entering it as an

order of the Court, retaining jurisdiction to enforce it, and continuing the stay of

the case pending the completion of the Agreement's terms.

64.      If this Agreement is not approved by the Court, the Parties shall be

restored to their respective positions in the action as of the date on which this

Agreement was executed by the Parties, the terms and provisions of this

26

Agreement shall have no force and effect, and shall not be used in this action or in any proceeding for any purpose, and the litigation of this action shall resume as if there had been no settlement.

## V.   ATTORNEY FEES AND COSTS

65.   Defendant agrees to reimburse Plaintiffs for statutorily permissible costs. Plaintiffs will file a bill of costs at the same time they petition the Court for attorneys' fees should such a petition be required.  If no such petition is required, Plaintiffs will provide Defendant with an itemized list of costs within 72 hours of reaching an agreement regarding fees.

66.   The Parties agree that 42 U.S.C. § 1988(b) governs the award of attorneys' fees in this case, and that Plaintiffs are entitled to an award of reasonable fees and costs—covering the work of counsel through the date of the Court's Order finally approving and adopting this Agreement—under these provisions.  The Parties have, postponed discussion of the amount of such fees until after the class claims for injunctive relief have been resolved.

67.   Counsel for the Parties will confer in the forty-five (45) days following the Court's Order preliminarily approving the Agreement in an effort to reach an agreement regarding the amount of the fee award.  If the Parties reach resolution with respect to fees, Plaintiffs will submit an unopposed fee petition

by no later than fifteen (15) days in advance of the fairness hearing in

accordance with Federal Rule of Civil Procedure 23(h).  In the event the Parties

are unable to resolve by agreement issues relating to Plaintiffs' claim for

attorneys' fees, Plaintiffs may petition the Court by no later than fifteen (15)

days in advance of the fairness hearing for a resolution thereof.  Defendant's

opposition shall be limited to his disagreement regarding the appropriate

amount of fees.

68.    The Parties agree that Defendant shall retain Dr. Kenneth Ray, or in the

event Dr. Ray is unable to serve as a compliance monitor, any other expert

mutually agreed upon by the parties' counsel, to monitor the implementation of

this Agreement.  Dr. Ray will provide Plaintiffs' counsel with all reports related to

compliance and shall, at a minimum, evaluate compliance every 60 days.

Plaintiffs' counsel shall have access to Dr. Ray to ask questions related to

compliance with the Agreement, and Dr. Ray shall be permitted to answer these

questions honestly and openly.  Defense counsel shall receive prior notification of

communications to occur between Plaintiffs' counsel and Dr. Ray and may

participate in any and all such communications.  Defendant shall not assert any

privilege or work product doctrine as to any communications with or work by Dr.

Ray, or his agents, that occurs after the signing of this Agreement.  Defendant does not waive any privilege that existed prior to the execution of this Agreement. [3]

68.    The initial notice to the class members shall explain that Plaintiffs will attempt to reach an agreement with Defendant regarding retrospective attorneys' fees and will file a motion for such fees no later than fifteen (15) days in advance of the fairness hearing, at which time additional notice of the motion will be provided to Covered Persons.  The initial notice will also indicate that the Parties have agreed to the prospective award of attorneys' fees as detailed above.

## VI.    CONSTRUCTION, EFFECT, AND TERM OF AGREEMENT

### A. Binding Effect

69.    This Agreement is binding upon Plaintiffs and the class, the Defendant named in this lawsuit in his official capacity, and on Defendant's successors in office, employees and agents.

### B. Release

---

[3] In the event that Defendant retains Dr. Ray's services in a matter that the parties agree is unrelated to this litigation and Agreement, the Defendant will retain privilege in accordance with federal law.

70.     All claims for declaratory and injunctive relief asserted in the Complaint

shall be finally and fully settled and released, subject to the terms and

conditions of this Agreement, which the Parties enter into freely, voluntarily,

knowingly, and with the advice of counsel.  The named Plaintiffs and unnamed

class members hereby release the Defendant in his official capacity, and all

other Defendants in this case in all their capacities, from, and are barred and

precluded from prosecuting any claims, causes of action or requests for any

injunctive or declaratory relief that have been asserted in this litigation,

provided that in no event shall this release be deemed to release or otherwise

affect in any way: (a) any claim for money damages or (b) any claim regarding

any act, incident, or event that occurs after the expiration of the Agreement.

### C. Severability

71.     The obligations governed by this Agreement are severable.  If for any

reason a part of this Agreement is determined to be invalid or unenforceable,

the presumption will be that such a determination shall not affect the remainder.

### D. Modification

72.     The Parties may jointly stipulate to make changes, modifications, and

amendments to the requirements of this Agreement.

### E. Execution and Effective Date

30

73.    This Agreement may be executed in multiple counterparts and emailed or faxed signatures will be valid and enforceable.  This Agreement shall be effective upon the approval of this Agreement by the Court and entry of this Agreement as an order of the Court.

**[SIGNATURES ON FOLLOWING PAGE]**

**REVIEWED AND AGREED TO BY:**

**FOR PLAINTIFFS:**

/s/Atteeyah Hollie
Ga. Bar No. 411415
Ryan Primerano
Ga. Bar No. 404962
SOUTHERN CENTER
FOR HUMAN RIGHTS
60 Walton Street, N.W.
Atlanta, Georgia 30303
(404) 688-1202
(404) 688-9440 (fax)
ahollie@schr.org

/s/ Devon Orland
Ga. Bar No. 554301
Anne Kuhns
Ga. Bar No. 149200
Georgia Advocacy Office
1 West Court Square
Decatur, Georgia 30030
dorland@gao.org

/s/Jarred Klorfein
Ga. Bar. No.  562965
Michael A. Caplan
Ga. Bar. No. 601039
CAPLAN COBB
75 Fourteenth Street NE Suite 2750
Atlanta, Georgia 30309
jklorfein@caplancobb.com

*Counsel for Plaintiffs*

**FOR DEFENDANT:**

Pat Labat
Fulton County Sheriff
s/ Amelia Joiner
OFFICE OF THE COUNTY ATTORNEY
141 Pryor Street, SW
Atlanta, Georgia 30303
(404) 612-0246
(404) 730-6324 (fax)

*Counsel for Defendant*

32