# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |  |
|---|---|---|
| GEORGIA ADVOCACY OFFICE, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| v. | ) ) | NO. 1:19-CV-1634-WMR |
| PATRICK LABAT, | ) ) | |
| Defendant. | ) ) ) | |

## PLAINTIFFS' MOTION FOR FINDING DEFENDANT IN MATERIAL BREACH OF SETTLEMENT AGREEMENT AND MOTION TO EXTEND AGREEMENT

Devon Orland
Anne Kuhns
GEORGIA ADVOCACY OFFICE
1 West Court Square
Suite 625
Decatur, Georgia 30030

Atteeyah Hollie
SOUTHERN CENTER
FOR HUMAN RIGHTS
60 Walton Street, NW
Atlanta, Georgia 30303

Michael A. Caplan
Jarred A. Klorfein
CAPLAN COBB LLC
75 Fourteenth Street, NE, Suite 2700
Atlanta, Georgia 30309

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................III

INTRODUCTION.............................................................................1

BACKGROUND...............................................................................2

I.     After finding "repulsive" conditions in the jail that needed to be "remedied immediately," the court entered a preliminary injunction. ...........................................................................2

II.    The parties entered into a settlement agreement requiring defendant to provide minimum conditions and to abide by reporting requirements.......................................................4

     A.    The Agreement requires minimum offerings of several categories of out-of-cell time......................................5

     B.    The Agreement requires that Defendant track and report these offerings to Plaintiffs.........................................6

     C.    Defendant cannot deny out-of-cell time absent "substantial" safety concerns and additional review......................................7

III.   Plaintiffs have monitored compliance over the past year and determined defendant is not complying with the agreement...............8

     A.    Defendant has not maintained an accurate tracking system.......8

     B.    Defendant has not provided records consistently confirming which individuals it identifies as Covered Persons, and Defendant has not shown Covered Persons are offered the required out-of-cell time.........................................9

C.    Plaintiffs' additional investigation confirms Covered Persons are not receiving required out-of-cell time. ...............10

IV.    Defendant's compliance monitor has confirmed defendant's lack of a reliable tracking system. .....................................12

V.    The agreement provides for extension of the compliance period upon a finding of material breach............................16

ARGUMENT .................................................................................21

I.    Legal standard....................................................................22

II.    Defendant is in material breach of several requirements in the agreement............................................................................23

A.    Defendant is in material breach of the tracking and reporting requirements..............................................23

B.    Defendant is in material breach of the out-of-cell requirements. ...........................................................24

C.    Defendant is in material breach of the denial reporting requirements. ...........................................................25

CONCLUSION ..............................................................................25

# TABLE OF AUTHORITIES

**Cases**

*F.T.C. v. Leshin*,
   618 F.3d 1221 (11th Cir. 2010).............................................................22

*Mercer v. Mitchell*,
   908 F.2d 763 (11th Cir. 1990)..............................................................22

*Newman v. Graddick*,
   740 F.2d 1513 (11th Cir. 1984)............................................................22

*Reynolds v. Roberts*,
   207 F.3d 1288 (11th Cir. 2000)............................................................22

*Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*,
   793 F.2d 1529 (11th Cir. 1986)............................................................23

## INTRODUCTION

Plaintiffs filed this suit to remedy unconstitutional and inhumane jail conditions that the Court described as "repulsive." Doc. 73 at 54. The jail's persistent practice of holding women with serious mental illness ("SMI") in their cells for 23 to 24 hours per day frequently resulted in women exhibiting a deteriorated mental state, such as feces-smearing, head-banging, and repeated suicidal behaviors. After the Court entered a preliminary injunction requiring modest out-of-cell time and tracking requirements while the case progressed, the parties ultimately reached resolution. Under the Settlement Agreement ("Agreement") that was approved on April 4, 2022, doc. 343, Defendant agreed to many of the same out-of-cell time requirements imposed by the preliminary injunction (and more), along with additional reporting requirements.

Over the past year, Plaintiffs have notified Defendant of numerous violations of the Agreement, including failing to make the required out-of-cell time offerings and failing to track and report its conduct as required by the Agreement. Almost a year into the Agreement, Defendant's own expert (and self-chosen monitor) concedes that the jail continues to maintain multiple, conflicting time-tracking systems that make it difficult (and in some cases impossible) to ensure women with SMI are receiving required out-of-cell time.

Defendant still fails to abide by the Agreement terms: Defendant does not consistently track which individuals are covered by the Agreement or whether those individuals are offered the required out-of-cell time.

The Agreement is normally scheduled to expire on April 4, 2023, 12 months following settlement approval. But the Agreement also provides that, should Defendant fail to abide by *any* of the requirements in the Agreement, Plaintiffs may move the Court to find a material breach, and if the Court so finds, the Agreement is automatically extended for an additional six months.

