# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |  |
|---|---|---|
| GEORGIA ADVOCACY OFFICE, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| v. | ) ) | NO. 1:19-CV-1634-WMR-RDC |
| PATRICK LABAT, | ) ) | |
| Defendant. | ) ) ) | |

## PLAINTIFFS' MOTION FOR SECOND FINDING OF MATERIAL BREACH AND MOTION TO STAY BRIEFING SCHEDULE

Devon Orland
Anne Kuhns
GEORGIA ADVOCACY OFFICE
1 West Court Square
Suite 625
Decatur, Georgia 30030

Atteeyah Hollie
Ryan Primerano
SOUTHERN CENTER
FOR HUMAN RIGHTS
60 Walton Street, NW
Atlanta, Georgia 30303

Michael A. Caplan
Jarred A. Klorfein
CAPLAN COBB LLC
75 Fourteenth Street, NE, Suite 2700
Atlanta, Georgia 30309

*Counsel for Plaintiffs*

October 3, 2023

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

BACKGROUND ....................................................................................2

    A.     Preliminary Injunction........................................................2

    B.     Settlement Agreement .........................................................3

          1.    Out-of-cell time..........................................................3

          2.    Documentation, monitoring, and intervention...........4

          3.    Access to reading material .......................................7

          4.    Staffing, training, and supervision...........................7

    C.     Defendant's Ongoing Failure to Comply with the Agreement............8

          1.    Defendant does not maintain an accurate out-of-cell time tracking system ........................................................9

          2.    Defendant does not document the reasons when Covered Persons refuse out-of-cell time ...................................10

          3.    Defendant does not maintain accurate lists of Covered Persons ...................................................................11

          4.    Defendant denies Covered Persons the required out-of-cell time................................................................12

          5.    Defendant does not refer Covered Persons who refuse out-of-cell time to a higher-level provider.................13

          6.    Defendant does not consistently monitor the mental condition of Covered Persons on days when they are not afforded four hours or more of out-of-cell time .......13

7.      Defendant does not provide secular reading material to Covered Persons .......................................................................13

8.      Defendant does not sufficiently staff the jail or train and supervise his staff members ......................................................14

D.      The Parties' Agreed Remedy for a Second Finding of Material Breach ..................................................................................14

ARGUMENT ........................................................................................16

I.      Defendant Is Materially Breaching the Agreement ......................................16

A.      Defendant Is in Material Breach of the Agreement's Tracking and Reporting Requirements ................................................18

B.      Defendant Is in Material Breach of the Agreement's Out-of-Cell Time Requirements ................................................................20

C.      Defendant Is in Material Breach of the Agreement's Safeguards for People Who Do Not Receive Four Hours Per Day of Out-of-Cell Time .....................................................21

D.      Defendant Is in Material Breach of the Agreement's Reading Material Requirements .......................................................22

E.      Defendant Is in Material Breach of the Agreement's Staffing, Training, and Supervision Requirements ...........................................23

II.     The Court Should Hold This Motion in Abeyance and Stay the Briefing Schedule Pending a Ruling on Plaintiffs' First Motion for a Finding of Material Breach ........................................................23

CONCLUSION ....................................................................................25

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# INTRODUCTION

Plaintiffs respectfully move the Court to find Defendant in material breach of the Settlement Agreement and convert the Agreement to a consent order. (*See* Doc. 343 ¶ 61).) As discussed below, Plaintiffs have identified material violations of the Agreement, including deficient (and, in some cases, falsified) records, failures to provide required amounts of out-of-cell time, failures to provide mental health monitoring when Covered Persons refuse or are denied out-of-cell time, and failures to adequately staff the jail and supervise jailers.

Although Plaintiffs' first motion for a finding of material breach (Doc. 350) remains pending, Plaintiffs file this motion now out of an abundance of caution to preserve the class members' rights under the Agreement. However, the Court's ruling on the pending motion may affect the viability of this motion and may also clarify certain issues presently disputed by the parties. Defendant rejected Plaintiffs' request to stay the filing of this motion until after the Court's ruling on the pending motion for material breach. Plaintiffs thus file this motion to preserve the issues presented but respectfully request that the Court hold this motion in abeyance, stay further briefing until the Court has ruled on the pending motion for a finding of material breach, and permit Plaintiffs to amend or supplement this motion within 28 days of the Court's ruling on the pending motion.

