IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| GEORGIA ADVOCACY OFFICE, et al., | : | PRISONER CIVIL RIGHTS |
| Plaintiffs, | : | 42 U.S.C. § 1983 |
| | : | |
| v. | : | |
| | : | |
| PATRICK LABAT, | : | CIVIL ACTION NO. |
| Defendant. | : | 1:19-CV-01634-WMR-RDC |

## <u>ORDER</u>

Plaintiffs Georgia Advocacy Office and J.N. filed a class action civil rights complaint pursuant to 42 U.S.C. § 1983. (Doc. 1.) Plaintiffs have paid the filing fee. On April 4, 2022, District Judge William M. Ray, II, issued a final order approving the parties' joint settlement agreement. (Doc. 343.) Plaintiffs filed a motion for finding Defendant in material breach of the agreement on March 30, 2023.[1] (Doc. 350.) Defendant filed a response in opposition on April 28, 2023. (Doc. 359.) Plaintiffs' reply brief was filed on May 12, 2023. (Doc. 360.) This Court held a hearing to address the parties' arguments on October 5, 2023. (Doc. 389.)

---

[1] Plaintiffs also move to extend the settlement agreement, which the Court will consider in a separate order. (*See* Doc. 343 ¶ 10 ("The Magistrate Judge will only be required to determine if there is a material breach of the Agreement.").)

For the reasons stated below, it is **ORDERED** that Plaintiffs' motion for finding Defendant in material breach of the settlement agreement (Doc. 350) be **GRANTED**.

## I.   BACKGROUND

Plaintiffs, female inmates with serious mental illness formerly housed at the South Fulton Municipal Regional Jail ("South Fulton Jail"), filed this class-action lawsuit in 2019, alleging that conditions of confinement at the South Fulton Jail violated their constitutional rights.[2] (Doc. 1.) Following an evidentiary hearing, the Court granted a preliminary injunction in favor of Plaintiffs. (Doc. 94.)

In 2022, the parties entered into a settlement agreement, which was approved by the Court. (Doc. 343.) Among other things, the agreement required Defendant to provide "maintain a record of the exact times that the Covered Person is offered out-of-cell time and the exact times at which the Covered Person

---

[2] Plaintiffs have subsequently been moved to the Atlanta City Detention Center ("ACDC"). (Doc. 350 at 9 n.3.) However, the parties have continued to abide by the terms of the settlement agreement. (*Id.*; Doc. 359 at 4–5.)

returns to their cell if the out-of-cell time offer is accepted." [3] (*Id.* ¶ 23.) [4] The agreement further required Defendant to provide certain amounts of out-of-cell time to Covered Persons. (*Id.* ¶¶ 22, 29.) It also required Defendant to document specific reasons for the denial of out-of-cell time and to follow certain procedures to evaluate whether the denial remains necessary. (*Id.* ¶¶ 24–25.) In addition, the agreement provided that the Magistrate Judge assigned to this case—the undersigned—would determine whether a party has materially breached the agreement, subject to review by the District Judge. (*Id.* ¶ 10.)

Plaintiffs subsequently filed the instant motion for finding Defendant in material breach of the settlement agreement. (Doc. 350.) According to Plaintiffs, Defendant is in material breach of the tracking and reporting requirements, out-of-cell requirements, and denial reporting requirements of the agreement. (*Id.* at 27–29.) Defendant has filed a response in opposition. (Doc. 359.) He contends that he is not in material breach of the agreement. (*Id.* at 9–12.)

---

[3] According to the settlement agreement, "Covered Person" means "all people housed in the South Fulton Jail who experience serious mental illness and cannot function within the general population of the South Fulton Jail because of the nature or severity of their psychiatric disability." (Doc. 343 ¶ 15.)

[4] References to specific paragraphs in Doc. 343 are to provisions in the settlement agreement.

