# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| GEORGIA ADVOCACY OFFICE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> PATRICK LABAT, <br><br> Defendant. | CIVIL ACTION FILE NO. <br> 1:19-cv-01634-WMR-RDC |

## ORDER

This matter is before the Court on the Plaintiffs' Motion for Finding Defendant in Material Breach of Settlement Agreement [Doc. 350]. The Magistrate Court issued an Order granting the Plaintiffs' Motion [Doc. 395], and the Defendant subsequently filed Objections [Doc. 396]. In accordance with the terms of the settlement agreement,[1] this Court will conduct a de novo review of the Plaintiff's Motion. After review, this Court agrees with the Magistrate Judge and **GRANTS** the Plaintiff's Motion [Doc. 350].

---

[1] The agreement provides that whether a breach occurred shall be determined by the Magistrate subject to de novo review by this Court. [Doc. 343 at 26 ¶ 10].

1

I.     **Legal Standard**

In accordance with the settlement agreement, "[a] material breach is to be determined by applying the same standard used for a determination of contempt." [Doc. 343 at 26 ¶ 10]. In a civil contempt proceeding, the moving party must demonstrate "by clear and convincing proof that the underlying order was violated." *PlayNation Play Sys., Inc. v. Velex Corp.*, 939 F.3d 1205, 1212 (11th Cir. 2019) (internal quotation marks omitted). Once the moving party makes this showing, "the burden of production shifts to the alleged contemnor to show a present inability to comply that goes beyond a mere assertion of inability." *Id.* (internal quotation marks omitted). "The focus of the court's inquiry in civil contempt proceedings is not on the subjective beliefs or intent of the alleged contemners in complying with the order, but whether in fact their conduct complied with the order at issue." *Id.* (punctuation omitted).

"[S]ubstantial, diligent, or good faith efforts are not enough; the only issue is compliance." *F.T.C. v. Leshin*, 618 F.3d 1221, 1232 (11th Cir. 2010) (internal quotation marks omitted). Nevertheless, "substantial, but not complete, compliance with the court order may be excused if it was made as part of a good faith effort at compliance." *PlayNation*, 939 F.3d at 1213 (internal quotation marks omitted); *see also Newman v. Graddick*, 740 F.2d 1513, 1525 (11th Cir. 1984) (explaining that a "person who attempts with reasonable diligence to comply with a court order should

not be held in contempt"). This requirement is to be strictly construed. *Combs v. Ryan's Coal Co.*, 785 F.2d 970, 984 (11th Cir. 1986). In making a good-faith effort at complying, the alleged contemnor must quickly "become aware of" any noncompliant issues "through its own efforts" rather than those of the complaining party, and it must "set about correcting" those issues in an expeditious manner. *Sizzler Fam. Steak Houses v. W. Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1537 (11th Cir. 1986).

## II. Discussion

Plaintiffs, female inmates with mental illnesses at South Fulton Municipal Regional Jail ("South Fulton Jail") and Atlanta City Detention Center ("ACDC"),[2] filed a class action complaint [Doc. 1] pursuant to 42 U.S.C. § 1983 complaining that the conditions of their confinement violated their constitutional rights. In April 2022, this Court approved the parties' joint settlement agreement. [Doc. 343]. In March 2023, the Plaintiffs filed a motion to find the Defendant in material breach of the agreement. [Doc. 350]. The Plaintiffs contend that the Defendant failed to adequately comply with three requirements of the settlement agreement: (1) out-of-cell requirements; (2) tracking and reporting requirements; and (3) denial reporting

---

[2] Plaintiffs were housed at South Fulton Jail when the Complaint was filed but were subsequently moved to ACDC in December 2022. [Doc. 350 at 9 n.3]. The parties continued to abide by the terms of the Settlement Agreement following the move. [*Id.*; Doc. 359 at 4–5].

requirements. [Doc. 350 at 27–29]. This Court agrees and concludes that the Defendant materially breached the settlement agreement.