In light of Defendant's ongoing violations, Plaintiffs respectfully request that the Magistrate Court[1] set a hearing and make a finding of material breach to extend the Agreement for six months.

## BACKGROUND

### I. After finding "repulsive" conditions in the jail that needed to be "remedied immediately," the Court entered a preliminary injunction.

Plaintiffs filed this lawsuit to remedy inhumane and unlawful treatment of women with SMI in Defendant's custody who were being housed in the South Fulton Jail. In August 2018, Plaintiffs notified Defendant of egregious conditions, including women with SMI being confined for 24 hours per day, 7 days per week

---

[1] Per the Agreement, the issue of material breach is submitted to the Magistrate Court for determination following a hearing. Doc. 343 ¶¶ 10, 61.

2

in cells that "smell[ed] overwhelmingly of feces," and individuals being left in their cells with "feces-matted hair." Doc. 16-19 at 4–5. Defendant responded that the jail was "limited by human resources and training," (Doc. 16-19 at 15), but was nevertheless working to improve conditions. *Id.* ("the Sheriff's office is constantly trying to improve . . . ."). But eight months later, in April 2019, the inhumane conditions remained. Plaintiffs therefore brought this suit, moved to certify a class, and sought a preliminary injunction. Docs. 1, 8, 16.

After three days of testimony at the preliminary injunction hearing, docs. 62, 68, 69, the Court found the conditions were "repulsive" and "something that's got to be remedied and needs to be remedied immediately." Doc. 73 at 54. The Court further found that Defendant subjected women with SMI to prolonged solitary confinement, confining them to their cells for 23 to 24 hours per day, at times denying them even the opportunity to bathe. Doc. 94 at 5–6, 8. Under these conditions, the mental health of women with SMI significantly deteriorated, with women exhibiting symptoms of mental health crisis such as feces-smearing, head-banging, and repeated suicidal behaviors. *Id.* at 12–13. The conditions were so poor that at least one woman died "as a result of ingesting plastic items after being isolated for months inside a trash-strewn [] cell." *Id.* at 38.

The Court also noted that Defendant's "existing system—a set of at least three sometimes conflicting logbooks containing handwritten, often undecipherable entries—makes it all but impossible . . . to ascertain who gets out of her cell and for how long." *Id.* at 48. The Court concluded that "establish[ing] a system to track each individual's out-of-cell time is, therefore, necessary to ensure that women are offered regular out-of-cell time and to ensure that Defendant[] appropriately document[s] its compliance with the Court's order." *Id.* at 49.

The Court therefore entered a Preliminary Injunction Order requiring Defendant to remedy numerous issues while the case proceeded. *Id.*

## II.  **The parties entered into a settlement agreement requiring Defendant to provide minimum conditions and to abide by reporting requirements.**

The parties eventually reached a resolution of this case, and on April 4, 2022, the Court approved a final Settlement Agreement ("Agreement"). Doc. 343.[2] The Agreement requires that Defendant provide certain minimum conditions to "Covered Person[s]," who are defined as individuals "who experience serious mental illness and cannot function within the general population of the South Fulton Jail because of the nature or severity of their psychiatric disability." Doc.

---

[2] Citations to specific paragraphs in Doc. 343 are to the provisions in the Agreement.

343 ¶ 15.[3] To ensure that the conditions of confinement do not cause further psychological harm, the Agreement requires both that Defendant offer certain minimum amounts of out-of-cell time and accurately track and report compliance.

**A. The Agreement requires minimum offerings of several categories of out-of-cell time**.

Defendant is required to offer minimum amounts of out-of-cell time on a daily basis. Defendant must: (a) offer "four (4) hours of daily out-of-cell time . . . five (5) days per week" (*id.* ¶ 22); (b) one of those hours must include access to the Yard (an outdoor recreation area) or Gym (*id.*); (c) offer "one (1) hour of daily out-of-cell time . . . on the two days a week that the Covered Person does not receive four hours of daily out-of-cell time" (*id.*); and (d) offer "therapeutic activities . . . on at least five (5) days each week for at least 2 hours per day" (*id.* ¶ 29).

Given that individuals with SMI might refuse out-of-cell time, and such refusals over time could indicate decompensation of their mental state, the Agreement also requires that "[o]n the days where Covered Persons do not receive at least four (4) hours of out-of-cell-time, mental health professionals will conduct rounds, communicate with each Covered Person, and provide therapeutic activities

---

[3] Although the Agreement references "South Fulton Jail," Defendant moved all individuals from that facility to the Atlanta City Detention Center ("ACDC") in December 2022. The parties have continued to treat the Agreement requirements as applying to persons housed in ACDC.

or referral . . . ." *Id.* ¶ 22. For the same reason, if a "Covered Person refuses out-of-cell time for seventy-two (72) hours or more," Defendant must make a referral "to a mental health professional who shall conduct a meaningful assessment of the Covered Person's well-being, assess for decompensation, and take appropriate steps to refer that person to a higher level provider as indicated." *Id.* ¶ 27.