## BACKGROUND

### A.    Preliminary Injunction

Plaintiffs filed this lawsuit to remedy inhumane and unlawful treatment of women with serious mental illness (SMI) in Defendant's custody who were being housed in the South Fulton Jail.  After three days of testimony (Docs. 62, 68, 69), the Court granted a preliminary injunction, noting that the jail's conditions were "repulsive" and needed "to be remedied immediately."  (Doc. 73 at 54.)  The Court found that subjecting women with SMI to prolonged solitary confinement in unsanitary conditions caused their mental health to significantly deteriorate.  (*Id.* at 12–13.)  The Court also noted that Defendant's "existing system—a set of at least three sometimes conflicting logbooks containing handwritten, often undecipherable entries—makes it all but impossible . . . to ascertain who gets out of her cell and for how long."  (*Id.* at 48.)  The Court concluded that "establish[ing] a system to track each individual's out-of-cell time is, therefore, necessary to ensure that women are offered regular out-of-cell time and to ensure that Defendant[] appropriately document[s] its compliance with the Court's order."  (*Id.* at 49.)  The Court's preliminary injunction sought to remedy these and related issues while the case proceeded.  (*Id.*)

2

**B.    Settlement Agreement**

On April 4, 2022, the Court approved a final Settlement Agreement ("Agreement").  (Doc. 343.)[1]  The Agreement requires that Defendant provide certain minimum conditions to "Covered Person[s]," who are defined as individuals "who experience serious mental illness and cannot function within the general population of the South Fulton Jail because of the nature or severity of their psychiatric disability."  (Doc. 343 ¶ 15.)[2]  To ensure that the conditions of confinement do not cause further psychological harm, the Agreement requires Defendant to offer certain minimum amounts of out-of-cell time and accurately track and report compliance.

**1.    Out-of-cell time**

Defendant must offer minimum amounts of out-of-cell time on a daily basis. Defendant must offer "four (4) hours of daily out-of-cell time . . . five (5) days per week."  (Doc. 343 ¶ 22.)  One of those hours must include access to the yard (an outdoor recreation area) or gym.  (*Id.*)  Defendant must offer "therapeutic activities

---

[1] Citations to specific paragraphs in Doc. 343 are to the provisions in the Agreement that follows the Court's Order approving the Agreement.

[2] Although the Agreement references "South Fulton Jail," Defendant moved all individuals from that facility to the Atlanta City Detention Center ("ACDC") in December 2022.  The parties have continued to treat the Agreement requirements as applying to persons housed in ACDC.

. . . on at least five (5) days each week for at least 2 hours per day." (*Id.* ¶ 29.) Finally, Defendant must offer one hour of daily out-of-cell time "on the two days a week that the Covered Person does not receive four hours of daily out-of-cell time." (*Id.* ¶ 22.)

The Agreement recognizes that there may be instances where officers must deny out-of-cell time to a Covered Person, but it sets clear limits on that authority. Defendant is permitted to deviate from the daily out-of-cell requirements *only* "where doing so is necessary to prevent an immediate and substantial risk of serious harm to a person." (*Id.* ¶ 24.)

### 2. Documentation, monitoring, and intervention

To facilitate monitoring, the Agreement requires that Defendant adhere to certain documentation and reporting requirements. Defendant must track out-of-cell times using NoteActive, an electronically searchable reporting database, or a similar tracking system. (*Id.* ¶ 23.) In that system, Defendant is required to record the "*exact* times" of the out-of-cell time offerings, including out-of-cell time, yard or gym time, and therapeutic activities:

> Defendant shall maintain a record of the exact times that the Covered Person is offered out-of-cell time and the exact times at which the Covered Person returns to their cell if the out-of-cell time offer is accepted. Such information shall be recorded through Note Active or a similar tracking system. Reports shall be generated and

> provided, in electronic format, to Plaintiffs' counsel biweekly. The reports shall include, for each individual by name and cell number, the date the person was offered out-of-cell time, the exact time the person was offered out-of-cell time, the exact time the individual left their cell for the Yard or Gymnasium, the exact time they returned to their cell from the Yard or Gymnasium, the exact time they began therapeutic activities, and the exact time they returned to their cell after completing therapeutic activities.

(*Id.* (emphasis added).)  Defendant is further required to provide to Plaintiffs records tracking out-of-cell time, instances where such offerings are refused, reasons for refusals, denials of time by Defendant, and other matters, such as which individuals are listed on suicide watch.  (*Id.* ¶ 50.)  The purpose of these reports is to ensure that both parties, the Agreement's monitor, and the Court, are able to monitor Defendant's compliance with the Agreement's out-of-cell and other requirements.