## II.   DISCUSSION

According to the settlement agreement, "[a] material breach is to be determined by applying the same standard used for a determination of contempt." (Doc. 343 ¶ 10.) In a civil contempt proceeding, the moving party must demonstrate "by clear and convincing proof that the underlying order was violated." *PlayNation Play Sys., Inc. v. Velex Corp.*, 939 F.3d 1205, 1212 (11th Cir. 2019) (internal quotation marks omitted). Once the moving party makes this showing, "the burden of production shifts to the alleged contemnor to show a present inability to comply that goes beyond a mere assertion of inability." *Id.* (internal quotation marks omitted).

A court must not "focus on the subjective beliefs or intent of the alleged contemners in complying with the order," but instead must focus on "whether in fact their conduct complied with the order at issue." *F.T.C. v. Leshin*, 618 F.3d 1221, 1233 (11th Cir. 2010) (internal quotation marks omitted). Similarly, "substantial, diligent, or good faith efforts are not enough; the only issue is compliance." *Id.* at 1232. Nevertheless, "substantial, but not complete, compliance with the court order may be excused if it was made as part of a good faith effort at compliance." *PlayNation*, 939 F.3d at 1213 (internal quotation marks omitted); *see also Newman v. Graddick*, 740 F.2d 1513, 1525 (11th Cir. 1984) (explaining that a "person who attempts with reasonable diligence to comply with a court order should not be

held in contempt"). This requirement is to be strictly construed. *Combs v. Ryan's Coal Co.*, 785 F.2d 970, 984 (11th Cir. 1986). In making a good-faith effort at complying, the alleged contemnor must quickly "become aware of" any noncompliant issues "through its own efforts" rather than those of the complaining party, and it must "set about correcting" those issues in an expeditious manner. *Sizzler Fam. Steak Houses v. W. Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1537 (11th Cir. 1986).

Plaintiffs argue that Defendant has materially breached the settlement agreement in three ways: he has failed to comply with the (1) tracking and reporting requirements, (2) out-of-cell requirements, and (3) denial reporting requirements of the agreement. (Doc. 350 at 27–29.)

A.    *Tracking and Reporting Requirements*

According to the settlement agreement, Defendant is required to offer each Covered Person four hours of out-of-cell time per day, five days per week. (Doc. 343 ¶ 22.) In addition, Defendant must "maintain a record of the exact times that the Covered Person is offered out-of-cell time and the exact times at which the Covered Person returns to their cell if the out-of-cell time offer is accepted." (*Id.* ¶ 23.) The agreement also provides that Defendant must keep track of such information in NoteActive—an electronic tracking system—or another similar

5

system. (*Id.*) Furthermore, Defendant is required to provide those records to Plaintiffs' and Defendant's counsel on a biweekly basis. (*Id.* ¶ 50.)

Plaintiffs argue that Defendant has failed to comply with the tracking and reporting requirements of the settlement agreement. (Doc. 343 at 27–28.) In particular, they point to numerous instances where Defendant has not provided accurate or consistent tracking information. Although the agreement requires Defendant to track all out-of-cell time through NoteActive, (Doc. 343 ¶ 23), Defendant actually uses a combination of NoteActive and handwritten logs, (Doc. 350-1 at 6–7.) Furthermore, "the records are regularly in conflict, making it near impossible to determine if all Covered Persons receive the amount of out-of-cell offerings required under the Agreement." (*Id.* at 7.) For example, NoteActive records from August 18, 2022, indicate that J.C. was housed in H-5, but handwritten records from that same date indicate that J.C. was housed in H-3. (*Id.* at 15.) Similarly, NoteActive records from August 19, 2022, indicate that W.C. was housed in H-7, but handwritten records from that same date indicate that W.C. was housed in H-12. (*Id.*) As a result, it is unclear where these Covered Persons were located on these days. In addition, NoteActive records from September 14, 2022, did not contain any documentation regarding recreation or free time for H.K., but handwritten logs stated that H.K. was denied free time, and the time in and time out for recreation time were both listed as 1:33 p.m. (*Id.*)

In another instance of inconsistent records, NoteActive records from October 18, 2022, stated that W.C. attended group for approximately two hours, while handwritten logs stated that W.C. refused group. (*Id.* at 16.) These are only a few selections from the many examples provided by Plaintiffs. (*See id.* at 15–23.) In an email to Caitlin Childs, an investigator for Plaintiffs, Dr. Kenneth Ray, one of the compliance monitors for the settlement agreement, agreed that there were several conflicts between the NoteActive records and the paper records. (Doc. 351-10 at 3.)