### A. Out-of-Cell Requirements

The Settlement Agreement provides that the Defendant "shall offer at least four (4) hours of daily out-of-cell time to each Covered Person[ ]five (5) days per week" and "one (1) hour of daily out-of-cell time to each Covered Person" and visits from mental health professionals "on the two days a week that the Covered Person does not receive four hours of daily out-of-cell time." [Doc. 434 at 30 ¶ 22]. The Magistrate Court ultimately found that the Plaintiffs showed by clear and convincing evidence that the Defendant failed to comply with the out-of-cell requirements. In doing so, the Magistrate Judge looked to affidavits[3] providing examples of Covered Persons that did not receive adequate cell time or mental health services for a sustained period and compliance scorecards crafted by neutral compliance monitors. [Doc. 350-1 at 8, 25–27; 350-2 at 3; 350-3 at 4; 350-4 at 4].

The Defendant complains that the affiants' examples are irrelevant because they preceded the Covered Persons' move to ACDC and complains that the Magistrate Judge relied on "general allegation[s] from Covered Persons as proof of material breach despite the existence of compliance documentation and compliance

---

[3] The affiants included Covered Persons as well as counsel for the Plaintiffs, Caitlin Childs and Anne Kuhns.

4

monitor testimony that Defendant is not out of compliance." But, the Defendant overlooks that several of the examples relied upon occurred after the move to ACDC. [*See, e.g.*, Doc. 350-2 at 3; 350-3 at 4; 350-4 at 4; 350-7]. And, although the affidavits may not provide detailed descriptions of each and every violation of the Settlement Order, they clearly describe the Defendant's failure to provide the required out-of-cell time and mental health services provided for in the Settlement Agreement. [*See, e.g.*, Doc. 350-4 (describing that she was denied out-of-cell time entirely for three consecutive weeks, only received one hour for multiple weeks, and that often the mental health professionals would not even speak to her when she was supposed to be assessed); Doc. 350-3 at 4 ("[T]he amount of time I receive out of my cell is inconsistent and depends on the officer working.")]. Additionally, the Defendant's insistence that the compliance monitors did not find him "out of compliance" is misleading. The compliance monitors listed the Defendant as being only in "partial compliance" with the out-of-cell time required in Settlement Agreement. [Doc. 375-3 at 1; 375-4; 375-5; 375-6; 350-14 at 3]. This evidence is sufficient to provide clear and convincing proof that the Defendant failed to comply with the Settlement Agreement's out-of-cell requirements.

Though, despite this evidence, the Defendant also argues that he substantially complied with the Settlement Agreement because there was significant improvement in conditions of confinement, which was, after all, "the original goal of the litigation

and the purpose of the Settlement Agreement." But, a party can still be in material breach of an agreement even though they took steps to comply. *See United States v. Hayes*, 722 F.2d 723, 725 (11th Cir. 1984) (holding district court abused discretion in declining to find defendant in contempt based on his having made "some efforts" to comply with order). And, while the Court recognizes the difficulties in running a jail and applauds the Defendant's alleged improvements in the conditions of confinement, these significant improvements do not excuse its ultimate failure to comply with the express conditions of the Settlement Agreement. Accordingly, this Court concludes that the Defendant materially breached the Settlement Agreement by failing to comply with the out-of-cell requirements.

### B.  Tracking and Reporting Requirements

The agreement provides that the "Defendant shall maintain a record of the exact times that the Covered Person is offered out-of-cell time and the exact times at which the Covered Person returns to their cell if the out-of-cell time offer is accepted." [Doc. 434 at 31 ¶ 22]. More specifically, the "reports shall include, for each individual by name and cell number, the date the person was offered out-of-cell time, the exact time the person was offered out-of-cell time, the exact time the individual left their cell for the Yard of Gymnasium, the exact time they returned to their cell from the Yard or Gymnasium, the exact time they began therapeutic activities, and the exact time they returned to their cell after completing therapeutic

activities." [*Id.*]. The reports were to be recorded through "Note Active" and "generated and provided, in electronic format, to Plaintiffs' counsel biweekly." [*Id.*].