**B. The Agreement requires that Defendant track and report these offerings to Plaintiffs.**

To ensure compliance with the above-described out-of-cell time requirements, the Agreement requires that Defendant adhere to specific reporting metrics. Defendant must track out-of-cell times using NoteActive, an electronically searchable reporting database, or a similar tracking system. *Id.* ¶ 23. In that system, Defendant is required to record the "***exact times***" of the out-of-cell time offerings, including out-of-cell time, Yard or Gym time, and therapeutic activities:

> Defendant shall maintain a record of the **exact times** that the Covered Person is offered out-of-cell time and the exact times at which the Covered Person returns to their cell if the out-of-cell time offer is accepted. Such information **shall be recorded through Note Active or a similar tracking system**. Reports shall be generated and provided, in electronic format, to Plaintiffs' counsel biweekly. The reports shall include, for each individual by name and cell number, the date the person was offered out-of-cell time, **the exact time** the person was **offered out-of-cell time**, the exact time the individual left their cell for the **Yard or Gymnasium**, the exact time they returned to their cell from the Yard or Gymnasium, the exact time they began **therapeutic activities**, and the exact time they returned to their cell after completing therapeutic activities.

6

*Id.* (emphasis added). Defendant is further required to provide to Plaintiffs records that track out-of-cell time, instances where such offerings are refused, denials of time by Defendant, and several other metrics, such as which individuals are listed on suicide watch. *Id.* ¶ 50. The purpose of these reports is to ensure both parties are able to accurately track Defendant's compliance with the Agreement's out-of-cell and other requirements.

### C. Defendant cannot deny out-of-cell time absent "substantial" safety concerns and additional review.

Defendant is permitted to deviate from the daily out-of-cell requirements *only* "where doing so is necessary to prevent an immediate and substantial risk of serious harm to a person." *Id.* ¶ 24. But in those instances, Defendant is subject to additional reporting requirements to document the denial of out-of-cell time.

For one, "the specific reasons for the denial" must "be fully documented, to include the name of the Covered Person, date and time of out-of-cell time denial, and a detailed, specific reason for the denial." *Id*. In addition, Defendant is required to have a "correctional supervisor" review the denial every 24 hours to make a determination of whether the denial "remains necessary to prevent an immediate and substantial risk of serious harm to a person." *Id*. ¶ 25. And the Agreement requires that "a member of the mental health staff [] visit and assess the Covered

Person at least once every 24-hour period." *Id.* Finally, a "licensed mental health professional must approve in writing a denial of out-of-cell time" that lasts more than 48 hours. *Id.*

### III. Plaintiffs have monitored compliance over the past year and determined Defendant is not complying with the Agreement.

Plaintiffs have monitored Defendant's compliance over the past year and determined that Defendant is not abiding by the terms in the Agreement.

### A. Defendant has not maintained an accurate tracking system.

As an initial matter, Defendant has consistently failed to provide accurate or consistent records to track the metrics required under the Agreement. Although the Agreement requires that Defendant record out-of-cell time offerings through NoteActive or a similar tracking system, Defendant still maintains multiple systems to track out-of-cell time—NoteActive and handwritten logs. Ex. 1, "C. Childs Decl." ¶ 11.[4] But neither system provides a consistent record of out-of-cell time. *Id*. ¶ 12. Plaintiffs have identified numerous problems with Defendant's bifurcated tracking system, including conflicts in housing locations, inconsistencies regarding whether a Covered Person was offered out-of-cell time,

---

[4] Declarations are submitted as numbered exhibits. All remaining exhibits are letter exhibits.

8

and conflicting records of whether Covered Persons had refused or were denied out-of-cell time by Defendant. *Id*. ¶¶ 12–13.

These reporting problems are not limited to out-of-cell time. Plaintiffs have also identified inaccuracies in other required reports such as the list of which individuals are placed on suicide watch. C. Childs Decl. ¶ 23.

### B. Defendant has not provided records consistently confirming which individuals it identifies as Covered Persons, and Defendant has not shown Covered Persons are offered the required out-of-cell time.

Crucially, the reports Defendant provides do not consistently confirm which individuals are Covered Persons at any given time. Instead, Defendant has offered a shifting answer of how it identifies Covered Persons, where those individuals are located, and how Defendant keeps track of Covered Persons to ensure they are offered the required out-of-cell time. C. Childs Decl. ¶¶ 6–10; Exs. R at 2–6, S at 1–2. To date, Plaintiffs are "not aware of any list produced by Defendant that reliably identifies all individuals Defendant considers Covered Persons." C. Childs Decl. ¶ 6.

This highlights another reporting issue: without Defendant identifying who is a Covered Person, Plaintiffs cannot confirm that Defendant is providing records demonstrating all Covered Persons are offered the requirements under the Agreement. To the contrary, for certain Covered Persons, most notably those

9

housed in areas outside the mental health pods, such records are often omitted.

*Id*. ¶¶ 14–22, Exs. B, C.

### C. Plaintiffs' additional investigation confirms Covered Persons are not receiving required out-of-cell time.

Plaintiffs have also independently confirmed that Defendant is not meeting its out-of-cell time obligations under the Agreement. Multiple detained people have confirmed what the records (or absence of records) indicates that individuals are *still* being denied the required out-of-cell time in violation of the Agreement. Ex. 2, "C. Ca. Decl." ¶¶ 5–6 (describing denial of "out of cell time including free time, recreation, and group" in February and March 2023); Ex. 3, "S.H. Decl." ¶ 9 (describing denial of out-of-cell time while placed on lockdown); Ex. 4, "Q.J. Decl." ¶¶ 4–5, 7, 9–10 (describing denials of out-of-cell time in both the prior and current facilities). And such denials have resulted in worsening conditions for Covered Persons.

As was the case before the Preliminary Injunction and settlement, the denial of required out-of-cell time since April 2022 has had significant negative impacts on Covered Persons' mental health. For example, C.Ch., a woman with schizophrenia, psychotic disorder, and other mental illnesses who has been housed in general population at certain periods of time since April 2021, has reported instances where women experiencing mental health crises were left in a cell

covered in feces. Ex. 5, "C.Ch. Decl." ¶ 6. Equally troubling, C.Ch. has reported suicidal ideation to staff—and has engaged in multiple suicide attempts in the past year. *Id.* ¶¶ 6–7. But in response, at least one of Defendant's officers mocked C.Ch. by saying "You didn't die, huh?" *Id.*[5]

C. Ch. is not the only individual who witnessed the return of the "repulsive" conditions that initially triggered the Court's immediate intervention. Q.J. began "hearing voices" after she was repeatedly denied out-of-cell time. Q.J. Decl. ¶¶ 4– 5, 7, 9–10, 26. *See also* Ex. 6, "S.R. Decl." ¶ 14 (describing officers ignoring her suicidal ideation).

A.T. was an individual housed in ACDC who was previously taken to another one of Defendant's facilities, the Rice Street jail, for a medical issue. Ex. 7, "A.T. Decl." ¶¶ 4, 5. There she encountered A.N.[6] and observed that A.N. was experiencing a mental health crisis and was "covered in feces." *Id*. ¶¶ 6–8.

---

[5] While C.Ch. has not been identified by Defendant as a Covered Person—which itself is concerning given her serious mental illness and suicide attempts—she has simultaneously been listed in some of Defendant's reports to Plaintiffs that purported to track out-of-cell time denials for Covered Persons. *See, e.g.*, Ex. V. (listed on document with PDF title "CP Denied Jan17-to-Jan23").

[6] Covered Persons are brought to Rice Street if their conditions have deteriorated and they need a higher level of care.

Although A.N. was covered in feces, the staff refused A.T.'s request for A.N. to leave her cell to bathe despite A.N. "beg[ging]" to shower. *Id*. ¶¶ 9, 15.

The staff then waited *six days* before finally agreeing to A.T.'s request to allow her "to take A.N. to the shower and wash the feces off her hair and body." A.T. Decl. ¶ 16. By that time, A.N.'s clothing was "saturated with feces and she had sores on her thighs." *Id*. ¶ 18. Even after A.T. was finally permitted to wash A.N., the staff took another *three days* to provide A.N. clean pants. *Id*. ¶ 24. Unfortunately, Defendant's failure to comply with mandated out-of-cell requirements is causing the very harms the Agreement was designed to prevent. These repulsive conditions highlight the need for Plaintiffs to receive clear and consistent reporting under the Agreement in order to assess compliance.

## IV. Defendant's compliance monitor has confirmed Defendant's lack of a reliable tracking system.

The Agreement also provides for a compliance monitor, Dr. Ray, to assist with monitoring implementation of the Agreement. Doc. 343 at ¶ 68. Dr. Ray—who Defendant originally hired as its own expert in this case—has repeatedly found many of the same ongoing issues that Plaintiffs raised.

On September 23, 2022, Dr. Ray reviewed some of the concerns raised by Plaintiffs. Ex. A. He found "inconsistencies between the paper out-of-cell records and NoteActive reports." *Id.* Dr. Ray also acknowledged problems with tracking

denials of out-of-cell time, stating there were "opportunities to improve documentation of denied out-of-cell time by recording when a patient continues to present an imminent risk of harm." *Id.*[7]

On September 30, 2022, Dr. Ray responded to additional concerns raised by Plaintiffs. Ex. C. Dr. Ray again found differences between "paper logs and the electronic log." *Id* at 1. He suggested "discuss[ing] options to resolve these concerns [because] [i]t can be a bit challenging to clearly interpret what out-of-cell time is being offered on both logs." *Id.*

On October 17, 2022, Dr. Ray again agreed with even more concerns: "[a]s I work through the list of concerns and names provided previously, with few exceptions, I find the NoteActive and paper documentation conflicts [Plaintiffs] raise." Ex. D at 2.  He not only recognized conflicts between the records, but also the *absence* of entire records: "Rec and Therapeutic time not being reported in NoteActive when it's reported on the paper log ***or not reported at all***." *Id.*

---

[7] Plaintiffs note that, under the terms of the Agreement, the monitor is required to provide reports to Plaintiffs every 60 days. Doc. 343 ¶ 68. ("Dr. Ray will provide Plaintiffs' counsel with all reports related to compliance and shall, at a minimum, evaluate compliance every 60 days."). However, Defendant instructed Dr. Ray that the Agreement did not require him to issue *any* written report. Ex. B at 5 (Dr. Ray emailing Defendant: "You stated that no written report was required in the Settlement Agreement and stated not to write a report."). Thus, Dr. Ray has provided analysis primarily in response to Plaintiffs' requests.

(emphasis added). He continued by noting there were still issues with identifying

where Covered Persons were located. *Id.* ("Additionally, I find problems with

locations in the NoteActive report.").

That same day, Dr. Ray attached an analysis of NoteActive reports: "A

deeper analysis not needed to conclude that offered recreation and therapeutic time

is not being documented consistently or not being offered as frequently as

indicated in the Agreement." *Id.* at 1. He concluded "the NoteActive system and

use needs ***prescriptive attention*** to ensure that it is consistently reliable for

compliance monitoring and assessment." *Id* (emphasis added).

On October 18, 2022, Dr. Ray submitted the following log of findings and

recommendations in response to yet another list of Plaintiffs' concerns:

- "Monitor finds similar conflicts between electronic and paper OOC records. Such conflicts makes consistent assessment of OOC compliance difficult and unreliable overall. Monitor recommendations: reconcile document conflicts and address causes for conflicts to ensure consistently reliable compliance documentation."

- "Conflicting out time indicated between records. . . . Monitor recommendations: reconcile NoteActive, paper OOC log, and EMR documented time conflicts and ensure document consistency. Add tables to clinical forms to document encounter start and stop times."

- Responding to Plaintiffs' concern that "not all Covered Persons appear on NoteActive spreadsheets or PDFs daily, and when Covered Persons appear on NoteActive records, there is often only one entry for one type of out-of-cell time per day . . . there should be a minimum of three entries for each

person at least five days per week to reflect free time, recreation time, and either group or structured individual time/individual therapy," monitor responded "Monitor concurs with plaintiff's concern."

- In response to Plaintiffs' concern that "structured individual time/individual therapy is rarely documented, even when there is documentation that group was canceled or refused," monitor responded "Monitor concurs with plaintiff's concern."

Ex. E at 3. On January 16, 2023, Dr. Ray provided additional responses to even more concerns Plaintiffs raised. Ex. F. These included the following findings:

- In response to Plaintiffs seeking confirmation of whether D.M. was a Covered Person and whether she was offered the required OOCT, the monitor found "The documentation inconsistencies or why the identified [Covered Person] is housed in A POD rather than an MHSU POD is unclear. . . . It is unclear whether [D.M.] was actually an Identified [Covered Person]." The monitor therefore recommended Defendant "Ensure Identified [Covered Person] activities are consistently and accurately documented."

- For another individual, K.C., the monitor confirmed it was "unclear whether OOCT tracking was required due to documentation inconsistencies."

- The monitor noted J.C. "appears to be a covered person" and that "Documentation challenges continue. NoteActive is not as complete as the paper OOCT log. We are unable to verify the accuracy of either record."

- The monitor noted ongoing issues with the record generally, including "OOCT compliance cannot be determined on the record" and "NoteActive OOCT report indicates problems with tracking"

*Id.* at 4–6, 9–10 (of attachment).

On January 19, Dr. Ray provided a scorecard to assess Defendant's compliance with the Agreement. As to Paragraphs 22, 23, and 24 of the

Agreement, Dr. Ray found "OOCT tracking records do not consistently evidence compliance as stated." Ex. G at 2 (of attachment 2). As to Paragraphs 25, 27, 29, and 31, he found "OOCT and EMR records do not consistently evidence compliance." *Id.* at 3–4 (of attachment).[8]

## V. The Agreement provides for extension of the compliance period upon a finding of material breach.

Defendant is required to "fully implement" the requirements within 21 days of entering into the Agreement. Doc. 343 ¶ 7.  However, if the requirements are not fully implemented, Plaintiffs may notify Defendant of a material breach. *Id*. Defendant may respond, and the parties then confer regarding the material breach. *Id.* ¶ 60. Defendants are permitted 30 days to cure the material breach but "[i]f Plaintiffs determine that Defendant has not cured the material breach within 30 days from initial notice," Plaintiffs may seek a finding of material breach by filing a motion with the Court. *Id.* ¶¶ 60–61.

In the event the Court finds a first material breach, the Agreement is extended six months. *Id.* ¶ 8.[9] If there is no material breach, the Agreement expires

---

[8] Plaintiffs do not agree with all of Dr. Ray's findings. But, as to these areas, there should be no dispute that these identified problems did, in fact, occur.

[9] Upon a second material breach, the Agreement is converted into a consent order. Dkt. 343 ¶ 9.

after 12 months. Doc. 343, Final Order at 21 ("The Settlement Agreement shall expire . . . 12 months from the date of entry of this Order unless there is an additional motion or finding by the Court . . . .").

Plaintiffs provided multiple notices of the repeated and ongoing issues described above to Defendant as required under the Agreement. Doc. 343 ¶ 60. For example, Plaintiffs sent letters providing notice of material breaches on April 22, June 2, July 7, 2022, and February 10, 2023. Exs. H, I, J, K.[10] These notices alerted Defendant to numerous material breaches with specific examples, including not reporting out-of-cell time offerings,[11] not documenting denials of out-of-cell time or the reasons for refusals of out-of-cell time,[12] and not producing accurate or

---

[10] The notices and Defendant's responses to the notices refer to numerous exhibits that have not been submitted with this Motion. At the Court's request, Plaintiffs can furnish copies of these exhibits.

[11] Ex. H at 1–2 (noting Covered Persons are housed outside of the mental health pods and requesting records for Covered Persons housed in all areas); Ex. I at 3–4 (again noting Covered Persons housed outside of the mental health pods and reiterating record request for Covered Persons housed in all areas); Ex. J at 1–5 (identifying additional Covered Persons regularly housed in areas outside mental health pods).

[12] Ex. H at 2–3 (noting the absence of any documentation for the reasons for refusals); Ex. I at 1–3 (noting lack of documentation to support denial of out-of-cell time); Ex. J at 1–2 (noting lack of documentation to support denial of out-of-cell time).

complete records.[13] And at Defendant's request, Plaintiffs provided additional

informal notices by email.[14]

Defendant has given a variety of excuses. *See, e.g.*, Exs. N, O, P, Q. One

repeated refrain is to claim that Plaintiffs are mistaken and then, only when

confronted with examples, by claiming such examples are the rare exception. For

example, when Plaintiffs informed Defendant that it had not provided records for

Covered Persons housed in H pod (a pod outside the designated "mental health"

pods of B, C, and G at the South Fulton Jail), Defendant first denied that *any*

Covered Persons were housed there: "they are not held in 'H' for any purpose."

Ex. O at 5. Then, after Plaintiffs provided an example of a Covered Person being

housed in H pod, Defendant claimed this was a one-time error. Ex. P at 2–3

(acknowledging S.K. was a Covered Person being housed in H pod but claiming it

was an "exception and an error" and not "the result of a consistent pattern").

This pattern has continued through the move to ACDC. Plaintiffs provided

notice that Covered Persons were being housed outside the current mental health

---

[13] Ex. H at 2 (noting Defendant produced records for only limited timeframes).

[14] Ex. L at 1 (confirming "Defendant's team expressed frustration over receiving multiple letters regarding Plaintiffs' concerns and hope that, moving forward, the parties can establish a more efficient mechanism for communication"); Ex. M at 1 (Defendant confirming "I do appreciate the opportunity to respond and the less-intrusive nature of email communications. I hope we can continue . . . .").

pod, 4NE, and not being provided the requirements under the Agreement. Ex. K

at 6. Defendant responded by equivocating between denying that Covered Persons

are regularly housed outside of 4NE, Ex. Q at 4 ("it is not a routine practice to

house Covered Persons outside of 4NE"), but simultaneously acknowledging there

are exceptions where Covered Persons are housed elsewhere. *Id.* ("it is possible

that Covered Persons have briefly been outside of the MHSU (4NE), those are

exceptions"). *See also* Ex. R (confirming Covered Persons housed outside 4NE).

Defendant also claims that, due to the dynamic nature of one's mental

health, a person can frequently be designated a Covered Person and then de-

designated as a Covered Person. Ex. R at 2–6.[15] But there are two problems with

this argument. First, Defendant has failed to provide a consistent and reliable

accounting of who is identified as a Covered Person and when they cease to be

considered a Covered Person. *See, e.g.*, C. Childs Decl. ¶¶ 6–10; Exs. R at 2–5, S

at 1–2. Second, where Plaintiffs are able to retroactively piece together records,

they have still identified examples where an individual was deemed a Covered

---

[15] Defendant ignores how the frequency with which it reclassifies individuals as Covered Persons may indicate that its procedures should be revised. Defendant also ignores that, per the mental health plan Defendant is required to follow under the Agreement, doc. 343 ¶ 33, Covered Persons should progress through the program to less acute care levels as their mental health improves, not be suddenly removed from the program.

Person at the time (a) they were improperly denied out-of-cell time, or (b) where Defendant failed to document that the Covered Person was offered out-of-cell time under the Agreement. C. Childs Decl. Exs. a, b.

Defendant also repeatedly responded that the documentation it provides is sufficient. For example, in order to meet the requirement that "the specific reasons for the denial" must "be fully documented," Doc. 343 at ¶ 24, Defendant initially claimed that a supervisor signature on the bottom of a handwritten log containing the names of multiple Covered Persons, some who were denied out-of-cell time, was sufficient. Ex. O at 2 ("That signature represents the supervisor's opinion that the inmate continues to be an immediate and substantial risk of serious harm to a person and that serves as the basis for the denial.").

At other times Defendant acknowledged further documentation was needed and agreed to rectify the issue. Ex. P at 1–2 ("the Sheriff recognizes that when a covered person is denied out of cell time, pursuant to paragraph 24, 'detailed, specific' reasons for the denial shall be 'fully documented'. We are currently working with our vendor to enhance Noteactive to increase the transparency of the

20

reasons for out-of-cell denials. Upcoming reports should contain a section which includes additional information regarding the basis for a denial . . . .").[16]

But despite its assurances, Defendant has not provided consistent or reliable documentation sufficient to confirm that it has met the requirements of the Agreement. In its most recent response to Plaintiffs' notices, it contends it is not in material breach of *any* portion of the Agreement. Ex. Q; *see also* Ex. U. Plaintiffs, therefore, filed this Motion requesting a hearing and seeking a determination of material breach.

## ARGUMENT

Defendant has failed to comply with several terms of the Agreement. The Court should therefore set a hearing and find a material breach.

---

[16] *See also* Ex. M at 2 (acknowledging changes in NoteActive had been implemented "but the Jail personnel have not yet been trained. I understand that may happen this week and in upcoming productions, you should start seeing those changes in reporting."); Ex. T at 1 ("you all had concerns, months ago, regarding denials of out of cell time and the Sheriff's reasons for a denial of out of cell time pursuant to paragraph 24 . . . .  I thought that we had cured this issue with specific changes to NoteActive that were being utilized by staff and I know I stated that to you.  I learned in our meeting this week that that was not the case. I want to apologize for that as I had been led to believe it was in fact being implemented. . . .  [W]e are working to have a meeting with staff at the South Annex to make sure they are utilizing this new feature and recording the specific reasons for denials of out of cell time.").

## I. Legal Standard

The standard for finding a material breach is the same standard as a contempt determination. Doc. 343 ¶ 10. A motion for contempt must cite the "provision at issue" and "allege[] that the defendant has refused to obey its mandate." *Reynolds v. Roberts*, 207 F.3d 1288, 1298 (11th Cir. 2000). "Once this prima facie showing of a violation is made, the burden then shifts to the alleged contemnor to produce evidence explaining [their] noncompliance at a 'show cause' hearing." *F.T.C. v. Leshin*, 618 F.3d 1221, 1232 (11th Cir. 2010).

To hold a defendant in contempt, the court must find by clear and convincing evidence: (1) that the defendant has not complied with the order; (2) that the order is valid; (3) that the terms of the order are clear; and (4) that the defendant is able to comply with the order. *Id*. at 1232. The only defense available in a contempt action requires proof that the defendant "either . . . did not violate the court order or that he was excused from complying." *Mercer v. Mitchell*, 908 F.2d 763, 768 (11th Cir. 1990). Efforts to comply must be done with "reasonable diligence" in order for them to be considered a valid defense. *Newman v. Graddick*, 740 F.2d 1513, 1525 (11th Cir. 1984). At minimum, "reasonable diligence" means that the offending party must "become aware of [its non-compliant behavior] quickly—through its own efforts, not those of [the

complainant]—and to set about correcting them." *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1537 (11th Cir. 1986).

## II.  Defendant is in material breach of several requirements in the Agreement.

The Court need only find a single material breach to warrant extending the Agreement. Doc. 343 ¶ 8. Here, Defendant is in material breach of multiple provisions relating to the reporting, out-of-cell, and denial requirements.

### A. Defendant is in material breach of the tracking and reporting requirements.

The first and most fundamental issue is that Defendant has failed to abide by the tracking and reporting requirements. Defendant is therefore in material breach of the reporting requirements under Paragraphs 23 and 50 of the Agreement. Those Paragraphs require Defendants to "maintain a record of the exact times" for each Covered Person for each of the out-of-cell offerings required. *Id.* ¶ 23. And Defendant must record those offerings by "Note Active or a similar tracking system." *Id.* And Defendant is required to produce those records. *Id.* ¶ 50.

Here, Defendant has not even made the threshold showing that it consistently tracks which individuals are covered by the Agreement because it cannot reliably identify all Covered Persons. C. Childs Decl. ¶¶ 6–10, Ex. a; Exs. R at 2–6, S at 1–2.

And as to the individuals it does identify, Defendant has continuously failed to produce complete and accurate records for Covered Persons or to provide an accurate electronic tracking system in NoteActive. Instead, Defendant continues to try to supplement the gaps with handwritten records. But these dual tracking systems are often in conflict, and neither provides a comprehensive accounting of out-of-cell time offered. C. Childs Decl. ¶¶ 11–13, Ex. a; Ex. A at 1; Ex. C at 1; Ex. D at 2; Ex. E at 3; Ex. F at 4–6, 9–10 (of attachment); Ex. G at 2 (of attachment 2). The Court should find material breach of the tracking and reporting obligations.

**B. Defendant is in material breach of the out-of-cell requirements.**

Defendant is also in material breach of the out-of-cell requirements under Paragraphs 22, 27, and 29 of the Agreement. These provisions require Defendant to offer daily out-of-cell time, including general out-of-cell time, Yard or Gym time, and therapeutic activities. Here, Defendant has failed to provide such offerings. This appears to have occurred most prevalently to Covered Persons housed outside of the mental health pods (previously B, C, and G pods but now 4NE). C. Childs Decl. ¶¶ 14–22, Ex. b. For example, recent records indicate Covered Persons may have been housed "for weeks" outside the mental health pod with no confirmation they were offered the required out-of-cell time. Moreover,

the recordkeeping violations discussed above have made it impossible to verify that Covered Persons have been offered out-of-cell time in accordance with the agreement, frustrating Plaintiffs' ability to monitor compliance.

**C. Defendant is in material breach of the denial reporting requirements.**

Finally, Defendant is in material breach of the denial reporting requirements under Paragraph 24 of the Agreement by failing to document the specific reasons for denial of out-of-cell time based on an immediate and substantial risk of serious harm to a person. Covered Persons continue to be denied out-of-cell time, as reflected in testimony and the records. C.Ca. Decl. ¶¶ 5–6 (describing denial of "out of cell time including free time, recreation, and group" in February and March 2023); S.H. Decl. ¶ 9; Q.J. Decl. ¶¶ 4–5, 7, 9–10. Yet Defendant does not follow the denial review procedure and reporting requirements, instead claiming no such denials occur. C. Childs Decl. Ex. a; Ex. Q. Defendant is in material breach of the denial reporting requirements.

## CONCLUSION

For the reasons above, the Court should set a hearing on this Motion and find Defendants material breach of the Agreement and extend the Agreement.

[signature on following page]

Respectfully submitted, this 30th day of March, 2023.


Devon Orland                          Atteeyah Hollie
Ga. Bar No. 554301                    Ga. Bar No. 411415
Anne Kuhns                            SOUTHERN CENTER
Ga. Bar No. 149200                    FOR HUMAN RIGHTS
GEORGIA ADVOCACY OFFICE               60 Walton Street, NW
1 West Court Square                   Atlanta, Georgia 30303
Suite 625                             (404) 688-1202
Decatur, Georgia 30030                (404) 688-9440 (fax)
(404) 885-1234                        sgeraghty@schr.org
(404) 378-0031 (fax)
dorland@thegao.org                    */s/ Jarred A. Klorfein*
                                      Michael A. Caplan
                                      Ga. Bar No. 601039
                                      Jarred A. Klorfein
                                      Ga. Bar No. 562965
                                      CAPLAN COBB LLC
                                      75 Fourteenth Street, NE
                                      Suite 2700
                                      Atlanta, Georgia 30309
                                      (404) 596-5600
                                      (404) 596-5604 (fax)
                                      mcaplan@caplancobb.com
                                      jklorfein@caplancobb.com

*Counsel for Plaintiffs*

26

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this document has been prepared in compliance with Local

Rule 5.1(C) using 14-point, Times New Roman font.

This 30th day of March, 2023.

<u>*/s/ Jarred A. Klorfein*</u>

## <u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed the foregoing using the CM/ECF system, which will send notification of such filing to all counsel of record.

This 30th day of March, 2023.

*/s/ Jarred A. Klorfein*