Additional reporting requirements apply when Covered Persons are involuntarily denied out-of-cell time by Defendant's staff members.  "[T]he specific reasons for the denial" must "be fully documented, to include the name of the Covered Person, date and time of out-of-cell time denial, and a detailed, specific reason for the denial."  (*Id.*)  In addition, a "correctional supervisor" must review the denial every 24 hours to make a determination of whether the denial "remains necessary to prevent an immediate and substantial risk of serious harm to

a person." (*Id*. ¶ 25.)  And the Agreement requires that "a member of the mental health staff [] visit and assess the Covered Person at least once every 24-hour period." (*Id.*)  A "licensed mental health professional must approve in writing a denial of out-of-cell time" that lasts more than 48 hours.  (*Id.*)

Recognizing the harmful psychological effects of isolation on people with psychiatric disabilities, the Agreement requires special mental healthcare measures on days when Covered Persons do not receive four hours of out-of-cell time.  "On the days where Covered Persons do not receive at least four (4) hours of out-of-cell-time, mental health professionals will conduct rounds, communicate with each Covered Person, and provide therapeutic activities or referral to a higher-level provider if the Covered Person demonstrates evidence of distress or decline." (Doc. 343 ¶ 22.)

Special measures are likewise required when a class member refuses to participate in out-of-cell time for three days or longer:

> In the event that a Covered Person refuses out–of-cell time for seventy-two (72) hours or more, that Covered Person will be referred to a mental health professional who shall conduct a meaningful assessment of the Covered Person's well-being, assess for decompensation, and take appropriate steps to refer that person to a higher level provider as indicated.

(Doc. 343 ¶ 27.)  If the Covered Person continues to refuse out-of-cell time after

the initial 72-hour assessment, "the Covered Person will be reassessed at least once every 24 hours by a mental health professional." (*Id.*) To facilitate monitoring of these requirements, "Defendant shall maintain a record of (1) mental health referrals related to a Covered Person's refusal of out-of-cell time for greater than seventy-two (72) hours; and (2) the existence of a mental health assessment(s) of those Covered Persons who refuse out-of-cell time for a period greater than seventy-two (72) hours." (*Id.*)

### 3. Access to reading material

Although the Agreement sets a baseline for out-of-cell opportunities, the Agreement contemplates that Covered Persons will nonetheless spend most of their time locked inside of their cells. To mitigate the idleness and deleterious effects of being locked inside a cell most of the day, the Agreement requires Defendant to "provide Covered Persons with access to reading material, including soft bound books and newspapers." (Doc. 343 ¶ 34.) In addition, the Agreement requires that Covered Persons have access to a book cart "at least once per week" and that Defendant "make reasonable efforts to solicit Covered Persons' preferences for the material added to the book carts." (*Id.*)

### 4. Staffing, training, and supervision

Because compliance with the Agreement may demand more resources in

Covered Persons' housing unit than Defendant otherwise would allocate, the Agreement requires Defendant to "assign sufficient administrators, correctional officers and supervisors, and other staff members to" the jail "to carry out the terms of" the Agreement.  (Doc. 343 ¶ 28.)  The Agreement further requires that Defendant train those staff members in the provisions of the Agreement. Specifically, it provides that "[a]ll Fulton County Sheriff's Office employees who are involved in the daily operation of the South Fulton Jail will be trained on the provisions of this Agreement."  (Doc. 343 ¶ 56; *see also id.* ¶¶ 42-47 (requiring additional specialized training for staff members who work with or supervise Covered Persons).)  The Agreement provides that it is "binding" on Defendant's "employees and agents" (Doc. 343 ¶ 69), meaning that Defendant must ensure through training and supervision of his subordinates that the Agreement is implemented in accordance with its terms.

## C.    Defendant's Ongoing Failure to Comply with the Agreement

As discussed in Plaintiffs' pending motion for a finding of material breach (Doc. 350), Defendant has consistently violated key provisions of the Agreement. Several of those violations involve the same areas outlined in the pending motion and are addressed once again below.  In addition, several violations are being raised for the first time in this motion.

### 1. Defendant does not maintain an accurate out-of-cell time tracking system.

Defendant consistently fails to provide accurate or consistent records to track compliance with the Agreement. Instead of accurately tracking compliance with NoteActive or a similar tracking system, Defendant still maintains multiple systems purporting to document out-of-cell time—NoteActive and paper logs. But neither NoteActive entries nor paper logs provide a consistent record of out-of-cell time. Plaintiffs have identified numerous problems with Defendant's bifurcated tracking system, including conflicts in housing locations, inconsistencies regarding whether a Covered Person was offered out-of-cell time, and conflicting records of whether Covered Persons had refused or were denied out-of-cell time by Defendant. Similarly, Defendant consistently fails to document the reasons why Covered Persons refuse out-of-cell time.

Relatedly, Defendant has failed to train and supervise his personnel to ensure that they understand and honor the difference between a Covered Person's voluntary refusal to participate in out-of-cell time and a staff member's decision to deny out-of-cell time to a Covered Person. In numerous instances, Defendant's records show officers recording that a Covered Person "refused" out-of-cell time that other records or Covered Persons' reports show was not in fact offered. This is not surprising, since it is easier for overworked jailers at an understaffed facility

9

to claim that someone refused out-of-cell time, thereby avoiding the additional tracking and monitoring requirements attendant to denying out-of-cell time to a Covered Person.  The circumstances here clearly call for better training and supervision of the officers working with Covered Persons.  Yet Defendant continues to ignore the problem and deny the need for solutions.  He maintains, in the face of overwhelming evidence to the contrary, that no Covered Person is *ever* denied out-of-cell opportunities by jailers.  (*See* Ex. A; Ex. B; Ex. C.)

In addition to the jail staff's haphazard documentation of out-of-cell time, other records are similarly deficient.  For example, Defendant has failed to provide accurate lists of Covered Persons who have been placed on suicide watch or been hospitalized.  (*See* Doc. 343 ¶¶ 50(10), 50(12).)  As discussed below, Defendant has also failed to produce records of people who have refused out-of-cell time for more than 72 hours and failed to produce the required mental health assessments of those individuals.  (*See* Doc. 343 ¶ 27.)

### 2.    Defendant does not document the reasons when Covered Persons refuse out-of-cell time.

When Covered Persons refuse out-of-cell time, the Agreement requires Defendant to document the "name and cell location" of those individuals and the "reasons for the refusal if known."  (Doc. 343 ¶¶ 50(2), 50(4).)  Defendant must provide that documentation to Plaintiffs on a biweekly basis.  (*Id.*)  Defendant

continues to materially breach these provisions.  Defendant's records (both paper and NoteActive) seldom identify the reasons for Covered Persons' alleged refusals of free time, recreation or yard, or out-of-cell therapeutic activities such as "group."  Defendant maintains he simply does not know why Covered Persons refuse.  But his purported inability to identify the reason underlying a Covered Person's refusal to leave their cell is belied by mental health staff's practice of documenting these very reasons in Covered Persons' mental health records (a practice that ceased on June 28, 2023, after Plaintiffs flagged the inconsistencies between the electronic medical records and Defendant's records as described in subsections C.1 and C.4 of this brief).  Defendant's routine failure to document this information is a material breach of the Agreement.

### 3.    Defendant does not maintain accurate lists of Covered Persons.

Defendant still does not maintain or provide accurate lists of Covered Persons.  Defendant has given varying accounts of how he identifies Covered Persons, where they are located, and how his staff tracks them to ensure they are offered the required out-of-cell time.  As discussed in Plaintiffs' first motion for a finding of material breach, without an accurate list of Covered Persons, Defendant cannot ensure that the class members are receiving the out-of-cell time and other conditions they are entitled to, and Plaintiffs cannot confirm that Defendant is

following those requirements or even producing records for all Covered Persons. (*See* Doc. 350 at 9-10, 14-15).

### 4. Defendant denies Covered Persons the required out-of-cell time.

As discussed above, reviews of Defendant's records, including Covered Persons' medical records, show that certain Covered Persons are being involuntarily denied out-of-cell time by jailers despite records listing them as having "refused" to leave their cells. In addition to records reflecting impermissible denials, Plaintiffs have confirmed through interviews of Covered Persons that Defendant is not meeting its out-of-cell time obligations under the Agreement. Multiple detained people have stated that individuals are still being denied the required out-of-cell time in violation of the Agreement.

Regarding out-of-cell structured activities or "group" time, Defendant's own records show that group time is routinely terminated short of the two-hours-per-day minimum required under the Agreement. In some weeks, every session is cut short by approximately ten minutes or more per each time.

### 5. Defendant does not refer Covered Persons who refuse out-of-cell time to a higher-level provider.

Although Defendant's records indicate that numerous Covered Persons have allegedly refused out-of-cell time for 72 hours or longer at a time, Defendant has

not provided documentation of referrals or the resulting assessments required by

the Agreement.  At a hearing on this motion, Plaintiffs expect to show that the

required referrals and assessments likely have not occurred at all.  In turn,

Defendant has not maintained records of referrals or evaluations, nor has he

provided them to Plaintiffs as required under the Agreement.

> **6.    Defendant does not consistently monitor the mental condition of Covered Persons on days when they are not afforded four hours or more of out-of-cell time.**

Defendant's records show that, particularly on weekends, mental health staff

fail to conduct rounds and communicate with each Covered Person.  In a

significant number of cases, the records state that no mental health staff was

available due to callouts or other staffing problems.  (*See, e.g.*, Ex. B at 3.)  In

some cases, the lapses span multiple consecutive days.  (*See, e.g.*, *id.*)

> **7.    Defendant does not provide secular reading material to Covered Persons.**

Defendant has not provided reading materials to Covered Persons as

required by the Agreement.  During a June 28, 2023, site inspection, an officer

candidly informed Plaintiffs' counsel and the monitor that the only way Covered

Persons could access reading material was to purchase the material online or to

request spiritual texts from a chaplain.  When Plaintiffs' counsel and the monitors

conducted another site inspection in August 2023, multiple Covered Persons

reported that they were not provided books, newspapers, or similar reading material.

### 8.    Defendant does not sufficiently staff the jail or train and supervise his staff members.

The violations outlined above demonstrate that Defendant has not sufficiently staffed the jail or provided adequate training and supervision to his subordinates regarding their duties under the Agreement.  Otherwise, Defendant's records would not contain the same errors and false entries week after week, Covered Persons would not repeatedly be denied their rights under the Agreement, and Defendant's records would not specifically point out that mental health rounds did not occur due to "[n]o staff available."  (Ex. B at 3.)  Thus, Defendant has violated not only the substantive provisions of the Agreement but also the staffing, training, and supervision requirements that give effect to the substantive terms.

### D.    The Parties' Agreed Remedy for a Second Finding of Material Breach

The Agreement requires Defendant to "fully implement" its provisions. (Doc. 343 ¶ 7.)  If those provisions are not fully implemented, Plaintiffs may notify Defendant of a material breach.  (*Id*.)  Defendant then responds, and the parties confer.  (*Id.* ¶ 60.)  Defendants are permitted 30 days to cure the material breach but "[i]f Plaintiffs determine that Defendant has not cured the material breach

within 30 days from initial notice," Plaintiffs may seek a finding of material breach by filing a motion with the Court.  (*Id.* ¶¶ 60–61.)  Upon a second finding of material breach, the Agreement is converted into a consent order.  (Doc. 343 ¶ 9.)

Plaintiffs provided notice of the repeated and in most cases ongoing issues described above to Defendant as required under the Agreement.  (Ex. A; Ex. B.)  In a written response, Defendant declined to "address every allegation point by point."  (Ex. C.)  At a meeting on September 12, 2023, Defendant dismissed all recordkeeping errors as technicalities and refused to discuss specific solutions. (Ex. D (letter from Plaintiffs memorializing Defendant's positions).)  His only suggested response was to reiterate to his subordinates their general duty to follow the Agreement.  (*Id.*)  Defendant continued to insist that no Covered Persons had been denied out-of-cell time by jailers, claiming that medical records to the contrary reflected only misunderstandings by medical and mental health staff.  (*Id.*) Defendant did not respond at all to a subsequent letter addressing Defendant's failure to provide mental health monitoring of Covered Persons on days that they are not provided the full four hours of out-of-cell time.  (Ex. B.)  Plaintiffs therefore file this motion request a hearing and a finding by the Court of material breach.

15

## ARGUMENT

Because Defendant has failed to comply with the Agreement, the Court should set a hearing, find that Defendant has materially breached the Agreement, and convert the Agreement to a consent decree. However, because the Court's ruling on Plaintiffs' pending motion for a finding of material breach will determine whether this motion remains viable and clarify what constitutes a material breach in this case, the Court should hold this motion in abeyance and stay the briefing pending a ruling, and then permit Plaintiffs a reasonable 28-day period to supplement this motion in light of the Court's guidance.

## I.    Defendant Is Materially Breaching the Agreement.

The Agreement provides that the standard for finding a material breach is the same standard as a contempt determination. (Doc. 343 ¶ 10.) In a contempt proceeding, the movant must cite the "provision at issue" and "allege[] that the defendant has refused to obey its mandate." *Reynolds v. Roberts*, 207 F.3d 1288, 1298 (11th Cir. 2000). "Once this prima facie showing of a violation is made, the burden then shifts to the alleged contemnor to produce evidence explaining [their] noncompliance at a 'show cause' hearing." *F.T.C. v. Leshin*, 618 F.3d 1221, 1232 (11th Cir. 2010). To hold a defendant in contempt, the court must find by clear and convincing evidence: (1) that the defendant has not complied with the order;

(2) that the order is valid; (3) that the terms of the order are clear; and (4) that the defendant is able to comply with the order. *Id*. at 1232.

The only defenses available in a contempt action are that the defendant "did not violate the court order" or "was excused from complying." *Mercer v. Mitchell*, 908 F.2d 763, 768 (11th Cir. 1990). Efforts to comply must be done with "reasonable diligence" in order for them to be considered a valid defense. *Newman v. Graddick*, 740 F.2d 1513, 1525 (11th Cir. 1984). At minimum, "reasonable diligence" means that the offending party must "become aware of [its non-compliant behavior] quickly—through its own efforts, not those of [the complainant]—and to set about correcting them." *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1537 (11th Cir. 1986).

In addition, partial compliance is insufficient to evade a contempt finding. *See United States v. Hayes*, 722 F.2d 723, 725 (11th Cir. 1984) (holding district court abused discretion in declining to find defendant in contempt on the basis of his having made "some efforts" to comply with order). Even if an alleged contemnor has made "some efforts" toward compliance, he should nonetheless be held in contempt unless he has made "*all reasonable efforts*" to achieve full compliance yet failed through no fault of his own. *Id.* (explaining that partial compliance is insufficient "[e]ven if the efforts [the defendant made] were

17

'*substantial*,' 'diligent' or 'in good faith'") (emphasis added); *see also Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 799 F.2d 1510, 1521 (11th Cir.1986) (noting that defendant who "only partially complied" with order could be held in contempt).

The Court need only find a single material breach to convert the Agreement into a consent order.  (Doc. 343 ¶ 8.)  Here, Defendant is in material breach of multiple provisions.

### A.    Defendant Is in Material Breach of the Agreement's Tracking and Reporting Requirements.

As discussed and demonstrated at length in Plaintiffs' first motion for a finding of material breach (Doc. 350) and related filings (Doc. 351; Doc. 360; Doc. 361; Doc. 377; Doc. 378; Doc. 379), Defendant has failed to abide by the Agreement's tracking, reporting, and documentation requirements, frustrating Plaintiffs' task of effectively monitoring compliance.  Defendant is therefore in material breach of those requirements.

Specifically, Paragraph 23 requires Defendant to "maintain a record of the exact times" for each Covered Person with respect to each form of out-of-cell time offered, denied, or refused.  (*Id.* ¶ 23.)  Defendant must record that information using "NoteActive or a similar tracking system" (*Id.*)  Under Paragraph 50, Defendant is required to produce those records to Plaintiffs.  (*Id.* ¶ 50.)

18

Defendant's repeated failure to ensure all Covered Persons are identified and accounted for has made compliance with Paragraphs 23 and 50 all but impossible. As a result, he not only fails to provide those individuals what they are entitled to, but also fails to produce those individuals' records to Plaintiffs. This failure alone is a material and inexcusable breach that undermines not only Covered Persons' rights but also class counsel's duty to represent the class members.

For those Covered Persons Defendant does identify, Defendant still fails to produce complete and accurate records for Covered Persons or to comprehensively use an electronic tracking system like NoteActive for this purpose. Instead, Defendant continues to rely on a haphazard combination of paper records and electronic NoteActive records that are often in conflict and, in any event, fail to provide a comprehensive accounting of out-of-cell time offered to Covered Persons and, where applicable, denied or refused.

Defendant's recordkeeping lapses extend to other areas of the Agreement as well. For example, Paragraphs 50(10) and 50(12) require Defendant to produce biweekly lists of all persons placed on suicide watch and all Covered Persons hospitalized. Yet the lists provided by Defendant frequently omit the names of people who have been placed on suicide watch or hospitalized. The full scope of the problem is unknown, because Plaintiffs become aware of it only when it is

brought to their attention through their observations or through records that Defendants do not routinely provide.

Defendant consistently fails to document the "reasons for the refusal" (Doc. 343 ¶ 50(2)) when Covered Persons are identified as having refused out-of-cell time. Defendant likewise continues to violate Paragraph 24 of the Agreement by failing to document the specific reasons for denials of out-of-cell time. As discussed below, Covered Persons continue to be denied out-of-cell time by officers, yet Defendant does not follow the review procedures and reporting requirements attendant to denials. Instead, he claims that no such denials occur, notwithstanding overwhelming evidence to the contrary. But even assuming his records were accurate, and numerous Covered Persons were habitually refusing out-of-cell time for over 72 hours as Defendant claims, he has not maintained or produced any records of mental health referrals and assessments that must be performed and documented under Paragraph 27 of the Agreement.

## B.  Defendant Is in Material Breach of the Agreement's Out-of-Cell Time Requirements.

Defendant is also in material breach of Paragraphs 22, 27, and 29, which require Defendant to offer daily out-of-cell time. First, the recordkeeping violations discussed above make it impossible to verify that Covered Persons have been offered out-of-cell time in accordance with the agreement, frustrating

Plaintiffs' efforts to monitor compliance.  However, it is clear from a thorough review and analysis of the records that a significant number of Covered Persons are being denied out-of-cell time for reasons that do not pose "an immediate and substantial risk of serious harm to a person."  (Doc. 343 ¶ 23.)

In addition, Defendant's records show that Covered Persons do not receive "at least 2 hours per day" of out-of-cell therapeutic activities.  (*See* Doc. 343 ¶ 29.) According to Defendant's own records, group therapeutic activities frequently terminate short of the two-hour mark.  In many weeks, the deficiency amounts to approximately an hour of lost therapeutic time per week, or about ten percent less than the Agreement requires.  These losses in therapeutic time are notable for women with serious mental illness who, as mentioned above, are confined to their cells notwithstanding the terms of the Agreement.

### C.    Defendant Is in Material Breach of the Agreement's Safeguards for People Who Do Not Receive Four Hours Per Day of Out-of-Cell Time.

Defendant fails to comply with the safeguards in Paragraphs 22, 25, and 27 for people who do not receive four hours per day of out-of-cell time.  First, Defendant's records show that mental health professionals are not consistently "conduct[ing] rounds" or "communicat[ing] with each Covered Person" on days— such as weekends and holidays—"where Covered Persons do not receive four

hours of out-of-cell time." (Doc. 343 ¶ 22.) To the contrary, Defendant's records show that mental health staff are often unable to conduct rounds due to lack of staff.

Defendant also fails to comply with Paragraph 27's safeguards when people refuse out-of-cell time for 72 hours or more. Despite the overwhelming number of people allegedly refusing out-of-cell time, often for days at a time, Defendant has never produced documentation that these individuals have been "referred to a mental health professional," given "a meaningful assessment," or directed to "a higher level provider as indicated." (Doc. 343 ¶ 27.) The most likely explanation is that Defendant is simply not conducting the assessments.

Finally, although Defendant implausibly maintains that no Covered Persons are ever denied out-of-cell time by officers, Defendant's position is untenable given the overwhelming evidence that denials of out-of-cell time occur routinely. And because Defendant refuses to call denials what they are, his personnel inevitably fail to provide the supervisor review and periodic mental health assessments required by Paragraph 25.

### D. Defendant Is in Material Breach of the Agreement's Reading Material Requirements.

Defendant has failed to comply with Paragraph 34's requirements of access to reading material, including books, newspapers, and book-cart access. In recent

months, the only books available to Covered Persons were through a chaplain's collection of spiritual materials, and numerous Covered Persons reported being unable to access any books.  Although Defendant's counsel has claimed that some secular books have been destroyed by Covered Persons, that does not excuse Defendant's decision to withdraw secular books and other reading material[3] from all Covered Persons.

### E. Defendant Is in Material Breach of the Agreement's Staffing, Training, and Supervision Requirements.

Finally, the failures discussed above would not be occurring as persistently as they are if Defendant had not failed to staff the jail, train his personnel, and supervise implementation of the Agreement as required by Paragraphs 28, 56, and 69.  Therefore, if the Court finds that Defendant committed the violations described above, the Court should further find that Defendant materially breached those provisions of the Agreement.

## II. The Court Should Hold This Motion in Abeyance and Stay the Briefing Schedule Pending a Ruling on Plaintiffs' First Motion for a Finding of Material Breach.

District courts have "broad discretion in deciding how best to manage the cases before them."  *Smith v. Psychiatric Solutions, Inc.*, 750 F.3d 1253, 1262

---

[3] There is, for example, no evidence that Defendant ever offered Covered Persons the newspapers required by Paragraph 34.

(11th Cir. 2014) (quoting *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366

(11th Cir. 1997)).  That discretion includes the authority to enter a stay so long as it

is not "immoderate."  *See Ortega Trujillo v. Conover & Co. Comm., Inc.*, 221 F.3d

1262, 1264 (11th Cir. 2000) (quoting *CTI-Container Leasing Corp. v. Uiterwyk*

*Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982)); *see also, e.g.*, *Ryan v. Gonzales*, 568

U.S. 57, 74 (2013) ("We do not presume that district courts need unsolicited advice

from us on how to manage their dockets.  Rather, the decision to grant a stay . . . is

'generally left to the sound discretion of district courts.'" (quoting *Schriro v.*

*Landrigan*, 550 U.S. 465, 473 (2007))).  To determine whether a stay is

immoderate, courts consider "the scope of the stay (including its potential

duration)" and "the reasons cited" for granting it.  *Ortega Trujillo*, 221 F.3d

at 1264.

Here, Plaintiffs request an exceedingly narrow stay of this motion and its

briefing schedule.  The requested stay would apply only to this motion—not the

proceeding as a whole—and would remain in effect only as long as it takes for the

Court to finally rule on Plaintiffs' pending motion for a finding of material breach,

which is set for a hearing on October 5, 2023.  Thus, the stay is plainly moderate in

its scope. *See Ortega Trujillo*, 221 F.3d at 1264.  In addition, "the reasons cited"

by Plaintiffs for requesting the stay are reasonable.  As reflected in Plaintiffs' first

24

motion for a finding of material breach (Doc. 350) and Defendant's response (Doc. 359), the parties fundamentally disagree about what provisions of the Agreement may serve as a basis for a finding of material breach and the degree of compliance Defendant must show to avoid a material breach.  The Court's decision and order regarding Plaintiffs' pending motion will provide important guidance on these issues that Plaintiffs should incorporate into this motion.  In addition, if the Court were to deny Plaintiffs' first motion for a finding of material breach, that ruling would moot this motion.  For these reasons, holding this motion in abeyance and staying the briefing schedule until after the Court has ruled on the pending motion is appropriate.

## CONCLUSION

The Court should hold this motion in abeyance and stay the briefing schedule pending a ruling on Plaintiffs' pending motion for a finding of material breach.  If the Court grants Plaintiffs' pending motion, the Court should afford Plaintiffs 28 days from the Court's ruling in which to amend this motion, set a hearing, find Defendants in material breach of the Agreement, and convert the Agreement to a consent order in accordance with Paragraph 61.

Respectfully submitted,

/s/ Ryan Primerano

Devon Orland                          Atteeyah Hollie
Ga. Bar No. 554301                    Ga. Bar No. 411415
Anne Kuhns                            Ryan Primerano
Ga. Bar No. 149200                    Ga. Bar No. 404962
GEORGIA ADVOCACY OFFICE               SOUTHERN CENTER
1 West Court Square                   FOR HUMAN RIGHTS
Suite 625                             60 Walton Street, NW
Decatur, Georgia 30030                Atlanta, Georgia 30303
(404) 885-1234                        (404) 688-1202
(404) 378-0031 (fax)                  (404) 688-9440 (fax)
dorland@thegao.org                    rprimerano@schr.org

                                      Michael A. Caplan
                                      Ga. Bar No. 601039
                                      Jarred A. Klorfein
                                      Ga. Bar No. 562965
                                      CAPLAN COBB LLC
                                      75 Fourteenth Street, NE
                                      Suite 2700
                                      Atlanta, Georgia 30309
                                      (404) 596-5600
                                      (404) 596-5604 (fax)
                                      mcaplan@caplancobb.com
                                      jklorfein@caplancobb.com

*Counsel for Plaintiffs*

October 3, 2023

**CERTIFICATE OF COMPLIANCE**

I certify that this document has been prepared in compliance with Local

Rule 5.1(C) using 14-point, Times New Roman font.

<u>/s/ Ryan Primerano</u>

October 3, 2023

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing using the CM/ECF system, which will send notification of filing to all counsel of record.

/s/ Ryan Primerano

October 3, 2023