Plaintiffs additionally contend that Defendant's records do not reliably track who is considered a "Covered Person." (Doc. 350 at 13, 27–28.) Defendant originally classified women with mental health levels of 1, 2, and 3 as Covered Persons. (Doc. 350-1 at 4.) Defendant did not produce records for women housed outside of the mental health pods—the B, C, and G pods—at the South Fulton Jail and stated that no Covered Persons were housed outside of the mental health pods. (*Id.* at 4–5.) Nevertheless, Defendant subsequently notified Plaintiffs that some Covered Persons were being housed in H pod, a nonmental health pod, due to a bed shortage. (*Id.* at 5.) Furthermore, in October 2022, Defendant listed only inmates with mental health levels of 1 and 2 as being Covered Persons. (*Id.*) However, according to Plaintiffs, Defendant subsequently stated that not everybody classified with mental health level 1 or 2 is a Covered Person. (*Id.*) In

addition, after the inmates were transferred from the South Fulton Jail to ACDC, Defendant stated that all Covered Persons were housed in 4NE, the facility's only mental health pod. (*Id.*) However, Plaintiffs "have continued to discover Covered Persons with mental health levels 1 or 2 housed in areas outside of the mental health pod, as was the case at the South Fulton Jail." (*Id.* at 6.) Plaintiffs are "not aware of any list produced by Defendant that reliably identifies all individuals Defendant considers Covered Persons." (*Id.* at 4.) Similarly, although the settlement agreement provides that Defendant must provide, among other things, "a list of all persons on the mental health caseload," (Doc. 343 ¶ 52), Plaintiffs state that they "have not consistently received a comprehensive mental health caseload list since the summer of 2022," (Doc. 350-1 at 6).

Relatedly, the settlement agreement requires Defendant to provide a list of all people on suicide watch. (Doc. 343 ¶ 50). However, Plaintiffs have identified numerous instances of people who were placed on suicide watch according to their medical records yet were not listed as having been placed on suicide watch according to the lists provided by Defendant. (Doc. 350-1 at 12–13.)

Based on the above, Plaintiffs have shown by clear and convincing evidence that Defendant has violated the settlement agreement by failing to comply with the agreement's tracking and reporting requirements. *See PlayNation*, 939 F.3d at 1212; (Doc. 343 ¶¶ 23, 50.)

Defendant argues that he is not in material breach of the tracking and reporting requirements. (Doc. 359 at 9–10.) In particular, he states that "not only is Defendant providing the information through the NoteActive system, but handwritten logs are also provided as back up to the electronic information." (*Id.* at 9.) However, the evidence presented by Plaintiffs shows that the handwritten logs are not merely a physical backup record or even a supplementary record. Instead, in numerous instances, the NoteActive and handwritten records conflict, making it exceedingly difficult to determine what is actually happening. (*See, e.g.*, Doc. 350-1 at 15, 16; *see also* Doc. 382-1 at 8 (affidavit of Dr. Ray stating that his review of handwritten logs and medical records "corroborated Plaintiff's concerns, revealing conflicts between the two sets of documentation").) Defendant characterizes these discrepancies as minor, (Doc. 359 at 9), but there are simply too many inconsistencies to say that Defendant has made all reasonable efforts to comply with the settlement agreement's tracking and reporting requirements. *See Newman*, 740 F.2d at 1525. Defendant has not shown that he has complied. *See Leshin*, 618 F.3d at 1233. Indeed, the first compliance monitor scorecard for the settlement agreement, covering April 2022 to January 2023, states that Defendant is only in partial compliance with Paragraphs 22, 23, and 50 of the settlement agreement. (Doc. 375-3 at 1.)

Defendant essentially contends that it is not possible for him to comply with the settlement agreement. (*See* Doc. 359 at 4 ("While the goals of the Agreement are certainly worth accomplishing, many of the actions required to demonstrate compliance, particularly the greatly increased reporting and documentation requirements, result in significant strain upon the already stressed resources of jail staff.").) However, as discussed above, Defendant has not shown that he has made such an effort at complying that his incomplete compliance can be excused. *See PlayNation*, 939 F.3d at 1213; *Sizzler*, 793 F.2d at 1537. Defendant has not made "all reasonable efforts" to comply. *In re Lawrence*, 279 F.3d 1294, 1297 (11th Cir. 2002). Furthermore, Defendant ultimately is responsible for his own noncompliance. *See id.* at 1300 ("[W]here the person charged with contempt is responsible for the inability to comply, impossibility is not a defense to the contempt proceedings." (internal quotation marks omitted)). In any event, Defendant's claim that he is unable to comply because compliance would be overly burdensome is foreclosed by the terms of the settlement agreement itself: "The Fulton County Sheriff shall assign sufficient administrators, correctional officers and supervisors, and other staff members to the South Fulton Jail to carry out the terms of this Agreement." (Doc. 343 ¶ 28.) Defendant does not allege that he has been given such insufficient resources that he cannot allocate enough staff to carry out the agreement. In the end, Defendant has not shown that it is

impossible for him to comply, nor has he shown that he has in good faith made all reasonable efforts to comply.

Accordingly, Defendant has materially breached the settlement agreement by failing to comply with the agreement's tracking and reporting requirements.

### B.   Out-of-Cell Requirements

As noted earlier, according to the settlement agreement, Defendant is required to offer each Covered Person four hours of out-of-cell time per day, five days per week. (Doc. 343 ¶ 22.) In addition, on the two days that Covered Persons do not receive four hours of out-of-cell time, Defendant is required to offer Covered Persons at least one hour of daily out-of-cell time. (*Id.*) Furthermore, Defendant is required to "offer out-of-cell, therapeutic activities to Covered Persons on at least five (5) days each week for at least 2 hours per day." (*Id.* ¶ 29.)

Plaintiffs argue that Defendant has failed to comply with the out-of-cell requirements of the settlement agreement. (Doc. 350 at 28–29.) They claim that this problem has been most acute for Covered Persons housed outside of the mental health pods. (*Id.* at 28.) For example, records from August and September 2022 for J.C., a Covered Person in H pod at the South Fulton Jail, show that J.C. did not receive adequate out-of-cell time for a sustained period. (Doc. 350-1 at 8.) In particular, for many days, NoteActive records for J.C. only indicated that J.C.

received free time and did not receive recreation, group therapy, or individual therapy. (*Id.* at 25–27.)

Several Covered Persons additionally state that they have not received adequate out-of-cell time as required by the settlement agreement. For example, C.C. states that she is often denied free time even when she is not on lockdown and that she was "denied out of cell time including free time, recreation, and group" in March 2023. (Doc. 350-2 at 3.) S.H. states that after she was moved to ACDC, she was housed in 4NE, the mental health pod, and received "between one and three hours per day out of my cell." (Doc. 350-3 at 4.) Q.J. similarly states that after she was moved to ACDC, she received "no more than three hours out of my cell every day for free time." (Doc. 350-4 at 4.) She also states that she sometimes "only received 45 minutes out of my cell." (*Id.*)

Furthermore, the compliance monitor scorecard lists several areas where Defendant is only in partial compliance with the settlement agreement. (Doc. 375-3 at 1; *see also* Doc. 350-14 at 3.) In the first scorecard, covering April 2022 to January 2023, Defendant is listed as having substantial compliance with some of the out-of-cell time provisions of the settlement agreement and partial compliance with most of the out-of-cell time provisions. (Doc. 375-3 at 1.) With respect to Paragraph 22 of the settlement agreement, governing the amount of out-of-cell time that Defendant must offer, the notes to the scorecard explain that the records

"do not consistently evidence compliance as stated." (Doc. 375-4 at 2.) The scorecard notes similarly state that, with respect to Paragraph 29—providing the amount of out-of-cell therapeutic time that Defendant must offer—tracking and medical records "do not consistently evidence compliance." (*Id.* at 4.)

In the second scorecard,[5] covering February to April 2023, Defendant is listed as in substantial compliance for Paragraph 22, (Doc. 375-5 at 1), but the notes to the scorecard contain the same language as before: namely, that "tracking records do not consistently evidence compliance as stated." (Doc. 375-6 at 3.) Furthermore, Defendant is listed as remaining in only partial compliance for Paragraph 29. (Doc. 375-5 at 1.) The notes state that "[i]t needs to be clarified from the OOCT [out-of-cell time] tracking logs whether 2 hours per day is being offered," and they recommend ensuring "OOCT tracking records consistently demonstrate compliance with the provision." (Doc. 375-6 at 5.)

Based on the above, Plaintiffs have shown by clear and convincing evidence that Defendant has violated the settlement agreement by failing to comply with

---

[5] Dr. Ray subsequently withdrew the second scorecard based on discrepancies found by Plaintiffs, as he was no longer confident in the reliability of the records provided by Defendant. (Doc. 377-21 at 2.) He also stated in an affidavit that he revised Paragraph 23 from substantial compliance to partial compliance due to discrepancies and inconsistencies between the handwritten logs and medical records. (Doc. 382-1 at 7–8.)

the agreement's out-of-cell requirements. *See PlayNation*, 939 F.3d at 1212; (Doc. 343 ¶¶ 22, 29.)

Once again, Defendant contends that he has not violated the settlement agreement. (Doc. 359 at 10–11.) Yet Defendant's arguments are unconvincing. He claims that he "consistently offers Covered Persons out of cell time pursuant to the requirements of the Settlement Agreement and documents such offerings." (*Id.* at 10.) But as discussed above, Plaintiffs have shown otherwise. Plaintiffs have provided numerous instances where Defendant has not properly provided Covered Persons out-of-cell time as required by the settlement agreement. Defendant further contends that the move from the South Fulton Jail to ACDC has substantially improved experiences for Covered Persons. (*Id.* at 10.) That may be so, but as Plaintiffs have pointed out, there are still numerous instances where Covered Persons at ACDC are not receiving their full amount of out-of-cell time. Defendant also contends that he cannot force Covered Persons to accept out-of-cell time. (*Id.* at 10–11.) Defendant is correct, but his argument misses the mark: Plaintiffs' evidence shows that some Covered Persons are not receiving sufficient out-of-cell time even when they want it. Ultimately, Defendant's arguments that he has not violated the settlement agreement are unavailing.

Accordingly, Defendant has materially breached the settlement agreement by failing to comply with the agreement's out-of-cell requirements.

C.    *Denial Reporting Requirements*

According to the settlement agreement, "Defendant may depart from the out-of-cell time requirements as outlined in this Agreement where doing so is necessary to prevent an immediate and substantial risk of serious harm to a person." (Doc. 343 ¶ 24.) If Defendant denies out-of-cell time to a Covered Person, he must fully document the specific reasons for the denial and include "the name of the Covered Person, date and time of out-of-cell time denial, and a detailed, specific reason for the denial." (*Id.*) In addition, the settlement agreement provides specific procedures for determining whether the denial of out-of-cell time remains necessary, including reviews by a correctional supervisor and a mental health professional. (*Id.* ¶ 25.)

Plaintiffs argue that Defendant has failed to comply with the denial reporting requirements of the settlement agreement. (Doc. 350 at 29.) According to Plaintiffs, Defendant claims that no Covered Persons have been denied out-of-cell time, but Plaintiffs provide statements from several Covered Persons declaring that they were denied out-of-cell time. (*Id.*; Doc. 360 at 17–18.) For example, C.C. states that she was "denied out of cell time including free time, recreation, and group" in February and March 2023. (Doc. 350-2 at 3.) Similarly, Q.J. states that she was denied out-of-cell time because her cellmate had an ongoing mental health crisis. (Doc. 350-4 at 3.) Furthermore, S.H. states that while

15

she was placed on lockdown, mental health staff did not check on her daily as required by the settlement agreement. (Doc. 350-3 at 4; *see* Doc. 343 ¶ 25.)

Plaintiffs also provide eyewitness reports that Covered Persons have been denied out-of-cell time without such denials being reported. (Doc. 360-1 at 3–5.) For example, counsel for Plaintiffs states that during a visit to ACDC on March 7, 2023, B.W. told counsel that she wanted to attend group, but a jail guard told counsel that B.W. was not allowed to attend group because she had been kicking her cell door earlier that day. (*Id.* at 3.) However, NoteActive records and handwritten logs for that day state that B.W. refused to participate in group. (*Id.* at 4.) Similarly, during the same visit, counsel met K.W. in her cell while group was going on. (*Id.*) K.W. told counsel that she was denied group time as punishment for her behavior the day before. (*Id.*) K.W.'s medical records corroborate K.W.'s report: a mental health professional (MHP) wrote in a mental health progress note for K.W. that she "advocated for patient to attend group," but the "officer verbalized patient's presence at group as a safety risk" because K.W. was known to become violent. (*Id.* at 5.) However, handwritten logs state that K.W. refused group, while NoteActive records state that K.W. attended individual therapy even though counsel did not observe any mental health professional providing individual therapy to K.W. in her cell at the listed time. (*Id.*; *see also, e.g.*, Doc. 378-1 at 10, 15 (medical record stating "MHP went to see

patient since she was unable to attend group based on safety concerns and aggressive behavior" versus NoteActive record stating "Refused Group - Therapeutic Activities").)

Plaintiffs argue that such discrepancies between Defendant's records and Covered Persons' medical records are not mere aberrations, but instead are "pervasive." (Doc. 360-1 at 9.) They point to medical records of numerous Covered Persons to show that many denials of out-of-cell time have been reported as refusals. (*Id.* at 9–11.) For example, "[i]n a review of approximately twenty Covered Persons' medical and mental health records, at least sixteen Covered Persons had clearly documented denials which were reflected as 'refused' in Defendant's handwritten and/or electronic out-out-of-cell time records." (*Id.* at 9.)

Based on the above, Plaintiffs have shown by clear and convincing evidence that Defendant has violated the settlement agreement by failing to comply with the agreement's denial reporting requirements. *See PlayNation*, 939 F.3d at 1212; (Doc. 343 ¶¶ 24, 25.)

Defendant again denies that he has failed to comply with the terms of the settlement agreement. (Doc. 359 at 11.) He points to an exhibit purporting to show that no Covered Persons have been denied out-of-cell time for more than 24 hours. (*See* Doc. 359-2.) Even accepting this exhibit as true, Defendant does not explain

the many discrepancies between Covered Persons' medical records and his own records showing denials of out-of-cell time as refusals. Ultimately, Defendant's argument is insufficient to rebut Plaintiffs' showing that Defendant has not been complying with the settlement agreement. Accordingly, Defendant has materially breached the settlement agreement by failing to comply with the agreement's denial reporting requirements.

### III.   CONCLUSION

Running a jail is undoubtedly a difficult task, especially when it comes to managing inmates with serious mental health concerns. Defendant truly is to be commended for improving conditions for the women in his care that the Court previously found "repulsive." (Doc. 73 at 54.) Yet it is clear that Defendant can do more—indeed, must do more—to meet the terms of his agreement with Plaintiffs.

Accordingly, for the reasons stated above, it is **ORDERED** that Plaintiffs' motion for finding Defendant in material breach of the settlement agreement (Doc. 350) be **GRANTED**.[6]

---

[6] As provided by the settlement agreement, the determinations contained in this Order are subject to de novo review by the District Judge. (Doc. 343 ¶ 10.) The parties are advised that they must file any objections to the Order within 14 days of the entry date of this Order.

**IT IS SO ORDERED**, this 2nd day of January, 2024.

REGINA D. CANNON
UNITED STATES MAGISTRATE JUDGE