The Defendant used a combination of Note Active and handwritten logs in an attempt to comply with the settlement order. [Doc. 350-1 at 6–7]. The Plaintiffs point to several instances within the record keeping where the Defendant has provided inaccurate and inconsistent tracking information to show the Defendant's noncompliance with this Court's order. The Magistrate Judge ultimately determined that the Plaintiffs showed by clear and convincing evidence that the Defendant violated the settlement agreement by failing to comply with the agreement's tracking and reporting requirements. In doing so, the Magistrate Judge looked to examples where the handwritten notes and Notes Active records are inconsistent on where Covered Persons are housed, how much out-of-cell time was provided, the times of entry and return, whether the Covered Persons declined out-of-cell time, who was on suicide watch, and even who is considered a Covered Person. [Doc. 350-1 at 4–5, 12–13, 15–23; 351-10 at 3 (compliance monitor agreeing that there are several inconsistencies in the records)].

The Defendant does not concede or deny that the records provided contained inconsistencies and errors. Instead, the Defendant argues that these inconsistencies are "at most, potential technical violations" that do not rise to the level of a material

breach because the Defendant still provided records and significant improvements in conditions were made. But, as noted above, partial compliance is insufficient to avoid a finding of material breach. *Cf.* Hayes, 722 F.2d at 725. And, the Defendant is incorrect that simply providing records regardless of their accuracy would comply with this provision. Instead, where the records are meant to aid in tracking the Defendant's compliance with other provisions of the Settlement Agreement, that purpose is frustrated when the records are riddled with errors. But, for clarity, the Court is not saying that every minor typographical error will constitute noncompliance with the Settlement Agreement's tracking and reporting requirements. However, the Court concludes that the amount of errors included in the Defendant's records here provide clear and convincing proof that the Defendant has failed to comply with the recordkeeping requirements of the Settlement Agreement.

    **C.**    **Denial Reporting Requirements.**

The agreement also provides that the "Defendant may depart from the out-of-cell time requirements . . . where doing so is necessary to prevent an immediate and substantial risk of serious harm to a person." [Doc. 434 at 31 ¶ 24]. But, if out-of-time is denied, "the specific reasons for the denial shall be fully documented, to include the name of the Covered Person, date and time of out-of-cell time denial, and a detailed, specific reason for the denial." [*Id.*]. When a Covered Person is

8

denied out-of-cell time, "the mental health treatment team shall be notified" and the Covered Person "shall be reviewed by a correctional supervisor once every 24 hours to determine whether the denial of out-of-cell time remains necessary to prevent an immediate and substantial risk of serious harm to a person." [*Id.* at 31–32 ¶ 25]. If the denial continues for more than forty-eight consecutive hours, it must be approved by a mental health professional. [*Id.*].

The Magistrate Judge looked to statements from Covered Persons explaining that they were denied out-of-cell time and were not provided the required attention from mental health professionals, as well as inconsistencies within the Defendant's records and the medical professionals' records regarding denial of out-of-cell time. [Doc. 377-19; 360-1 at 17–18; 350-2 at 3; 350-4; 350-6; 378-1]. The Defendant again argues that this evidence is unreliable and based only on a limited number of alleged technical discrepancies in documentation. The Court disagrees. The evidence is based in the affiants' personal experience with the Defendant's noncompliance and records from the Defendant as well as the mental health providers employed to review the Covered Persons. The Defendant has failed to establish why these personal accounts and official records should be discounted. Additionally, the evidence shows that the deviations from the Settlement Agreement's requirements were not mere technical discrepancies but were rather widespread. [*See, e.g.*, Doc. 377-19 (identifying 250 instances from January 2023

through July 2023 where the documentation reveals a Covered Person was denied the requirements of the Settlement Agreement)]. Accordingly, the Court concludes that the Plaintiffs have shown by clear and convincing evidence that the Defendant failed to comply with the denial reporting requirements within the Settlement Agreement.

### III. CONCLUSION

The Plaintiffs' Motion for Finding Defendant in Material Breach of Settlement Agreement [Doc. 350] is **GRANTED**.

**IT IS SO ORDERED**, this 18th day of June, 2024.

_____
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE